## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT O'SULLIVAN, | ) | |
| Plaintiff | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION |
| | ) | NO.  05-CV-10863-GAO |
| VIRCO, INC., RYDER TRUCK RENTAL, | ) | |
| INC., AS TRUSTEE OF RYDER TRUCK | ) | |
| RENTAL LT., and BOBBY E. MCKUNN | ) | |
| Defendants | ) | |

## DEFENDANT, VIRCO, INC. AND BOBBY E. MCKUIN'S OPPOSITION TO THE PLAINTIFF, ROBERT O'SULLIVAN'S MOTION TO COMPEL FURTHER DISCOVERY

The Defendants, Virco, Inc. and Bobby E. McKuin hereby oppose the Plaintiff,

Robert O'Sullivan's Motion to Compel Further Discovery from the Defendants, Virco,

Inc. and Bobby E. McKuin and respectfully request that said Motion be denied.  As

grounds therefore, the Defendants, Virco, Inc. (hereinafter referred to as "Virco") and

Bobby E. McKuin (hereinafter referred to as "McKuin"), state the following:

## I.    PROCEDURAL BACKGROUND

This is a negligence action filed by the Plaintiff, Robert O'Sullivan (hereinafter

referred to as "O'Sullivan") against the Defendants, Virco, Inc., Ryder Truck Rental, Inc.

as Trustee of Ryder Truck Rental LT (hereinafter referred to as "Ryder") and Bobby E.

McKuin arising out of an alleged multi-vehicle incident which occurred on Interstate I-40

East outside of Memphis, Tennessee.  At that time, O'Sullivan was operating a box truck

on Interstate I-40 East when he alleges that a tractor-trailer operated by the Defendant

McKuin came in contact with the box truck he was operating which caused him to leave

the roadway and allegedly sustain personal injuries.  Plaintiff proceeds against Virco, Inc.

as the employer of Mr. McKuin on the theory of *respondeat superior* and against the Defendant, Ryder as the owner of the tractor-trailer operated by Mr. McKuin.

On or about April 28, 2005 the Defendant, McKuin removed this case to the United States District Court for the District of Massachusetts based upon diversity. Thereafter, the Defendants filed an Answer and Jury Demand to the Plaintiff's Complaint generally denying liability and setting forth various affirmative defenses.

The Defendants filed a Motion to Dismiss the Plaintiff's Complaint based upon Tennessee's one (1) year statute of limitations. The District Court denied the Defendants' Motion to Dismiss and the case has proceeded with discovery.

Specifically, the parties have exchanged written discovery, including Answers to Interrogatories and Responses to Document Requests. In addition, the Defendant, Virco, Inc. has recently served a Supplemental Response to Plaintiff's Request for Production of Documents on or about June 1, 2007.

Furthermore, with respect to discovery, the parties have proceeded with depositions of the following individuals: the Defendant, Bobby E. McKuin (August 1, 2006); Tennessee Highway Patrol Trooper, Michael Bolton (July 31, 2006); Tennessee Highway Patrol Sergeant Sadie Chatman (December 18, 2006); Bonnie Vincent (December 19, 2006): and Richard Vincent (December 19, 2006). The deposition of the Defendant, Virco, Inc. has been noticed by the Plaintiff and, by agreement of the parties, is likely to be conducted on or about July 27, 2007 in Conway, Arkansas. The Plaintiff's deposition was conducted on May 4, 2007 and is scheduled to be resumed on July 17, 2007.

## II.     ARGUMENT

A.     Statement of the Defendant Bobby E. McKuin or Witnesses.

The Plaintiff has requested that the Defendants, Bobby E. McKuin and Virco, Inc., respectively, produce copies of statements McKuin provided relative to the subject incident as well as statements taken of any agent, servant, or employee of Virco, Inc. relative to the subject incident. On or about July 13, 2006, the Defendant, Bobby E. McKuin responded to Plaintiff's Request for Production of Documents with respect to Requests Nos. 7 and 8, as follows (*See* Exhibit No. 2):

> Request No. 7:
>      Copies of all statements you provided relative to this incident.

> Response No. 7:
>      Objection. The Defendant objects to this Request on the grounds of the general objections[1]. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

> Request No. 8:
>      Copies of all statements taken of any agent, servant, or employee of Virco relative to this incident.

> Response No. 8:
>      Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

The Defendant, Virco, Inc. similarly objected to the Plaintiff's Request for Production of Documents as to statements of McKuin and witnesses (Virco Responses to Requests Nos. 8, 9 and 10, *See* Exhibit No. 2). Virco's Response to Plaintiff's Request for Production

---

[1]  The general objections including objections to the extent that Plaintiff's Request for Production of Documents was vague, overly broad and unduly burdensome and imposed obligations in excess of those imposed by Rules 26 and 34 of the Federal Rules of Civil Procedure.

of Documents was served on or about July 28, 2006, prior to Mr. McKuin's deposition taken on August 1, 2006.

On or about October 27, 2006, counsel for the Defendants advised counsel for the Plaintiff that Virco, Inc. had taken no statement of any witnesses, including Mr. McKuin. In addition, after further requests by Plaintiff's counsel to produce any statements taken by Virco of Mr. McKuin after the subject accident, Virco has searched its records and has no statements of any witnesses, including Mr. McKuin. This response was again communicated to Plaintiff's counsel on June 20, 2007 by Defendants' counsel.

Notwithstanding, counsel for the Defendants is in possession of a copy of a recorded statement taken from the Defendant, Bobby McKuin on March 28, 2003 by the Defendants' commercial motor vehicle liability insurer, United States Fire Insurance Company. The Defendants, Virco, Inc. and Bobby E. McKuin submit that said recorded statement of Mr. McKuin is protected from disclosure by the work-product privilege as it was prepared in anticipation of litigation. *See* Exhibit No. 2. The Defendants properly objected to production of any statements of Mr. McKuin at the time of their Responses to Plaintiff's respective Requests for Production of Documents in July, 2006 based, *inter alia*, on the grounds of work-product privilege and/or as prepared in anticipation of litigation.

The work-product doctrine of <u>Hickman v. Taylor</u>, 329 U.S. 495, 510-511, 67 S.Ct. 385, 393, 91 L. Ed. 451 (1946) provides immunity from the discovery of materials which are prepared in anticipation of litigation. The work-product doctrine protects the following: 1.) The document or tangible thing, 2.) which was prepared in anticipation of litigation, and 3.) was prepared by or for a party, or by or for a party's representative. <u>Pasteris v. Robillard</u>, 121 F.R.D. 18, 20 (D. Mass. 1998). The pertinent test is "whether

in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Colonial Gas Company v. Aetna Casualty and Surety Company, 144 F.R.D. 600, 605 (D. Mass. 1992).

Finally, the recorded statement of Mr. McKuin, which Defendants' submit is protected by the work product privilege, is not discoverable until the Plaintiff, O'Sullivan, has established that he has a "substantial need" for the materials and cannot obtain the "substantial equivalent" of the materials without "undue hardship." Fed.R.Civ.P. 26(b)(3); Connelly v. Dunn & Bradstreet, Inc., 96 F.R.D. 339, 343 (D. Mass. 1982).

With respect to the recorded statement of Mr. McKuin, as stated above, Defendants state that said recorded statement was prepared in anticipation of litigation. Specifically, Defendants' commercial motor vehicle liability insurer, United States Fire Insurance Company, took the recorded statement of Mr. McKuin on March 28, 2003, as part of its investigation of the subject accident, specifically with respect to potential subrogation against Bonnie Vincent and Richard Vincent, for property damages to the tractor-trailer operated by Mr. McKuin. See, Affidavit of Jennie Harvey, attached hereto as Exhibit No. 1. On March 25, 2003, the subject incident was reported to United States Fire Insurance Company by Virco, Inc.'s agent, AON. See Exhibit No. 1. Thereafter, in consideration of a potential subrogation action, Ms. Rebecca Rambadt of United States Fire Insurance Company took the recorded statement of Virco, Inc.'s tractor-trailer operator, Bobby E. McKuin. See Exhibit No. 1. Furthermore, the Defendants submit that the facts of the subject accident (Bonnie Vincent had fallen asleep while operating her motor vehicle and collided with the tractor-trailer operated by Mr. McKuin) compel a

5

conclusion that there was a probability of litigation in the future by and between the

Vincents and the Defendants and/or the Plaintiff, Robert O'Sullivan.  Plaintiff's counsel

notified Virco, Inc. of a reported claim on behalf of Mr. O'Sullivan on or about July 28,

2003.  At that time, Plaintiff's counsel had already obtained a copy of the extensive

police report prepared by Trooper Michael Bolton dated March 15, 2003.  *See*, Affidavit

of Clark W. Yudysky, attached hereto as Exhibit No. 2.

Furthermore, the Plaintiff has not made the necessary showing of a "substantial

need" for the material and that he cannot obtain the substantial equivalent without "undue

hardship."  In this case, the Plaintiff has had possession of Trooper Michael Bolton's

extensive investigation report dated March 15, 2003 (*see* Exhibit No. 2) and copies of

documents produced by Virco, Inc. relative to the subject accident, including Virco's

First Report of Accident (*see* Exhibit No. 2), copies of the documents produced by Virco,

Inc. regarding the subject incident and operation by Mr. McKuin (Trip Report and Trip

Records, *see* Exhibit No. 2).

Finally, the parties have noticed and conducted the depositions of all percipient

witnesses to the subject accident of March 15, 2003 including the Defendant, Bobby E.

McKuin, Bonnie Vincent, Richard Vincent, the Plaintiff, Robert O'Sullivan, Trooper

Michael Bolton, and Trooper Sadie Chatman.  Specifically, Mr. McKuin's deposition

conducted in Conway, Arkansas was extensive, lasting five (5) hours and consisting of

195 pages of deposition testimony.  Although Plaintiff notes that Mr. McKuin appeared

to indicate that his memory was better back in 2003 than it was in 2006, it is clear from

the five (5) hours of deposition testimony that Mr. McKuin had no problems with his

memory relative to the subject accident and no suggestion of any inconsistent testimony

(*See* selected deposition pages from Mr. McKuin's deposition, Exhibit No. 2).

Finally, despite Plaintiff's contention in his Motion to Compel discovery, Mr.

McKuin did not rely upon his recorded statement for purposes of preparing for his

deposition taken on August 1, 2006.  Mr. McKuin testified at deposition that he gave an

interview to representatives of Virco, Inc. after the accident.  Furthermore, Mr. McKuin

testified that the "statement" he indicated he reviewed in preparation of the deposition

was in fact his Answers to Interrogatories.  (See McKuin Deposition, pages 184-185,

Exhibit No. 2.)

## III.    REQUEST FOR COMPLETE VIRCO, INC.'S PERSONNEL FILE
##          REGARDING BOBBY E. MCKUIN

The Plaintiff, Robert O'Sullivan requested that Virco, Inc. produce a "true,

accurate and complete copy of the personnel file of McKuin." (Request No. 27.)  In its

Response to Plaintiff's Request for Production of Documents, No. 27, Virco responded as

follows:

> Response No. 27:
> Objection.  The Defendant objects to this Request on the grounds of the general
> objections[2].  Further, the Defendant objects to this Request in that it seeks documents
> which were irrelevant and immaterial to the issues in this case.  Finally, the Defendant
> objects to this request in that it seeks personal, confidential and/or medical
> documentation which is unrelated to any issues in this case.

Virco, Inc. stands by its objections to Plaintiff's requests for the full and complete

personnel file of Bobby E. McKuin.  In this regard, the Defendants have prepared a

Privilege Log with regard to the Virco, Inc. personnel file of Mr. McKuin which they

have respectfully objected to.  *See* Exhibit No. 2.  From a review of said Privilege Log,

---

[2]  The general objections included that the Request was vague, overly broad and unduly burdensome and
imposed obligations in excess of those imposed by Rules 26 and 34 of the Federal Rules of Civil
Procedure.

Mr. McKuin has been employed by Virco, Inc. from 1988 through May, 2003. A majority of the documents in Mr. McKuin's personnel file are irrelevant and immaterial to the issues in this negligence case arising out of a motor vehicle incident on March 15, 2003. Furthermore, many documents contain confidential and/or privileged information which Mr. McKuin has a right to privacy and/or protection from disclosure as personal, confidential and/or medical information. (*See* HIPPA.) Defendants submit that there is no issue as to Mr. McKuin's health and physical fitness at the time of the subject accident and Plaintiff's only claim against Virco, Inc. is for negligence based upon *respondeat superior* principles as Virco, Inc. was Mr. McKuin's employer. Defendants submit that Plaintiff has no claim of independent liability against Virco, Inc. in this case. Furthermore, the Defendant McKuin has admitted in Responses to Request for Admissions that Virco, Inc. was his employer at the time of the accident.

Finally, notwithstanding, Virco, Inc. has produced documents from Mr. McKuin's personnel file including the Driver's Handbook, Mr. McKuin's driving history dated June 13, 2002, Mr. McKuin's annual review dated June 14, 2002, and Mr. McKuin's employment document dated August 3, 2002 confirming his employment with Virco, Inc. *See* Exhibit No. 2. The Defendants respectfully submit that the documents more fully described in their Privilege Log are not discoverable and will, if the Court requests, produce said documents *in camera* for the Court's review and consideration.

IV.     **DOCUMENTS RELATING TO THE VEHICLE OPERATED BY BOBBY E. MCKUIN INVOLVED IN THE SUBJECT ACCIDENT.**

The Defendant, Virco, Inc. has recently supplemented its Response to the Plaintiff's Request for Production of Documents and has produced various documents relating to the subject accident including Trip Record and Trip Report. *See* Exhibit No.

2.  Plaintiff has specifically requested that Virco, Inc. produce Mr. McKuin's "Driver's Log" for the subject incident.  The Defendant, Virco, Inc. submits that it has searched its records and does not have Mr. McKuin's "Driver's Log" in its possession, custody or control.  Note that the Department of Transportation Regulations only require that "driver's record of duty status" be maintained for six (6) months.  *See*, U.S. Department of Transportation, Federal Motor Carrier Safety Regulations Sec. 395.8.  The Defendants have otherwise produced all non-privileged documents responsive to Plaintiff's stated request.

## V.    VIRCO TRAINING MATERIALS

Plaintiff has requested that Virco, Inc. produce any training materials given to or received by Mr. McKuin relative to operating tractor-trailers while employed by Virco, Inc.  The Defendant, Virco, Inc. has responded to Plaintiff's request (Request No. 36) that it is searching its records in response to this Request and reserves the right to supplement this Response.  Note that Virco, Inc.'s deposition has not been conducted and that the documents requested to be produced at said deposition cannot be subject to Plaintiff's Motion to Compel Discovery as the time for response has not yet taken place.  Notwithstanding, the Defendant, Virco, Inc. agrees to prepare a list of training materials including, videotapes and/or DVDs that Virco, Inc. made available to its employees, including Mr. McKuin.

## VI.     CONCLUSION AND RELIEF SOUGHT

WHEREFORE, for the reasons stated above, the Defendants, Virco, Inc. and Bobby E. McKuin respectfully request that the Plaintiff, Robert O'Sullivan's Motion to Compel Further Discovery, be denied.

### <u>REQUEST FOR ORAL ARGUMENT</u>

The Defendants, Virco, Inc. and Bobby E. McKuin, respectfully request oral argument relative to Plaintiff's Motion to Compel Further Discovery and their Opposition thereto and state that thirty (30) minutes is sufficient time for all parties to be heard.

Respectfully submitted,
The Defendants,
Virco, Inc., and
Bobby E. McKuin,
By their attorney,


/s/ Clark W. Yudysky
Clark W. Yudysky, BBO # 538210
TOOMEY & YUDYSKY LLP
99 Summer Street
Boston, MA 02110
(617) 946-0930


Date: <u>June 27, 2007</u>

## <u>CERTIFICATE OF SERVICE</u>

I, Clark W. Yudysky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on <u>June 27, 2007</u>.


<u>/s/ Clark W. Yudysky</u>


bmd  83213.1  6/27/07

# EXHIBIT NO. 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ROBERT O'SULLIVAN,       )
   Plaintiff         )
               )
VS.             )  CIVIL ACTION
               )  NO. 05-CV-10863-GAO
VIRCO, INC., RYDER TRUCK RENTAL, )
INC., AS TRUSTEE OF RYDER TRUCK  )
RENTAL LT., and BOBBY E. MCKUNN )
   Defendants       )

## AFFIDAVIT OF JENNIE HARVEY

I, Jennie Harvey, on oath, depose and say as follows:

1. I am a Liability Examiner for United States Fire Insurance Company with a usual place of business in Morristown, New Jersey (hereinafter referred to as "United States Fire Insurance Company"). United States Fire Insurance Company is the commercial motor vehicle liability insurer for the Defendants, Virco, Inc. and its insured driver, Bobby McKuin relative to the above-entitled matter.

2. As part of my claim handling duties, I have reviewed and am familiar with the claim history and claim files regarding the subject accident of March 15, 2003 and the above-entitled matter.

3. On or about March 24, 2003, notice of the subject accident of March 15, 2003 involving Richard and Anita Vincent, Boston Truck Co., Inc. (Plaintiff, Robert O'Sullivan's employer) and the Defendant, Bobby McKuin, was reported to the Customer Service Center for United States Fire Insurance Company.

4. On March 25, 2003, United States Fire Insurance Company acknowledged receipt of the claim reported by Virco, Inc.'s insurance agent, AON.

5.     Further, on March 25, 2003, United States Fire Insurance Company claim representative, Rebecca Rambadt, contacted Virco, Inc. and requested repair invoices and that the insured driver, Bobby McKuin call her for a recorded statement due to potential subrogation involved.

6.     Thereafter, in furtherance of potential subrogation claims and/or other litigation, Rebecca Rambadt took the recorded statement of Bobby McKuin on March 28, 2003.

7.     Bobby McKuin's recorded statement was taken in anticipation of litigation against Bonnie and Richard Vincent, the operator and owner of the motor vehicle that came into contact with the tractor-trailer operated by Bobby McKuin.

**SIGNED UNDER THE PENALTIES OF PERJURY THIS _27_ DAY OF JUNE, 2007.**

_Jennie Harney_
Jennie Harvey

bmd  83212.1  6/27/07

2

# EXHIBIT NO. 2

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT O'SULLIVAN,<br>    Plaintiff | )<br>)<br>) |
| VS. | )<br>)   CIVIL ACTION<br>  NO. 05-CV-10863-GAO |
| VIRCO, INC., RYDER TRUCK RENTAL,<br>INC., AS TRUSTEE OF RYDER TRUCK<br>RENTAL LT., and BOBBY E. MCKUNN<br>    Defendants | )<br>)<br>)<br>) |

## AFFIDAVIT OF CLARK W. YUDYSKY

I, Clark W. Yudysky, on oath, depose and say as follows:

1.      I am counsel for the Defendants, Virco, Inc., Ryder Truck Rental, Inc., as Trustee

of Ryder Truck Rental LT., and Bobby E. McKuin in the above-entitled matter.

2.      Attached hereto as Exhibit A is a true and accurate copy of the Defendant, Bobby

E. McKuin's Response to Plaintiff, Robert O'Sullivan's First Request for Production of

Documents.

3.      Attached hereto as Exhibit B is a true and accurate copy of the Defendant, Virco,

Inc.'s Response to the Plaintiff, Robert O'Sullivan's First Request for Production of

Documents.

4.      Attached here to as Exhibit C is a true and accurate copy of the Defendant, Virco,

Inc.'s Supplemental Response to the Plaintiff, Robert O'Sullivan's First Request for

Production of Documents.

5.      Attached here to as Exhibit D is the Defendants, Virco, Inc. and Bobby E.

McKuin's Privilege Log in Support of Defendants' Opposition to Plaintiff, Robert

O'Sullivan's Motion to Compel Further Discovery from the Defendants, Virco, Inc. and Bobby E. McKuin.

6.      Attached hereto as Exhibit E are true and accurate copies of selected pages from the deposition of Bobby E. McKuin, conducted on August 1, 2006.

**SIGNED UNDER THE PENALTIES OF PERJURY THIS** 27th **DAY OF JUNE, 2007.**

_____
Clark W. Yudysky

bmd  83231.1  6/27/07

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ROBERT O'SULLIVAN,                                )
    Plaintiff                               )
                                            )
VS.                                              )    CIVIL ACTION
                                            )    NO. 05-CV-10863-GAO
VIRCO, INC., RYDER TRUCK RENTAL,                 )
INC., AS TRUSTEE OF RYDER TRUCK                  )
RENTAL LT., and BOBBY E. MCKUNN                  )
    Defendants                              )

## DEFENDANT, BOBBY E. MCKUNN'S RESPONSE TO PLAINTIFF, ROBERT O'SULLIVAN'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

The Defendant, Bobby E. McKunn (hereinafter referred to as "Defendant") hereby responds to the Plaintiff, Robert O'Sullivan's First Request for Production of Documents, as follows:

## GENERAL OBJECTIONS

The Defendant, Bobby E. McKunn (hereinafter referred to as "Defendant"), generally objects to the Plaintiff's First Request for Production of Documents to the extent it is vague, overly broad and unduly burdensome and imposes obligations in excess of those imposed by Rules 26 and 34 of the Federal Rules of Civil Procedure.

The Defendant will not produce those documents, if any, which are privileged or which were prepared in anticipation of litigation or for trial by or for the Defendant or by or for any of his representatives, nor shall the Defendant produce documents which are otherwise beyond the bounds of permissible discovery, as defined in Rule 26(b) of the Federal Rules of Civil Procedure. By stating that production is permitted with respect to

any specific request, the Defendant is not representing that any documents exist, but will produce the documents requested, if any, subject to the foregoing general objections.

Further, the Defendant objects to the Definitions contained in said First Request for Production of Documents and will respond in accordance with the Federal Rules of Civil Procedure. Finally, the Defendant objects to said First Request for Production of Documents as the Requests for Production are directed to "Bobby E. McKunn" whose true identity is Bobby E. McKuin.

## WITHOUT WAIVING SAID OBJECTIONS, THE DEFENDANT RESPONDS AS FOLLOWS:

### REQUEST NO. 1:

A copy of each accident or operator's report completed or authored by you, regarding this incident.

### RESPONSE NO. 1:

The Defendant has no such document.

### REQUEST NO. 2:

All documents that depict or describe, graphically or otherwise the scene of the incident, including but not limited to photographs, videotapes, sketches and diagrams.

### RESPONSE NO. 2:

The Defendant has no such documents.

### REQUEST NO. 3:

All documents that depict or describe, graphically or otherwise any of the subject vehicles involved in the incident, including but not limited to photographs, videotapes, sketches and diagrams.

**RESPONSE NO. 3:**

    The Defendant has no such documents.

**REQUEST NO. 4:**

    A copy of the registration and title of the vehicle owned and/or operated by you that was involved in the incident.

**RESPONSE NO. 4:**

    The Defendant has no such documents.

**REQUEST NO. 5:**

    A copy of any and all bills for repair for damage to the vehicle that you owned or operated that was involved in the incident.

**RESPONSE NO. 5:**

    Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 6:**

    A copy of the damage estimate of the vehicle that you owned or operated that was involved in the incident.

**RESPONSE NO. 6:**

    The Defendant has no such documents.

**REQUEST NO. 7:**

    Copies of all statements you provided relative to this incident.

**RESPONSE NO. 7:**

    Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents

which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

**REQUEST NO. 8:**

Copies of all statements taken of any agent, servant or employee of Virco, relative to this incident.

**RESPONSE NO. 8:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

**REQUEST NO. 9:**

Copies of all statements of witnesses to this incident.

**RESPONSE NO. 9:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

**REQUEST NO. 10:**

Copies of all statements taken of witnesses to the condition of the vehicles involved in this incident.

**RESPONSE NO. 10:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

**REQUEST NO. 11:**

Copies of any and all claims made by you against any insurance carrier for personal injury or property damage arising from the incident.

**RESPONSE NO. 11:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 12:**

Copies of any and all official citations or warnings received by you arising from the incident.

**RESPONSE NO. 12:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 13:**

Copies of any and all diagrams of the incident scene.

**RESPONSE NO. 13:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege. Without waiving said objections, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 14:**

Copies of any and all motor vehicle liability insurance policies and riders, including "umbrella" or "excess" policies purportedly in force and effect at the time of the incident. This request requires [*sic*] of the Coverage Selections Page of each policy.

**RESPONSE NO. 14:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents. The Defendant reserves the right to supplement this Response.

**REQUEST NO. 15:**

All documents, photographs, reports, or records, including, but not limited to reports, records, or photographs that belong to you or that are in your possession, custody or control that you intend to introduce into evidence at the trial of this action.

**RESPONSE NO. 15:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the

6

Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege. Without waiving said objections, the Defendant responds as follows: The Defendant has not made any decision regarding trial documents.

## REQUEST NO. 16:

Any other document that relate [*sic*] to or could be deemed relevant to this incident.

## RESPONSE NO. 16:

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

## REQUEST NO. 17:

Any and all documents used or referred to in any way when answering the Plaintiff's interrogatories propounded to you.

## RESPONSE NO. 17:

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege. Without waiving said objections, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 18:**

Copies of any and all documents received from or sent to the U.S. Department of Transportation concerning the incident.

**RESPONSE NO. 18:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 19:**

Copies of any and all documents or decisions generated as a result of any administrative hearings held as a result of the incident.

**RESPONSE NO. 19:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 20:**

All documents which refer to, comment on or constitute correspondence between you and the Plaintiff concerning the incident.

**RESPONSE NO. 20:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 21:**

All documents which refer to, comment on or constitute correspondence between you and Virco, concerning the incident.

**RESPONSE NO. 21:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege. Without waiving said objections, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 22:**

All documents which refer to or comment on the road conditions, weather and atmospheric conditions or visibility at the time and place of the incident.

**RESPONSE NO. 22:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 23:**

All documents which refer to, comment on or constitute any reports of experts in any way relating to the incident.

**RESPONSE NO. 23:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege. Further, the Defendant objects to this

Request as it is beyond the scope of discovery pursuant to Federal Rule of Civil

Procedure 26.

**REQUEST NO. 24:**

A copy of your driver's license.

**RESPONSE NO. 24:**

Please see documents attached hereto as Exhibit No. 1.

**REQUEST NO. 25:**

A copy of any lease agreement/contract for any of the vehicles involved in the

incident.

**RESPONSE NO. 25:**

Objection. The Defendant objects to this Request on the grounds of the general

objections. Without waiving said objection, the Defendant responds as follows: The

Defendant has no such documents.

**REQUEST NO. 26:**

A copy of your cellular phone statement/bill including use dated March, 2003.

**RESPONSE NO. 26:**

Objection. The Defendant objects to this Request on the grounds of the general

objections. Without waiving said objection, the Defendant responds as follows: The

Defendant has no such documents.

**REQUEST NO. 27:**

Photocopies of any and all documents produced by and/or received from any

court or government agency relative to the suspension of your motor vehicle operator's

license, to include any such suspension that occurred in the five (5) years prior to the

incident.

**RESPONSE NO. 27:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 28:**

A copy of the curriculum vitae for any expert in this matter.

**RESPONSE NO. 28:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege. Further, the Defendant objects to this Request as it is beyond the scope of discovery pursuant to Federal Rule of Civil Procedure 26.

**REQUEST NO. 29:**

All documents, including statements, concerning the incident authored, prepared, taken or attributable in any way to you, before you retained counsel, or which are not privileged.

**RESPONSE NO. 29:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

**REQUEST NO. 30:**

All documents that refer to, comment on or constitute investigative reports concerning the incident prepared by any governmental agency or authority, including but not limited to police, fire, paramedic and ambulance reports.

**RESPONSE NO. 30:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege. Without waiving said objections, the Defendant responds as follows: The Defendant has no such documents.

Respectfully submitted,
The Defendant,
Bobby E. McKunn,
By his attorneys,


Clark W. Yudysky, BBO # 538210
TOOMEY & YUDYSKY LLP
99 Summer Street
Boston, MA 02110
(617) 946-0930

Date: 7/13/06

12

## CERTIFICATE OF SERVICE

I, Clark W. Yudysky, counsel for the defendants, Virco, Inc., Ryder Truck Rental, Inc., As Trustee of Ryder Truck Rental Lt. and Bobby E. McKunn, do hereby certify that I served a copy of the foregoing **DEFENDANT, BOBBY E. MCKUNN'S RESPONSE TO PLAINTIFF, ROBERT O'SULLIVAN'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS,** on all parties to this action by mailing a copy of same, postage prepaid, to them or their counsel of record:

Scott D. Peterson, Esquire
HEALY & HEALY, P.C.
15 Walnut Street, Suite 400
Wellesley Hills, MA 02481

Date: ___7/13/06___                    Attorney: _____

bmd  73991.1  7/13/06

13

# EXHIBIT NO. 1





CLASS: A    Combination Vehicle - Class B, C, D.
RESTRICTIONS
B. Corrective Lenses

ENDORSEMENTS
T. Doubles/Triples

MEDICAL CODES
(none)

$42.00

# EXHIBIT B

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

ROBERT O'SULLIVAN,          )
    Plaintiff            )
                           )
VS.                      )      CIVIL ACTION
                           )      NO. 05-CV-10863-GAO
VIRCO, INC., RYDER TRUCK RENTAL,  )
INC., AS TRUSTEE OF RYDER TRUCK   )
RENTAL LT., and BOBBY E. MCKUNN   )
    Defendants           )

### DEFENDANT, VIRCO, INC.'S RESPONSE TO PLAINTIFF, ROBERT O'SULLIVAN'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

The Defendant, Virco, Inc. (hereinafter referred to as "Defendant") hereby responds to the Plaintiff, Robert O'Sullivan's First Request for Production of Documents, as follows:

### GENERAL OBJECTIONS

The Defendant generally objects to the Plaintiff's First Request for Production of Documents to the extent it is vague, overly broad and unduly burdensome and imposes obligations in excess of those imposed by Rules 26 and 34 of the Federal Rules of Civil Procedure.

The Defendant will not produce those documents, if any, which are privileged or which were prepared in anticipation of litigation or for trial by or for the Defendant or by or for any of its representatives, nor shall the Defendant produce documents which are otherwise beyond the bounds of permissible discovery, as defined in Rule 26(b) of the Federal Rules of Civil Procedure. By stating that production is permitted with respect to any specific request, the Defendant is not representing that any documents exist, but will produce the documents requested, if any, subject to the foregoing general obligations.

**SUBJECT TO THE FOREGOING, THE DEFENDANT RESPONDS AS FOLLOWS:**

**REQUEST NO. 1:**

A copy of each written accident report submitted by Virco or anyone on its behalf to the Registry of Motor Vehicles or any governmental entity regarding this incident.

**RESPONSE NO. 1:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: Please see documents attached hereto as Exhibit No. 1.

**REQUEST NO. 2:**

All documents that depict or describe, graphically or otherwise the scene of the incident, including but not limited to photographs, videotapes, sketches and diagrams.

**RESPONSE NO. 2:**

The Defendant has no such documents.

**REQUEST NO. 3:**

All documents that depict or describe, graphically or otherwise any of the subject vehicles involved in the incident, including but not limited to photographs, videotapes, sketches and diagrams.

**RESPONSE NO. 3:**

Please see documents attached hereto as Exhibit No. 2.

**REQUEST NO. 4:**

A copy of both the registration and title of the vehicle owned and/or operated by Virco that was involved in the incident.

**RESPONSE NO. 4:**

The Defendant has no such documents.

**REQUEST NO. 5:**

A copy of any and all bills for repair for damage to the vehicle that Virco owned or operated that was involved in the incident.

**RESPONSE NO. 5:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: Please see documents attached hereto as Exhibit No. 3.

**REQUEST NO. 6:**

A copy of the damage estimate, repair bill, invoice and/or appraisal of the vehicle that Virco owned or operated that was involved in the incident.

**RESPONSE NO. 6:**

Please see documents attached hereto as Exhibit No. 4.

**REQUEST NO. 7:**

Copies of all statements taken of the Plaintiff relative to this incident.

**RESPONSE NO. 7:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 8:**

Copies of all statements taken of or provided by any servant, agent or employee of Virco, relative to this incident.

**RESPONSE NO. 8:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

**REQUEST NO. 9:**

Copies of all statements taken of or provided by McKunn relative to this incident.

**RESPONSE NO. 9:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

**REQUEST NO. 10:**

Copies of all statements of witnesses to this incident.

**RESPONSE NO. 10:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

**REQUEST NO. 11:**

Copies of all statements taken of witnesses to the condition of the vehicles involved in this incident.

**RESPONSE NO. 11:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

**REQUEST NO. 12:**

Copies of any and all claims made by Virco against any insurance carrier for property damage arising from the incident.

**RESPONSE NO. 12:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: Please see documents attached hereto as Exhibit No. 5.

**REQUEST NO. 13:**

Copies of any and all citations or warnings received by Virco or McKunn arising from the incident.

**RESPONSE NO. 13:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 14:**

Copies of any and all diagrams of the incident scene.

**RESPONSE NO. 14:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 15:**

Copies of any and all motor vehicle liability insurance policies and riders, including "umbrella" or "excess" policies, purportedly in force and effect at the time of the incident, as required by Fed. R. Civ. P. 26(a)(1)(D).

**RESPONSE NO. 15:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant is searching its records in Response to this Request and reserves the right to supplement this Response.

**REQUEST NO. 16:**

All documents, photographs, reports or records, including, but not limited to reports, records, or photographs that belong to Virco or that are in the possession, custody or control of Virco, that Virco intends to introduce into evidence at the trial of this action.

**RESPONSE NO. 16:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by

the attorney/client and/or work product privilege. Without waiving said objections, the Defendant responds as follows: The Defendant has not made any decision regarding trial documents.

**REQUEST NO. 17:**

Any and all documents used or referred to in any way when answering the Plaintiff's interrogatories propounded to you.

**RESPONSE NO. 17:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege. Without waiving said objections, the Defendant responds as follows: Please see documents produced in Response to Plaintiff's Request for Production of Documents.

**REQUEST NO. 18:**

Copies of any and all documents received from or sent to the Tennessee Registry of Motor Vehicles or the U.S. Department of Transportation concerning the incident.

**RESPONSE NO. 18:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 19:**

Copies of any and all documents or decisions generated as a result of any administrative hearings held as a result of the incident.

**RESPONSE NO. 19:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 20:**

All documents which refer to, comment on or constitute correspondence between you and the Plaintiff concerning the incident.

**RESPONSE NO. 20:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: Please see documents attached hereto as Exhibit No. 6.

**REQUEST NO. 21:**

All documents which refer to, comment on or constitute correspondence between you and McKunn concerning the incident.

**RESPONSE NO. 21:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

**REQUEST NO. 22:**

All documents which refer to, comment on or constitute correspondence between you and the defendant, Ryder Truck Rental, Inc., concerning the incident.

**RESPONSE NO. 22:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

**REQUEST NO. 23:**

All documents which refer to or comment on the road conditions, weather and atmospheric conditions or visibility at the time and place of the incident.

**RESPONSE NO. 23:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: Please see documents attached hereto as Exhibit No. 7.

**REQUEST NO. 24:**

All documents which refer to, comment on or constitute any reports of experts in any way relating to the incident.

**RESPONSE NO. 24:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege. Further, the Defendant objects to this Request as it is beyond the scope of discovery pursuant to Federal Rule of Civil Procedure 26.

**REQUEST NO. 25:**

All lease agreement(s) and/or contracts(s) for the vehicle operated by McKunn involved in the incident by and between Virco, Ryder and/or McKunn.

**RESPONSE NO. 25:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: Please see documents attached hereto as Exhibit No. 8.

**REQUEST NO. 26:**

All accident and operator's or owner's reports completed by Virco, Ryder and/or McKunn in regard to the incident.

**RESPONSE NO. 26:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: Please see documents attached hereto as Exhibit No. 1.

**REQUEST NO. 27:**

A true, accurate, and complete copy of the personnel file of McKunn.

**RESPONSE NO. 27:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which are irrelevant and immaterial to the issues in this case. Finally, the Defendant objects to this Request in that it seeks personal, confidential and/or medical documentation which is unrelated to any issues in this case.

**REQUEST NO. 28:**

All documents relating to the vehicle operated by McKunn involved in the incident, including but not limited to any trucking logs, work journals, bills of lading, delivery records/schedules that relate to or include the time period March 15, 2003.

**RESPONSE NO. 28:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant is searching its records in response to this Request and reserves the right to supplement this Response. Please see Response to Request No. 25.

**REQUEST NO. 29:**

Any and all documents which relate to any disciplinary action against McKunn regarding the incident.

**RESPONSE NO. 29:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant has no such documents.

**REQUEST NO. 30:**

The driving history and/or driving record of McKunn.

**RESPONSE NO. 30:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: The Defendant is searching its records in response to this Request and reserves the right to supplement this Response.

**REQUEST NO. 31:**

All documents which refer to, comment on or constitute investigative reports concerning the incident prepared by any governmental agency or authority, including but not limited to police, fire, paramedic, and ambulance reports.

**RESPONSE NO. 31:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: Please see Exhibit No. 7.

**REQUEST NO. 32:**

A copy of the curriculum vitae for any expert in this matter.

**RESPONSE NO. 32:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege. Further, the Defendant objects to this Request as it is beyond the scope of discovery pursuant to Federal Rule of Civil Procedure 26.

**REQUEST NO. 33:**

All documents, including statements, concerning the incident authored, prepared, taken or attributable in any way to you, before you retained counsel, or which are not privileged.

**RESPONSE NO. 33:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which were prepared or obtained in anticipation of litigation or for trial by or for the Defendant or by or for the Defendant's representative and/or is otherwise protected by the attorney/client and/or work product privilege.

**REQUEST NO. 34:**

A copy of any and all practices, policies and/or procedures that were in effect and applicable to the vehicle operated by McKunn at the time of the incident, including but not limited to employment handbooks or manuals.

**RESPONSE NO. 34:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which are irrelevant and immaterial to the issues in this case. Without waiving said objections, the Defendant responds as follows: The Defendant is searching its records in response to this Request and reserves the right to supplement this Response.

**REQUEST NO. 35:**

Any and all documents that refer to, relate to or comment on the nature and extent of any tests taken by and/or training received by McKunn regarding the vehicle operated by McKunn at the time of the incident within the ten (10) year period before the incident.

**RESPONSE NO. 35:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which are irrelevant and immaterial to the issues in this case. Without waiving said

13

objections, the Defendant responds as follows: The Defendant is searching its records in response to this Request and reserves the right to supplement this Response.

## REQUEST NO. 36:

A copy of any and all training materials, manuals, polices, booklets and/or instructions given to and/or received by McKunn regarding the operation of the subject vehicle.

## RESPONSE NO. 36:

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which are irrelevant and immaterial to the issues in this case. Without waiving said objections, the Defendant responds as follows: The Defendant is searching its records in response to this Request and reserves the right to supplement this Response.

Respectfully submitted,
The Defendant,
Virco, Inc.
By its attorneys,

Clark W. Yudysky, BBO # 538210
TOOMEY & YUDYSKY LLP
99 Summer Street
Boston, MA 02110
(617) 946-0930

Date: ___ **7/25/06** ___

## CERTIFICATE OF SERVICE

I, Clark W. Yudysky, counsel for the defendants, Virco, Inc., Ryder Truck Rental, Inc., As Trustee of Ryder Truck Rental Lt. and Bobby E. McKunn, do hereby certify that I served a copy of the foregoing **DEFENDANT, VIRCO, INC.'S RESPONSE TO PLAINTIFF, ROBERT O'SULLIVAN'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**, on all parties to this action by mailing a copy of same, postage prepaid, to them or their counsel of record:

> Scott D. Peterson, Esquire
> HEALY & HEALY, P.C.
> 15 Walnut Street, Suite 400
> Wellesley Hills, MA 02481

Date: **7/28/06**            Attorney: _____

bmd  73929.i  7-27-06

15

# EXHIBIT NO. 1

OWNER / DRIVER REPORT                                    Mailed back
                                                          3/21/03

IMPORTANT: COMPLETE FORM BELOW AND MAIL TO: FINANCIAL RESPONSIBILITY SECTION, P.O. BOX 945, NASHVILLE, TENNESSEE 37202.

Date of Accident ___March    15    2003    Saturday    5:00 pm___
                   (Month)   (Day)   (Year)  (Day of Week)  (Time)    (AM/PM)

Place of Accident ___Lakeland    Shelby    I-40___
                    (City or Town)      (County)           (Street or Highway)

PROVIDE COMPLETE INFORMATION FOR YOU, THE OPERATOR AND/OR OWNER OF THE VEHICLE INVOLVED IN THIS ACCIDENT.

                                                    FLC120645T
Vehicle Make __Frtl.__  Vehicle Year __2000__  Type Vehicle __70"RR__  I.C.C. or Self-Insured # _____

Name of Operator __Bob McKuin__                    DOB 4-25-37

Address __1441 E. Branch, Morriton AL 72110__    Zip _____

Driver License No.: __500387559__  State __AR__  Expiration Date: __4-25-05__

Name of Owner __Ryder - Virco Leases from Ryder__  DOB _____

Address __1120 Hwy 65 N Conway AR 72032__    Zip _____

Driver License No.: _____  State _____  Expiration Date: _____

Were there injuries or death involved in this accident? ☐ Yes  ☒ No

Damages to your vehicle: ☐ Less than $400  ☒ Over 400. If over $400 enter amount __No est done yet__

If available, list following information on all other drivers involved in this accident:

__Vincent__          __Anita__
(Last Name)          (First Name)          (Middle Initial)          (Driver License No.)


(Last Name)          (First Name)          (Middle Initial)          (Driver License No.)


                              (Signature)                              (Date)

## COMPLETE BUT DO NOT DETACH FORM BELOW

Date of Accident __3-15-03__    Location of Accident __Shelby County__
                                                      (County)
Did you have liability insurance coverage for this accident? Yes ☒  No ☐
If yes, provide complete information below:
Name of Insurance Company (Not Agency) __AON Risk Services__
Address __707 Wilshire Boulevard, Suite 6000  Los Angeles CA__ Zip __90017-0460__
Policy Number __133668926I__  Policy Period: From __4-1-02__ to __4-1-03__
Name of Operator __Bob McKuin__  Address _____
Name of Policyholder __Virco Inc.__  Address __P.O. Box 5000 Conway AR 72033__
Vehicle Make __Frtl.__  Vehicle Year __2000__  Vehicle Type __FLC120645T 70'R B__
Name of Insurance Representative (Agency) who issued policy __AON Risk Services__
Address __707 Wilshire Boulevard, Suite 6000  Los Angeles CA__ Zip __90017__
NOTE: The insurance information you provide will be forwarded to the insurance company for verification.



# TENNESSEE DEPARTMENT OF SAFETY

## OWNER / DRIVER REPORT

As set forth under the provisions of 55-12-104, T.C.A., you must file or have filed in your behalf, a personal accident report with the Department of Safety, if you were involved in an automobile accident as an owner or driver involving death or injury, or in which damage to property was in excess of four hundred dollars ($400) to any person involved. This report is required regardless of who was at fault and in addition to any report filed by an investigating officer.

**Failure to file a personal accident report with the Department of Safety shall result in the suspension of driver license and registrations or nonresident operating privileges of any person involved in an accident.**

Your report must be submitted to this Department within twenty (20) days from the accident in order to avoid the proposed suspension of your driving and registration privileges. You can satisfy this requirement by completing the reverse side of this form and returning it to the Financial Responsibility Section, P.O. Box 945, Nashville, Tennessee 37202, (Telephone Number: 615/741-3954).

Thank you for your cooperation                                    Financial Responsibility Section

Investigating Officer _____ *TRP M. Bolton* _____

Agency _____ *THP* _____

Telephone _____ *(901) 543-6256* _____

BF-0395 (Rev. 11/90)

---

### DO NOT WRITE BELOW THIS LINE

### DEPARTMENTAL USE ONLY

TO THE INSURANCE COMPANY:

Please advise this Department whether or not your Company, as indicated on the reverse side, provide liability insurance coverage for this accident.

☐ YES          ☐ NO

If no, reason for denial:_____

_____

_____

_____          _____
Signature of Authorized Representative                     Name of Insurance Company

_____
Date

BF-0395 (Rev. 11/90)

# EXHIBIT NO. 2







# EXHIBIT NO. 3

FROM : BARLOWORLD                PHONE NO. : 5019553282            Mar. 26 2003 09:02AM P1

CLAIM # 464 AE 216525

```
**************************************
*                                    *
*   BARLOWORLD FREIGHTLINER -- L ROCK *
*       11700 VALENTINE RD.           *
*     NORTH LITTLE ROCK, AR. 72117    *
*                                    *
**************************************
```

FAXED    Bob McCain

CUSTOMER INVOI(

03-25-03

CUSTOMER NAME                    NUMBER    V138         REPAIR ORDER NUMBER
VIRCO MFG CORP                   PHONE     501 329-2901      >>>> LB10601 <<<<
PO BOX 5000                      P.O. NO.
CONWAY, AR 72033                 COMPLETE 03-21-03     DATE  03-19-03 16:23
                                                       SVC WTR   KG *RO

SERIAL NO.  1FUYSXYB4YLGB1202    UNIT NO. 920856        MILEAGE  250052
YEAR/MAKE/MODEL - 00 FTL CENT                           LICENSE
ENGINE/MODEL/SERL -                                     CPL/ARRG
TRNS/MODEL/SERL -                                       R RATIO
RXLS MODEL/SERL -
SELL DLR                         DEL DATE               DEL MILE

--------------------------------------------------------------------

1  REPAIR PER ESTIMATE
     REPAIRED AND REPLACED PER EST.
                      TOTAL LABOR                           610.20
                      TOTAL PARTS                           492.21

            1   21-25475-014          AIR END-L       146.54
            1   21-25671-000          BEAM-BUMP        74.26
            1   21-25476-000          BEAM-END.        65.33
            1   21-25772-000          SUPT, LH         30.33
            1   A21-25988-000         BMPT, SUPT       53.20
            1   A21-25795-000         SUPT ASY          7.60
            1   22-46856-000          SPLASH SH        20.92
            1   A22-45245-175         STEP ASSY        94.03

2  REFINISH PER ESTIMATE
     PREP AND PAINT AS NEEDED THREE COLORS IMRON 5000
                      TOTAL LABOR                           351.00
                      TOTAL PAINT                            86.51

N0437        1   PAINT                 BLUE             51.54
N0892        1   PAINT                 YELLOW           18.08
N0225        1   PAINT                 WHITE            16.89

                         ENVIROMENTAL CHARGE             86.51

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                      B/S LABOR RETAIL    350.5      961.20
                      PAINT SHOP PT & MPT 354.5       86.51
                      PTS B/S RESALE      362D.5     492.21
                      OTH SUP & TOOLS B/S 707D.5      86.51
                      PLEASE PAY THIS TOTAL 110.1   1626.43

DISCLAIMER OF WARRANTIES

                              3/26/03            tax   119.94
CONTINUED                 3C14210-45300     $   1746.37
                          k 11.26 43  V           TOTAL

```
**********************************************
*                                            *          CUSTOMER INVOIC
*    BARLOWORLD FREIGHTLINER - L ROCK        *               PAGE 2
*           11700 VALENTINE RD.              *
*       NORTH LITTLE ROCK, AR. 72117         *
*                                            *             03-25-03
*                                            *
**********************************************
CUSTOMER NAME                    NUMBER   V138       REPAIR ORDER NUMBER
VIRCO MFG CORP                   PHONE    501 329-2901   >>>>  LB10601  <<<<
```

ANY WARRANTIES ON THE PRODUCTS SOLD HEREBY ARE THOSE MADE BY MANUFACTURER,
IF ANY.  THE SELLER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES EITHER EXPRESS
OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OR MERCHANTABILITY OR FITNESS FOR
A PARTICULAR PURPOSE, AND BARLOWORLD FREIGHTLINER INC. NEITHER ASSUMES NOR
AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH
THE SALE OF SAID PRODUCTS.
WE HEREBY CERTIFY THAT THESE GOODS WERE PRODUCED IN COMPLIANCE WITH ALL APPLI-
CABLE REQUIREMENTS OF SECTIONS 6, 7 AND 12 OF THE FAIR LABOR STANDARDS ACT OF
1938, AS AMENDED AND OF REGULATIONS AND ORDERS OF THE ADMINSTRATOR OR WAGE AND
HOUR DIVISION ISSUED UNDER SECTION 14 THEREOF.
                           RECEIVED BY :     _____

   TERMS: NET DUE BY THE 10TH OF THE FOLLOWING MONTH ON CHARGE ACCOUNTS

        THANK YOU   PLEASE COME AGAIN

# VIRCO REPAIR ORDER

No. 14449

DATE: 3/25/03

DATE WANTED:

UNIT TYPE: Rigollus Presidio

UNIT NO. # 3010660

LOCATION (O.A.S

MILEAGE

COST CENTER

| QTY. | PART NO. & DESCRIPTION | EACH | TOTAL |
|------|----------------------|------|-------|
| 1 | TUBE RUBBER coolant | | $3.41 |
| 1 | 700-515-P12 Brake Chm | | $28.50 |
| 3 | UH-520-13-14 3g Ckd | $40.76 | $23.28 |
| 2 | 5916 Grease Roller Lubricator tube | | $3.44 |

REPAIR DESCRIPTION

Replace left rear wheel

10th Replace left rear marker light

Complete

WCM 3188

301-4210

$73.783

| | MON | DAY | EMP. | LBR. |
|---|-----|-----|------|------|
| | 3 | 25 | 10 | 4 |
| | 3 | 26 | 10 | 4 |

| LABOR | 420.00 |
|-------|--------|
| PARTS | 132.63 |
| TOTAL | |

03-31-03    12:15    ARKANSAS TRAILER                ID=501 666 1787              P.02

  

ARKANSAS TRAILER MFG. CO., INC.

3260 S. Elm Street          5616 Wheeler Avenue       8421 CW Post Road         3003 B Clayton Street
Little Rock, AR 72204       Ft. Smith, AR 72901       Jonesboro, AR 72401       Springdale, AR 72762
Phone: 501-666-5412         Phone: 501-646-0009       Phone: 870-935-0500       Phone: 501-725-1106
800-666-5412                800-787-0009              888-331-6366              800-256-1733
Fax: 501-666-1787           Fax: 501-565-0090         Fax: 870-935-6616         Fax: 501-725-1108

TO: RYDER                                        DATE: 03/31/03
ADDR:
CITY: CONWAY, AR                                 NO: 179-303
NAME: MARK              FAX#

| MAKE | MODEL | SERIAL NO. | UNIT NO. | TYPE | HEIGHT | NO. OF CORR. | LENGTH |
|------|-------|------------|----------|------|--------|--------------|--------|
| GR DANE |    |            | 301065   | DXV  | 13'6"  | N/A          | 53'    |

| QUAN | DESCRIPTION | HOURS TOTAL | LABOR TOTAL | PARTS EACH | PARTS TOTAL |
|------|-------------|-------------|-------------|------------|-------------|
|      | REPLACE 2 SIDE PANELS R/S |  | 456.00 | 58.00 | 116.00 |
|      | REMOVE PLYWOOD TO MAKE REPAIRS |  | 76.00 |  | 0.00 |
|      | INSTALL C/F DECALS R/S |  | 38.00 |  | 50.00 |
|      | "COMERCIAL AND EDUCATIONAL" |  |  |  |  |
|      | BLUE & GOLD |  |  |  |  |
|      | MISC. |  |  |  | 50.00 |
|      | SHOP SUPPLIES |  |  |  | 11.40 |
|      | SUB TOTAL |  | 570.00 |  | 207.40 |
|      |  |  |  |  | 570.00 |
|      | TOTAL |  |  |  | 777.40 |
|      | STATE TAX | 6.125 |  |  | 39.84 |
|      | COUNTY TAX | 1.000 |  |  | 7.77 |
|      | CITY TAX | 0.500 |  |  | 3.89 |
|      | GRAND TOTAL |  |  |  | 828.90 |

# EXHIBIT NO. 4

# VIRCO / RYDER REPAIR DETAIL WORKSHEET

| UNIT NUMBER | DAMAGE DATE | SERVICE DATE | REPAIR AUTHORIZATION NUMBER |
|---|---|---|---|
| G20866 | ? | 3/21/63 | 200237 |

**DRIVER (IF APPLICABLE)**
Bob McKuin

**MAINTENANCE PERFORMED BY: (VENDOR)**
BostonWorld Freightliner

CORRESPONDS TO VIRCO ACCIDENT NUMBER:

ACCIDENT:    YES: ✓    NO:    PREV.:    NON PREV.:

ACCIDENT / INCIDENT CAUSED BY:
Another Driver hit Bob causeing
Damage to LH front & side of truck

REMARKS:

WORK PERFORMED / TO BE PERFORMED:
Repair Accident Damage

APPROX REPAIR COST $ 1600.00

ESTIMATE ATTACHED: no

REPAIR END OF LEASE:

AUTHORIZED BY: Maggie

AUTH. DATE: 3/19/02

NOTES: Damage has been repaired as per
Maggie

# VIRCO / RYDER REPAIR DETAIL WORKSHEET

| UNIT NUMBER | DAMAGE DATE | SERVICE DATE | | REPAIR AUTHORIZATION NUMBER |
|---|---|---|---|---|
| 301016 | ? | ? | | |

| DRIVER (IF APPLICABLE) | | MAINTENANCE PERFORMED BY: (VENDOR) |
|---|---|---|
| Bob McKuin | | Arkansas Trailer |

**CORRESPONDS TO VIRCO ACCIDENT NUMBER:**

| ACCIDENT: | YES: ✓ | NO: | PREV.: | NON PREV.: |
|---|---|---|---|---|

**ACCIDENT / INCIDENT CAUSED BY:**

Driver in car hit Bob causing trailer
to hit a Bob Truck on RH side

**REMARKS:**

**WORK PERFORMED / TO BE PERFORMED:**

Repair as per Estimate

APPROX REPAIR COST $ 828.90                    ESTIMATE ATTACHED:

REPAIR END OF LEASE: _____    AUTHORIZED BY: _____

                                        AUTH. DATE: _____

NOTES:

Master
53'

1-00 Col 0710-01
9-25-02  2-20-07
10-7-02  3-16-03
-11-20-02
12-20-02
1-24-03

**Physical Inspection Report**
**Virco, Inc. - Conway Division**

Unit # 301066 (+) Okay to Load    Date 12-9-97 Inspector Greg Webb

**Outbound Checklist:**

Check all interior and exterior damages that apply



O - Hole
X - Dent
R - Rub
T - Torn
B - Bent
S - Scratches
P - Patch

{ } DO NOT LOAD  UNTIL REPAIRS HAVE BEEN COMPLETED -

_____

_____

Driver's Inspection - Condition when empty (Interior and Exterior)

_____

**Inbound Checklist:**

Check all interior and exterior damages that apply



301066

List all defects to be corrected - _R R at top = dent Need repair_
_LEFT FRONT hit AT bottom = Rubber Seal on door gone_
_the other one i Taped on_
{ } Condition of the above vehicle is satisfactory _hole in back Door_
I certify the physical condition of this vehicle is noted and correct.
Driver Signature _____    Date _____

{ } Above defects corrected
{ } Above defects need not be corrected for safe operation of vehicle.
     { } Virco        { } Ryder

Mechanic's signature _____    Date _____

Driver's signature _____    Date _____

# EXHIBIT NO. 5

April 3, 2003

Dear Bill,

Per our conversation, on claim # 464AE216525, I am faxing you a copy of the repairs done to our vehicle and trailer.  I will forward the police report to you when I receive it.  My fax number is 501-513-2086 incase you get a police report before I do or need to fax anything to my attention.  My phone number is 1-800-448-4726 ext 2388.   The total cost of the repairs are listed below:

| | |
|---|---|
| Virco work order | $  238.43 |
| Arkansas Trailer | $  828.90 |
| Barloworld Freightliner | $1,746.37 |
| Total | ( $2,813.70) |

Thank you,

Susie Ashe

*accts to credit*

*3014210 -45300*
*$ 2575.27*

*3014210- 43700*
*$ 238.43*

# VIRCO INC.
## INTRA-COMPANY CORRESPONDENCE
## CORPORATE MARKETING

THE FINAL DECISION IS AS FOLLOWS ON INCIDENT #  <u>05/05/03</u>


NO ACTIVITY SINCE: <u>      CLOSED - BOB MCKUIN      </u>

WHY? _____

_____


REPAIR DONE BY AND AMOUNT OF REPAIRS: <u>      $2,813.70</u>

VIRCO WAS REINBURSED BY LADY'S INSURANCE.


DATE CLAIM IS CLOSED?    <u>05/05/03      </u>

HOW MUCH DID INSURANCE PAY ON CLAIM? <u>      NONE</u>


HOW MUCH DID VIRCO PAY ON CLAIM? _____

RECEIVED CHECK FROM KEMPER INSURANCE ON 5/5/03

REPORT DONE BY: <u>      SUSIE ASHE      </u>

**KEMPER AUTO AND HOME**
**CLAIMS ADMINISTRATION**

*12377 Merit Drive, Suite 900*
*Dallas TX 75251*

972/980-3000
Fax  972/980-3350
800/321-5344

||ııı||ıı|||ııı||ıı||ıı|ıı|ı|||||ıııı||ıı||ıı||ıı||ıı|ı|ıı|
VIRCO
PO BOX 5000
CONWAY AR 72033-2203

| Claim #: | 464AE216525N464 |
|---|---|
| Date of Loss: | March 15, 2003 |
| Insured: | VINCENT'RICHARD'A |
| Other: | |
| Office Use | STDCKLTR |

April 29, 2003

Your check is attached.  Please contact the undersigned if you have any questions.

Thank you,

American Manufacturers Mutual
*Bill Edwards*
Claim Department

---

**KEMPER AUTO & HOME**
**CLAIMS ADMINISTRATION**
S220 Belfort Road
Jacksonville, FL 32255

| Claim Check Number | 64-1278 |
|---|---|
| **514-0-330-620** | 611 |

Bank of America
Atlanta, Dekalb County, Georgia

325 977 8219

Issued At
**DALLAS-PL TX**

Date Issued
04/29/03

PAY
TO THE
ORDER
OF

VIRCO

Void if not presented for payment within
180 days after date of issue.

Amount

**Two Thousand Eight Hundred Thirteen and 70/100 Dollars** **************************************

Payment For  PROPERTY DAMAGE - LIABILITY
ATTENTION: SUSIE ASHE

| Claim Number | Policy Number | Loss Date | | VIRCO |
|---|---|---|---|---|
| 464 AE 216525 N 464 | RQ 402085 | 03/15/2003 | | PO BOX 5000 |
| Insured | | Company Use Only | | CONWAY AR 72033-2203 |
| VINCENT RICHARD A | | 46400603732 | | |
| Claimant | | Customer Claim Number | By | |
| VIRCO | | 7168088 | | |

⑈514033062011⑈  ⑉061112788⑈  329  977  8219⑈

Your check is attached.  Please contact the undersigned if you have any questions.



Post Incoming Payments: Display Overview

Process open items  Choose open items  Display currency  Acl essgnm model...  Taxes

| Document date | 05/05/2003 | Type | BK | Company code | 9090 |
| ng date | 05/02/2003 | Period | 4 | Currency | USD |
| Document number INTERNAL | | Fiscal year 2003 | | Translation date 05/02/2003 |
| Reference | 514-0-330-520 | | | Cross-CC no. |
| Doc. header text XEMPER AUTO & HOME, TX | | | Trading part.BA |

Items in document currency

| | PK | SpsA | Acct | | USD | Amount | Tax amnt |
| 001 | 40 | | 0000619102 Lockbox clearing - | | | 2,813.79 | |
| 002 | 50 | | 0000043700 Truck operating exp | | | 238.43- | |
| 003 | 50 | | 0000045300 Repair and maintena | | | 2,575.27- | |

D 2,813.79        C 2,813.79                  0.66       3 Line items

Other line item

| PstKy | 1 | Account | | | Sp.G/L | Trans.type | New co.code |

...ks the window's content                                          PRD (1) (100)  appl1  INS

 3 vehicle accident

**VIRCO MFG. CORPORATION**
**TRAFFIC DEPARTMENT - CONWAY DIVISION**
**FIRST REPORT OF ACCIDENT**

INCIDENT# ___03-09___
Called into AON 3/24
@ 2:45.
Orlando Office
407-563-6200
Ry 325-667

REPORTED BY: BOB MCKUIN    DATE ___3/17/03___ TIME ___8:20 AM___

BY: ___X___ PHONE _____ IN PERSON _____ OTHER _____

DRIVERS NAME  BOB MCKUIN    WHERE IS DRIVER NOW  OUT ON THE ROAD

ACCIDENT DATE: ___3/15/03___    TIME: ___5:00 PM___

TYPE OF ACCIDENT: ___X___ ACCIDENT _____ INCIDENT _____ EQUIPMENT DAMAGE _____

LOCATION: ___I-40 19 MILE MARKER___    ___LAKELAND___ (Shelby County) ___TN___
STREET OR HWY.    CITY    STATE

BRIEF DESCRIPTION OF ACCIDENT:

LADY FELL A SLEEP AND HIT TRUCK ON RIGHT HAND SIDE.  BOB SAID THE CAR HIT HIM ABOUT

3 TIMES.  IT CAUSED BOB TO HIT A BOB TRUCK AND KNOCK IT INTO THE DITCH.

CAR WAS TOWED AWAY AND BOB TRUCK PULLED OUT OF DITCH.

951-543-6258

POLICE INFO: WHICH DEPT.  ___TN POLICE DEPARTMENT___ REPORT#: _____ OFFICER NAME: OFFICER M. BOLTON

VDGE# _____ CITATIONS: NONE GIVEN    TRACTOR # ___808616___ (crossed out)  TRAILER# ___301066___

DAMAGES: ___front of tractor — Down side of trailer (right)___

**OTHER PARTY INFORMATION**

NAME OF DRIVER OR PROPERTY OWNER ① RICHARD AND ANITA VINCENT   Insurance Kemper Dallas Office 1-800-331-5944  CLAIM # 46YAENG525

ADDRESS: ② BOSTON TRUCK COMPANY 617-773-5455    adjuster Bill Edwards 341-3347

**INSURANCE INFORMATION**

COMPANY: _____    POLICY# _____

ADDRESS: _____    PHONE _____

INJURIES: _____

VEHICLES TOWED ___YES (Lowes Car)___    DOT REPORTABLE ___YES___    REPORT TAKEN BY: ___SUSIE___

REMARKS: 3-18 Report Not in—takes 7-10 days for it to get on files
3-24
3-25 Got Nbrs for Bill Edwards (adjuster for Vincent) to call back
3-26 Left Message for Bill Edwards to call back. Mr. Edwards called
back. I faxed his rpt. on truck. 972-980-3350.
4/25 Spoke with Bill. No accident report yet. faxed other
adjustments for vehicle and trailer.
When Bob gets back got to B. Edwards.

# EXHIBIT NO. 6

# HEALY & HEALY, P.C.
## ATTORNEYS AT LAW

THOMAS F. HEALY
JAMES G. HEALY
SCOTT D. PETERSON
SUSAN M. OFTRING
TIMOTHY C. KENNEALD

SCOTT J. BURKE
THOMAS E. SARTINI, III
LESLIE B. SALTER
PAUL E. McIVER

15 WALNUT STREET
SUITE 400
WELLESLEY HILLS, MASSACHUSETTS 02481-2102
TELEPHONE (781) 431-0040
FACSIMILE (781) 431-0154

350 LINCOLN STREET
SUITE 2400
HINGHAM, MASSACHUSETTS 02043
TELEPHONE (781) 749-4433
FACSIMILE (781) 749-4466

July 28, 2003

**VIA CERTIFIED MAIL/RETURN RECEIPT REQUESTED**

Virco Manufacturing Company
1162 Merchandise Mart
Chicago, IL 60654

**Attn: Liability Claims Department**

RE: Robert L. O'Sullivan, Jr.
VS: Bonnie A. Vincent, Richard Vincent,
    Bobbie E. McKunn, and Virco Manufacturing Co.
    D.O.L.: 3/15/03
    Place of Accident: Memphis, Tennessee

Dear Sir/Madam:

By way of introduction, I represent Robert L. O'Sullivan, Jr. Please accept this correspondence as notice of Mr. O'Sullivan's potential third-party liability claim against Virco and its employee Bobbie E. McKunn. I urge you to report this claim to Virco's "business auto" or other appropriate liability insurer.

By way of background, Mr. O'Sullivan was involved in a three-vehicle accident on Interstate 40 in or near Memphis, Tennessee on Saturday, March 15, 2003. Mr. O'Sullivan was in the course of his employment as a furniture mover and truck driver for Boston Truck Company at the time of the accident. Mr. O'Sullivan was operating a 1999 International box truck owned by and registered to SST Leasing Corporation.

As confirmed by the Tennessee Uniform Traffic Crash Report, a copy of which is enclosed, Mr. O'Sullivan was traveling East-bound on Interstate 40 when he was struck by a tractor-trailer operated by Mr. McKunn and owned by Virco. According to the police investigation, Mr. McKunn evidently swerved to the right

Virco Manufacturing Company
July 28, 2003
Page 2

to avoid contact with another vehicle. The Tennessee State
Police determined that this third vehicle was operated by Bonnie
Vincent. Mrs. Vincent evidently admitted that she fell asleep
at the wheel and she was cited by the investigating Tennessee
State Trooper.

After being struck by the tractor-trailer, Mr. O'Sullivan's
box truck was forced off of the road, across the soft shoulder,
and into a culvert. The box truck came to a sudden stop in the
mud and Mr. Sullivan's body was forced into the steering wheel.
Mr. O'Sullivan sustained a serious cervical injury and
exacerbated a pre-existing lumbar injury. Mr. O'Sullivan is
still actively treating for his injuries and has been unable to
work since the day of the accident. His prognosis is guarded,
if not poor, and he may require surgery.

We maintain that Mr. McKunn was negligent in connection
with the operation of his tractor-trailer. Mr. McKunn made a
conscientious decision to swerve to the right and into my
client's travel lane to avoid further contact with the Vincent
vehicle. As such, Mr. McKunn failed to exercise due care for
other vehicles traveling on the roadway.

The Vincents were insured by Kemper Auto & Home at the time
of the accident. Unfortunately, their liability limits are only
$50,000.00. Mr. O'Sullivan is presently pursuing a third-party
tort claim against the Vincents, and I anticipate that their
coverage will be exhausted by way of a pre-suit settlement. Mr.
O'Sullivan will next pursue a first-party claim for underinsured
motorist coverage under his employer's "business auto" policy.
If this insurer denies the underinsured motorist claim or the
arbitrator(s) rules that Mr. McKunn was legally at fault, Mr.
Sullivan intends to pursue a third-party liability claim against
Virco and Mr. McKunn.

I look forward to hearing from your insurer.

Very truly yours,

Scott D. Peterson

SDP/srk
cc. Robert L. O'Sullivan, Jr.
Enclosures
7241\virco_1

# Tennessee Uniform Traffic Crash Report

Please Do Not Write In This Microfilm Space

**Document Type**
- Original Document (select 1)
- Supplement Document
- Amended Document
- Reference Number Override

**Page** 1 **of** 6

**REFERENCE NUMBER**
8335559

Local Agency Number
4A 4190-03

**Type of Crash**
- Fatal (select 1)
- Injury
- Property Damage (Over)
- Property Damage (Under)

Reporting Agency Name

**Reporting Agency Type**
- Tennessee Highway Patrol (THP)
- City/Metropolitan Police Dept. (CPD)
- Sheriff's Office
- Capitol Police
- Commercial Vehicle Enforcement (CVE)
- College/University Campus
- National Park Service
- Other

**Totals**
Vehicles: 03  Killed: 00  Injured: 00

**Date of Crash**
MONTH: Jun  DAY: 05  YEAR: 03

**Day of Crash**
- SUN
- MON
- TUES
- WED
- THURS
- FRI
- SAT
- UNK

**Time of Crash** 1600  **County** 79  **City** 000

**Area**
- Urban
- Rural

**Trafficway/Land Way/Private Way**
- Trafficway - OPEN (select 1)
- Trafficway - CLOSED
- Parking Lot
- Private Property or Private Road

Investigation Complete? Yes / No
Scene Taken? Yes / No
If Yes: If Yes, by Whom?
- Police
- Other

**Additional Destination**
- Not Applicable
- Business
- Residential
- School

**Hit and Run?**
- Yes-Hit Minor Vehicle In Transport
- Yes-Hit Pedestrian or Non-Motorist
- Yes-Hit Parked Vehicle or Object
- No Hit and Run

Solved?
- Yes
- No

**TDOT Use Only**
ROUTE NUMBER  SPC CASE  CO. SEQ.  LOG MILE  LOC

Rail/Crossing ID

GPS Coordinate

**Time Notified** 1611  **Time Arrived** 1617

Police Pursuit Involved? Yes / No

LATITUDE  LONGITUDE

School Bus Related? Yes / No

**ON** Hwy No. and Street Name: I-40

Estimated: .2 FT/MI

**FROM/AT** Hwy No. and Street Name

Mile Post: 18

| Vehicle Number | Total Number of Occupants | Driver Presence |
|---|---|---|
| | | Driver Operated Vehicle |
| | | Driver Operated Non-Contact Vehicle |
| | | Driver Operated Government Vehicle |
| Other | | Driverless Vehicle |

**DRIVER NAME** First: Bonnie  M.I.: A  Last: Vincent
**ADDRESS** Street & Number: 457 Sunfish Bee Spring
**City & State:** Bee Spring, KY  **ZIP** 42207  **Phone Number** (270)286-9481
**Driver's License Number:** V95-496-501  **State** KY  **Exp. Year** 2005
**Date of Birth** 10-13-1754  **Age** 48  **Sex** F  **Race** White
**License Class** D  Endorsements  Complied With
Injury Code  Safety Equipment: 03  AIRBAG
Trapped: Not Applicable / Not Trapped / Trapped/Extricated / Trapped/Not Extricated  Ejected D
Driver Distance: Less 25 mi. / Out of State / Over 25 mi.  Ambulance/Hospital  Medical Transport

**Year of Vehicle** 2000  **Make** Pontiac  **Model** Grand Prix  **Color** Gray  **Body Type** 4 DR
**Vehicle ID Number** 1G2WP12K67F163405  **Body Code** 01
**License Plate Number** 574-6SW  **State** KY  **Exp. Year** 2003
**Vehicle Owner** First: Richard  Last: Vincent
Street Address
City & State  ZIP  Phone Number

Violations: (may select 3)
- None
- Alcohol/Drugs
- Reckless/Careless
- Other Moving
- Other Non-Moving
- Pending

Charges: Financial responsibility  Driving on roadway  Leaked for Traffic

| Vehicle Number | Total Number of Occupants | Driver Presence |
|---|---|---|
| | | Driver Operated Vehicle |
| | | Driver Operated Non-Contact Vehicle |
| | | Driver Operated Government Vehicle |
| Other | | Driverless Vehicle |

**DRIVER NAME** First: Bobby  M.I.: E  Last: McKown
**ADDRESS** Street & Number: 1441 E. Branch
**City & State:** Morrilton, AR  **ZIP** 72110  **Phone Number** (501)354-5500
**Driver's License Number:** 500387559  **State** AR  **Exp. Year** 2005
**Date of Birth** 04-25-1937  **Age** 65  **Sex** M  **Race** White
**License Class** K  Endorsements HT  Complied With  Restrictions B  Complied With
Injury Code  Safety Equipment: 03  AIRBAG
Trapped: Not Applicable / Not Trapped / Trapped/Extricated / Trapped/Not Extricated  Ejected  Ejection Path
Driver Distance: Less 25 mi. / Out of State / Over 25 mi.  Ambulance/Hospital  Medical Transport

**Year of Vehicle** 2000  **Make** FRT  **Model** F/T  **Color** Blu  **Body Type** B/T
**Vehicle ID Number** FUY5XYB44LG81202  **Body Code** 47
**License Plate Number** 352866  **State** IL  **Exp. Year** 2002
**Vehicle Owner** Name: Virco MFG Co.
Street Address: 1162 Merchandise Mart
City & State: Chicago, IL  **ZIP** 60654  **Phone Number** 800-650-4785

Violations: (may select 3)
- None
- Alcohol/Drugs
- Reckless/Careless
- Other Moving
- Other Non-Moving
- Pending

Charges:

Investigating Officer (Last and Name) (Print Name): TRP Michael Bolton
**Badge/AO Number** 809  **District/Zone** 4  **Car No.** 4428  **Report Date** 03-15-2003

SF1203 (rev 1-14-2000)

© Copyright 2000, by National Character Systems, Inc. All rights reserved.  Printed by U.S.A.

Please Do Not Write In This Microfilm Space

**Motorists, Passengers and/or Non-Motorists**

Document Type
- Supplement Document — A1
- Amended Document
- Local Agency Number — A7

Reference Number — 8335559
Reference Number Override — A6

4A4190-03

| Vehicle Number | NAME First | M.I. | Last | Date of Birth | Age | Injury Code | SEAT Position | SAFETY Equipment | AIRBAG |
|---|---|---|---|---|---|---|---|---|---|
| | Richard | | Vincent | 10 42 11 53 | 49 | 13 | 3 | | |

ADDRESS Same as ☐ Driver ☐ Owner   Street & Number   City & State   ZIP
Male Sex / Female

Non-Motorists: Other Cyclist, Other Pedestrian, Other Non-Motorist
EJECTED: Not Applicable, Not Ejected
Ejection Path
Totally Ejected, Partially Ejected, Unknown
TRAPPED/EXTRICATED: Not Applicable, Not Trapped, Trapped/Extricated, Trapped/Not Extricated, Unknown
Medical Transport
Ambulance/Hospital
Alcohol  86
Drugs  86

Pedestrian, Bicyclist — A

| Vehicle Number | NAME First | M.I. | Last | Date of Birth | Age | Injury Code | SEAT Position | SAFETY Equipment | AIRBAG |
|---|---|---|---|---|---|---|---|---|---|

ADDRESS Same as ☐ Driver ☐ Owner   Street & Number   City & State   ZIP

Pedestrian, Bicyclist — B

| Vehicle Number | NAME First | M.I. | Last | Date of Birth | Age | Injury Code | SEAT Position | SAFETY Equipment | AIRBAG |
|---|---|---|---|---|---|---|---|---|---|

ADDRESS Same as ☐ Driver ☐ Owner   Street & Number   City & State   ZIP

Pedestrian, Bicyclist — C

| Vehicle Number | NAME First | M.I. | Last | Date of Birth | Age | Injury Code | SEAT Position | SAFETY Equipment | AIRBAG |
|---|---|---|---|---|---|---|---|---|---|

ADDRESS Same as ☐ Driver ☐ Owner   Street & Number   City & State   ZIP

Pedestrian, Bicyclist — D

| Vehicle Number | NAME First | M.I. | Last | Date of Birth | Age | Injury Code | SEAT Position | SAFETY Equipment | AIRBAG |
|---|---|---|---|---|---|---|---|---|---|

ADDRESS Same as ☐ Driver ☐ Owner   Street & Number   City & State   ZIP

Pedestrian, Bicyclist — E

| Vehicle Number | NAME First | M.I. | Last | Date of Birth | Age | Injury Code | SEAT Position | SAFETY Equipment | AIRBAG |
|---|---|---|---|---|---|---|---|---|---|

ADDRESS Same as ☐ Driver ☐ Owner   Street & Number   City & State   ZIP

Pedestrian, Bicyclist — F

Non-Motorist Number

**Non-Motorist**

Location At Intersection
N1 N2
- In Crosswalk
- On Roadway, Not in Crosswalk
- On Roadway, Crosswalk Non Available
- On Roadway, Crosswalk Availability Unknown
- Not on Roadway

Location Not At Intersection
N1 N2
- In Crosswalk
- On Roadway, Not in Crosswalk
- On Roadway, Crosswalk Non Available
- On Roadway, Crosswalk Availability Unknown
- In Parking Lane
- On Road Shoulder
- Bike Path
- Outside Trafficway
- Other, Not on Roadway
- Unknown

Vehicle Striking Non-Motorist
Vehicle #

Vehicle Striking Non-Motorist
Vehicle #

| Condition (may select 3) | Non-Contributing Actions | Actions (may select 4) |
|---|---|---|
| Appeared Normal | Non Visible | Construction/Maintenance/Utility Worker |
| Had Been Drinking | Darting, Running or Stumbling Into Road | Playing in Roadway |
| Illegal Drug Use | Crossing with Signal | Lying in Roadway |
| Ill (Sick) | Crossing against Signal | Walking in Roadway |
| Reaction to Drug/Medication | Crossing, No Signal | Walking beside Roadway |
| Failure to Take Drug/Medication | Coming from Behind Parked Car | Failure to Keep in Proper Lane or Running off Road |
| Blind | Standing in Safety Zone | Failure to Yield Right of Way |
| Restricted to Wheelchair | Getting on or off Other Vehicle | Failure to Obey Traffic Controls |
| Other Physical Impairment (Narrative) | Pushing or Working on Vehicle | Failure to Observe Warnings or Instructions |
| Emotional (Depressed, Angry, Disturbed) | Other Working in Roadway | Failure to Signal Intentions |
| Unknown Condition | | |

Actions continued:
- Failure to Use Lights
- Improper Loading of Vehicle Cargo or Passenger
- Operator Inexperience
- Operating w/o out Required Equipment
- Riding in Roadway Against Traffic
- Vision Obstructed, By What? (Narrative)
- Unknown Action

PLEASE DO NOT WRITE IN THIS AREA

Printed in U.S.A.

Page 5 of 6

Document Type
(1) Supplement Document    A4
(2) Amended Document
Local Agency Number    A7

REFERENCE NUMBER
8335559
Reference Number Override    A4

**Truck & Bus Crash Information**

Please Do Not Write In This Microfilm Space

This Section Must Be Completed for Each Truck or Bus Involved in this Crash

4 R 4190.03

**When To Use This Section:**      *Did the crash involve:...*

Part A
A truck with at least two axles and six tires?      (Y) (N)
A truck with a hazardous materials placard?      (Y) (N)
A bus designed to carry 16 or more persons, including the driver?      (Y) (N)

STOP! If all the responses to Part A are "NO" do not complete this Truck & Bus Crash Information Section. If there are any "YES" answers, continue to Part B.

Part B
Any person who was fatally injured?
Any injured person requiring transport for immediate medical treatment?      (Y) (N)
One or more vehicles that had to be towed from the scene as a result of the crash?      (Y) (N)
One or more vehicles that required repair or were provided assistance before proceeding from scene under own power?      (Y) (N)

STOP! If all the responses to Part B are "NO" do not continue. If there are any "YES" answers, please complete this Truck & Bus Crash Information Section...

Vehicle #  (1) (2) (3) (4) (5) (6) (7) (8) (9) (10)

### Carrier Information

* Interstate Carrier?    (Y) (N)

Carrier Name    Vicro MFG. Co.

**Carrier Identification Numbers**

US DOT

ICC MC    168460

Carrier Address    1162 Merchandise Mart Chicago, IL

TN DOS

Source:
(•) Vehicle Side
( ) Shipping Papers
( ) Trip Manifest
( ) Driver
( ) Log Book

### Hazardous Material Information

Class Numbers

UN Numbers

* Hazardous Material Placard Displayed?    (Y) (N)

List the Hazardous Material(s) by name in this load:

List the Name(s) of Released Hazardous Material(s):

* Hazardous Cargo was Released?    (Y) (N)

### Vehicle Information

Combined Gross Vehicle Weight Rating    80,000    LBS    Total # of Axles    5

**Vehicle Configuration**

SEQUENCE OF EVENTS FOR THIS VEHICLE
(1) (2) (3) (4) Ran off Road
(1) (2) (3) (4) Jackknife
(1) (2) (3) (4) Overturn (Rollover)
(1) (2) (3) (4) Downhill Runaway
(1) (2) (3) (4) Cargo Loss or Shift
(1) (2) (3) (4) Explosion or Fire
(1) (2) (3) (4) Separation of Units
(1) (2) (3) (4) Collision involving pedestrian

(Mark a total of one to four events in the order they occurred)
(1) (2) (3) (4) Collision involving motor vehicle in transp.
(1) (2) (3) (4) Collision involving parked motor vehicle
(1) (2) (3) (4) Collision involving train
(1) (2) (3) (4) Collision involving pedalcycle
(1) (2) (3) (4) Collision involving animal
(1) (2) (3) (4) Collision involving fixed object
(1) (2) (3) (4) Collision involving other object
(1) (2) (3) (4) Other

Cargo Body Type

Vehicle #  (1) (2) (3) (4) (5) (6) (7) (8) (9) (10)

### Carrier Information

* Interstate Carrier?    (Y) (N)

Carrier Name

**Carrier Identification Numbers**

US DOT

ICC MC

Carrier Address

TN DOS

Source:
( ) Vehicle Side
( ) Shipping Papers
( ) Trip Manifest
( ) Driver
( ) Log Book

### Hazardous Material Information

Class Numbers

UN Numbers

* Hazardous Material Placard Displayed?    (Y) (N)

List the Hazardous Material(s) by name in this load:

List the Name(s) of Released Hazardous Material(s):

* Hazardous Cargo was Released?    (Y) (N)

### Vehicle Information

Combined Gross Vehicle Weight Rating    LBS    Total # of Axles

**Vehicle Configuration**

SEQUENCE OF EVENTS FOR THIS VEHICLE
(1) (2) (3) (4) Ran off Road
(1) (2) (3) (4) Jackknife
(1) (2) (3) (4) Overturn (Rollover)
(1) (2) (3) (4) Downhill Runaway
(1) (2) (3) (4) Cargo Loss or Shift
(1) (2) (3) (4) Explosion or Fire
(1) (2) (3) (4) Separation of Units
(1) (2) (3) (4) Collision involving pedestrian

(Mark a total of one to four events in the order they occurred)
(1) (2) (3) (4) Collision involving motor vehicle in transp.
(1) (2) (3) (4) Collision involving parked motor vehicle
(1) (2) (3) (4) Collision involving train
(1) (2) (3) (4) Collision involving pedalcycle
(1) (2) (3) (4) Collision involving animal
(1) (2) (3) (4) Collision involving fixed object
(1) (2) (3) (4) Collision involving other object
(1) (2) (3) (4) Other

Cargo Body Type

PLEASE DO NOT WRITE IN THIS AREA

# Tennessee Uniform Traffic Crash Report

Please Do Not Write In This Microfilm Spine

**Document Type**
- ① Original Document
- ② Supplement Document
- ③ Amended Document

Page 4 of 6

**Reference Number Override** 8335560

Reference Number Override 8335559

Local Agency Number 4A 4190-03

**Type of Crash**
- ① Fatal
- ② Injury
- ③ Property Damage (Over)
- ④ Property Damage (Under)

**Reporting Agency Type**
- 1 Tennessee Highway Patrol (THP)
- 2 City/Metropolitan Police Dept. (CPD)
- 3 Sheriff's Office
- 4 Capitol Police
- 5 Commercial Vehicle Enforcement (CVE)
- 6 College/University Campus
- 7 National Park Service
- 8 Other

**Totals** — Vehicles / Killed / Infured

**Date of Crash** MONTH DAY YEAR — 05 03

**Day of Crash**
- ① SUN
- ② MON
- ③ TUES
- ④ WED
- ⑤ THURS
- ⑥ FRI
- ⑦ SAT
- ⑧ UNK

**Time of Crash** / County / City / Area

**Trafficway/Land Way/Private Way**
- ① Trafficway – OPEN
- ② Trafficway – CLOSED
- ③ Parking Lot
- ④ Private Property or Private Road

**Hit and Run?**
- ① Veh–Hit Motor Vehicle in Transport
- ② Veh–Hit Pedestrian or Non-Motorist
- ③ Veh–Hit Parked Vehicle or Objects
- ④ No Hit and Run

Solved?
- ① Yes
- ② No

**Investigation Complete?** ① Yes ② No

Photos Taken?
- ① Yes ② No
  If Yes, by Whom?
- ① Police
- ② Other

**Additional Designation**
- ① Applicable
- ② Not Applicable
- ③ Business
- ④ Residential
- ⑤ School

Rail/Crossing ID ▶

**Time Notified** ▶

**Time Arrived** ▶

**Police Pursuit Involved?** ① Yes ② No

**TDOT Use Only**

| ROUTE NUMBER | SNC CASE | CO. SEQ. | LOG MILE | LOC |
|---|---|---|---|---|

GPS Coordinate ▶

LATITUDE / LONGITUDE

**School Bus Related?** ① Yes ② No

**ON** Hwy No. and Street Name

Estimated ① FT ② MI

**FROM/AT** Hwy No. and Street Name / Mile Post

---

**Vehicle Number**

**Total Number of Occupants**

**Driver Presence**
- ① Driver Operated Vehicle
- ② Driver Operated Non-Contact Vehicle
- ③ Driver Operated Government Vehicle
- ④ Driverless Vehicle
- Other

**DRIVER NAME** First Robert M.I. L. Last O'Sullivan JR

**ADDRESS** Street & Number 7 Winona Way

**City & State** Hingham, Ma  ZIP 02043  **Phone Number** (781) 740-0701

**Driver's License Number** 57669 5150  State MA  Exp. Year 2004

DOB 04-19-1968  Age 34  Sex ① M ② F

Race ① White ② Black ③ Hispanic ④ Other

**License Class** D M  Endorsements  Restrictions  Complied With?

**Injury Code** 03

**Safety Equipment**

**AIRBAG**
- ① Non-Mount
- ② Avail. Deployed
- ③ Avail. Not Deploy
- ④ Avail. Switch Off
- Not Available
- Not Deployed
- Disabled/Remd
- Unknown

**EJECTED** Not Applicable / Not Ejected / Totally Ejected / Partially Ejected / Unknown

**TRAPPED** ① Not Applicable ② Trapped/Extricated ③ Trapped/Not Extricated ④ Unknown

Extricated ① Not Trapped

Driver DTI ① Less 25 mi. ② Out of State

Residence ③ Over 25 mi.

Ambulance/Hospital

Medical Transport

**Year of Vehicle** 1998  **Make** IVTL  **Model** 400SEA  **Color** White  **Body Type** Truck  Body Code

**Vehicle ID Number** 1HTSCAAM8XH220511

**License Plate Number** K10-469  State MA  Exp. Year 2003  41

**Vehicle Owner** First SST  M.I. Last Leasing Corp

Same

**Street Address** W/12 Fulton St. Suite 6A

**City & State** Boston, Ma  ZIP 02109  **Phone Number** (615) 773-5455

**Violations** (may select 3)
- ① None
- ② Alcohol/Drugs
- ③ Reckless/Careless
- Other Moving
- Other Non-Moving
- Pending

Charges:

---

**Vehicle Number**

**Total Number of Occupants**

**Driver Presence**
- ① Driver Operated Vehicle
- ② Driver Operated Non-Contact Vehicle
- ③ Driver Operated Government Vehicle
- ④ Driverless Vehicle
- Other

**DRIVER NAME** First  M.I.  Last

**ADDRESS** Street & Number

**City & State**  ZIP  **Phone Number**

**Driver's License Number**  State  Exp. Year

DOB  Age  Sex ① M ② F

Race ① White ② Black ③ Hispanic ④ Other

**License Class**  Endorsements  Restrictions  Complied With?

**Injury Code**

**Safety Equipment**

**AIRBAG**
- Non-Mount
- Avail. Deployed
- Avail. Not Deploy
- Avail. Switch Off

**EJECTED**

**TRAPPED**

**Year of Vehicle**  **Make**  **Model**  **Color**  **Body Type**  Body Code

**Vehicle ID Number**

**License Plate Number**  State  Exp. Year

**Vehicle Owner** First  M.I.  Last

Same

**Street Address**

**City & State**  ZIP  **Phone Number**

**Violations** (may select 3)
- ① None
- ② Alcohol/Drugs
- ③ Reckless/Careless
- Other Moving
- Other Non-Moving
- Pending

Charges:

**Investigating Officer Rank and Name (Print Name)** THP Michael Belton  Badge/ID Number 809  District/Zone 4  Car No. 1428  Report Date 03-15-2003

SF1203 (Rev 1-16-2000)  PLEASE DO NOT WRITE IN THIS AREA

RDA 23-08

Page 5 of 6

| Document Type | REFERENCE NUMBER |
|---|---|
| Supplement Document | 8335560 |
| Amended Document | |
| Local Agency Number | Reference Number Override |
| 4A4190-03 | 8335559 |

## Motorists (Passengers) and/or Non-Motorists

Please Do Not Write In This Microbar Space

**Non-Motorist Number** Ⓐ Ⓑ Ⓒ Ⓓ Ⓔ    **Non-Motorist Number** Ⓐ Ⓑ Ⓒ Ⓓ Ⓔ

### Non-Motorist

| Location At Intersection | Location Not At Intersection |
|---|---|
| N1 N2 | N1 N2 |
| In Crosswalk | In Crosswalk · In Parking Lane · Other, Not on Roadway |
| On Roadway, Crosswalk Availability Unknown | On Roadway, Not in Crosswalk · On Road Shoulder · Unknown |
| On Roadway, Not in Crosswalk · Not on Roadway | On Roadway, Crosswalk Not Available · Bike Path |
| On Roadway, Crosswalk Not Available · Unknown | On Roadway, Crosswalk Availability Unknown · Outside Trafficway |

**Vehicle Striking Non-Motorist** N1 Vehicle #          **Vehicle Striking Non-Motorist** N2 Vehicle #

| N1 N2 Condition (may select 3) | | |
|---|---|---|
| Appeared Normal | No Contributing Actions | Failure to Use Lights |
| Had Been Drinking | Not Visible | Improper Loading of Vehicle Cargo or Passengers |
| Illegal Drug Use | Darting, Running or Stumbling into Road | Operator Inexperience |
| Ill (Sick) | Crossing with Signal | Operating without Required Equipment |
| Reaction to Drugs/Medication | Crossing against Signal | Riding in Roadway Against Traffic |
| Failure to Take Drugs/Medication | Crossing, No Signal | Vision Obstructed, By What? (Narrative) |
| Blind | Coming from Behind Parked Car | Unknown Action |
| Restricted to Wheelchair | Standing in Safety Zone | |
| Other Physical Impairment (Narrative) | Getting on or off Other Vehicle | |
| Handicap (Depressed, Angry, Disturbed) | Pushing or Working on Vehicle | |
| Unknown Condition | Other Working in Roadway | |

| | Actions (may select 4) | |
|---|---|---|
| | N1 N2 | N1 N2 |
| | Construction/Maintenance/Utility Worker | |
| | Playing in Roadway | |
| | Lying in Roadway | |
| | Walking in Roadway | |
| | Walking beside Roadway | |
| | Failure to Keep in Proper Lane or Running off Road | |
| | Failure to Yield Right of Way | |
| | Failure to Obey Traffic Controls | |
| | Failure to Observe Warnings or Instructions | |
| | Failure to Signal Intentions | |

PLEASE DO NOT WRITE IN THIS AREA

Page 6 of 6

Please Do Not Write In This Microfilm Space

| Document Type | REFERENCE NUMBER |
|---|---|
| Supplement Document  A4 | 8335560 |
| Amended Document | |
| Local Agency Number  A7 | Reference Number Override  A6 |
| 4A4190-03 | 8335559 |

## Truck & Bus Crash Information
(This Section Must Be Completed for Each Truck or Bus Involved in this Crash.)

| When To Use This Section: | Did the crash involve... | | Part B | | |
|---|---|---|---|---|---|
| Part A | | | Any person who was fatally injured? | | Y N |
| A truck with at least two axles and six tires? | | Y N | Any injured person requiring transport for immediate medical treatment? | | Y N |
| A truck with a hazardous materials placard? | | Y N | One or more vehicles that had to be towed from the scene as a result of the crash? | | Y N |
| A bus designed to carry 16 or more persons, including the driver? | | Y N | One or more vehicles that required repair or were provided assistance before proceeding from scene under own power? | | Y N |

STOP! If all the responses to Part A are "NO" do not complete this Truck & Bus Crash Information Section. If there are any "YES" answers, continue to Part B.

STOP! If all the responses to Part B are "NO" do not continue. If there are any "YES" answers, please complete this Truck & Bus Crash Information Section . . .

Vehicle #  ① ② ③ ④ ⑤ ⑥ ⑦ ⑧ ⑨ ⑩ ⑪ ⑫

### Carrier Information

| Carrier Identification Numbers | | | Source: |
|---|---|---|---|
| US DOT | | TN DOS | ○ Vehicle Side |
| | | | ○ Shipping Papers |
| •Interstate Carrier?   Y N | ICC MC | | ○ Trip Manifest |
| Carrier Name | Carrier Address | | ○ Driver |
| | | | ○ Log Book |

### Hazardous Material Information

•Hazardous Material Placard Displayed?  Y N        •Hazardous Cargo was Released?  Y N

Class Numbers  [ ] [ ] [ ]    List the Hazardous Material(s) by name in this load:

UN Numbers  [ ] [ ] [ ] [ ]    List the Name(s) of Released Hazardous Material(s):

### Vehicle Information

Combined Gross Vehicle Weight Rating _____  LBS   Total # of Axles ____

#### Vehicle Configuration

① Bus
② Single unit truck, 2 axles, 6 tires
③ Single unit truck, 3+ axles
④ Truck/trailer
⑤ Truck/Tractor
⑥ Tractor/Semi-trailer
⑦ Tractor/Doubles
⑧ Tractor/Triples
⑨ Unknown Heavy Truck

#### Cargo Body Type

① Bus
② Van/Enclosed box
③ Cargo Tank
④ Flatbed
⑤ Dump
⑥ Concrete Mixer
⑦ Auto Transporter
⑧ Garbage/Refuse
⑨ Other

#### SEQUENCE OF EVENTS FOR THIS VEHICLE
(Start a total of one to four events in the order that they occurred.)

① ② ③ ④  Ran off Road
① ② ③ ④  Jackknife
① ② ③ ④  Overturn (Rollover)
① ② ③ ④  Downhill Runaway
① ② ③ ④  Cargo Loss or Shift
① ② ③ ④  Explosion or Fire
① ② ③ ④  Separation of Units
① ② ③ ④  Collision involving pedestrian

① ② ③ ④  Collision involving motor vehicle in transp.
① ② ③ ④  Collision involving parked motor vehicle
① ② ③ ④  Collision involving train
① ② ③ ④  Collision involving pedalcycle
① ② ③ ④  Collision involving animal
① ② ③ ④  Collision involving fixed object
① ② ③ ④  Collision involving other object
① ② ③ ④  Other

---

Vehicle #  ① ② ③ ④ ⑤ ⑥ ⑦ ⑧ ⑨ ⑩ ⑪ ⑫

### Carrier Information

| Carrier Identification Numbers | | | Source: |
|---|---|---|---|
| US DOT | | TN DOS | ○ Vehicle Side |
| | | | ○ Shipping Papers |
| •Interstate Carrier?   Y N | ICC MC | | ○ Trip Manifest |
| Carrier Name | Carrier Address | | ○ Driver |
| | | | ○ Log Book |

### Hazardous Material Information

•Hazardous Material Placard Displayed?  Y N        •Hazardous Cargo was Released?  Y N

Class Numbers  [ ] [ ] [ ]    List the Hazardous Material(s) by name in this load:

UN Numbers  [ ] [ ] [ ] [ ]    List the Name(s) of Released Hazardous Material(s):

### Vehicle Information

Combined Gross Vehicle Weight Rating _____  LBS   Total # of Axles ____

#### Vehicle Configuration

① Bus
② Single unit truck, 2 axles, 6 tires
③ Single unit truck, 3+ axles
④ Truck/trailer
⑤ Truck/Tractor
⑥ Tractor/Semi-trailer
⑦ Tractor/Doubles
⑧ Tractor/Triples
⑨ Unknown Heavy Truck

#### Cargo Body Type

① Bus
② Van/Enclosed box
③ Cargo Tank
④ Flatbed
⑤ Dump
⑥ Concrete Mixer
⑦ Auto Transporter
⑧ Garbage/Refuse
⑨ Other

#### SEQUENCE OF EVENTS FOR THIS VEHICLE
(Start a total of one to four events in the order that they occurred.)

① ② ③ ④  Ran off Road
① ② ③ ④  Jackknife
① ② ③ ④  Overturn (Rollover)
① ② ③ ④  Downhill Runaway
① ② ③ ④  Cargo Loss or Shift
① ② ③ ④  Explosion or Fire
① ② ③ ④  Separation of Units
① ② ③ ④  Collision involving pedestrian

① ② ③ ④  Collision involving motor vehicle in transp.
① ② ③ ④  Collision involving parked motor vehicle
① ② ③ ④  Collision involving train
① ② ③ ④  Collision involving pedalcycle
① ② ③ ④  Collision involving animal
① ② ③ ④  Collision involving fixed object
① ② ③ ④  Collision involving other object
① ② ③ ④  Other

PLEASE DO NOT WRITE IN THIS AREA

Printed in U.S.A.   GS03   Mark-Reflex® by NCS  EM-31001GC-505422

# EXHIBIT NO. 7

# Tennessee Uniform Traffic Crash Report

Please Do Not Write In This Microfilm Space

**Document Type**
- (1) Original Document (select 1)
- (2) Supplement Document
- (3) Amended Document

Reference Number Override

**REFERENCE NUMBER** 8335559

**Reporting Agency Name**

**Type of Crash**
- (1) Fatal (select 1)
- (2) Injury
- (3) Property Damage (Over)
- (4) Property Damage (Under)

Local Agency Number: 4A 4190-03

**Reporting Agency Type**
- (1) Tennessee Highway Patrol (THP)
- (2) City/Metropolitan Police Dept. (CPD)
- (3) Sheriff's Office
- (4) Capitol Police
- (5) Commercial Vehicle Enforcement (CVE)
- (6) College/University Campus
- (7) National Park Service
- (8) Other

**Totals** — Vehicles 03, Killed 000, Injured 000

**Date of Crash** — MONTH 05, DAY 15, YEAR 03

**Day of Crash**
1. SUN
2. MON
3. TUES
4. WED
5. THURS
6. FRI
7. SAT
9. UNK

**Time of Crash** 1600

**County** 79

**City** 000

**Area**
- (1) Urban
- (2) Rural

**Additional Designation (select 1)**
- (1) Not Applicable
- (2) Business
- (3) Residential
- (5) School

**Trafficway/Land Way/Private Way**
- (1) Trafficway - OPEN (select 1)
- (2) Trafficway - CLOSED
- (3) Parking Lot
- (4) Private Property or Private Road

Investigation Complete? ☑ Yes  2 No

Photos Taken? 1 Yes  No — If Yes, by Whom?
1 Police
2 Other

**Hit and Run?**
- (1) Yes--Hit Motor Vehicle in Transport
- (2) Yes--Hit Pedestrian or Non-Motorist
- (3) Yes--Hit Parked Vehicle or Object
- No Hit and Run

Solved? 1 Yes  2 No

Rail/Crossing ID

**TDOT Use Only**

| ROUTE NUMBER | SPC CASE | CO. SEQ. | LOG MILE | LOC |
|---|---|---|---|---|

GPS Coordinate

Time Notified 1611   Time Arrived 1617

LATITUDE    LONGITUDE

Police Pursuit Involved? (1) Yes  No

School Bus Related? (1) Yes  No

**ON** Hwy No. and / Street Name: I-40   Estimated .2 FT / MI   **FROM/AT** Hwy No. and / Street Name   Mile Post 18

---

## Vehicle 1

**Vehicle Number** 1

Total Number of Occupants

**Driver Presence**
- (1) Driver Operated Vehicle
- (2) Driver Operated Non-Contact Vehicle
- (3) Driver Operated Government Vehicle
- (4) Driverless Vehicle

DRIVER NAME: First Bonnie  M.I. A  Last Vincent

ADDRESS: 1457 Sunfish Bee Spring

City & State: Bee Spring, KY  ZIP 42207  Phone Number (270) 286-9481

Driver's License Number: V95-496-501  State KY  Exp. Year 2005

Date of Birth: 08-23-1954  Age 48  Sex F  Race ☑ White (2) Black (3) Other  Hispanic

License Class D

Endorsements  Complied With? Y

Restrictions  Complied With? Y

Injury Code 3  Safety Equipment 03

**AIRBAG**
- (00) Non-Motorist
- (01) Avail. Deployed
- Avail. Not Dplyd.
- (2B) Avail. Swtch. Off

- Not Available
- (30) Not Replaced
- Disabled/Rmvd.
- (99) Unknown

**EJECTED**
- (0) Not Applicable
- Not Ejected
- (2) Totally Ejected
- (3) Partially Ejected
- (9) Unknown

Ejection Path: O

TRAPPED/EXTRICATED: (0) Not Applicable (2) Trapped/Extricated (9) Unknown  ☑ Not Trapped (3) Trapped/Not Extricated

Medical Transport Y

Driver Residence: (1) Less 25 mi. ☑ Out of State (3) Over 25 mi.  Ambulance/Hospital

Year of Vehicle: 2000  Make Pontiac  Model Grand Prix  Color Gray  Body Type 2 DR

Vehicle ID Number: G2WP12K6YF163405  Body Code

License Plate Number: 524-GSW  State KY  Exp. Year 2003  01

Vehicle Owner: First Richard  M.I.  Last Vincent  Same

Street Address

City & State  ZIP  Phone Number

Violations (may select 3):
- (0) None
- (1) Alcohol/Drugs
- (2) Reckless/Careless
- Other Moving
- Other Non-Moving
- (5) Pending

Charges: Financial Responsibility Driving on roadway Laned for Traffic

Investigating Officer Rank and Name: (Print Name) TRP Michael Bolton

SF1203 (rev 1-14-2000)

---

## Vehicle 2

**Vehicle Number** 2

Total Number of Occupants

**Driver Presence**
- (1) Driver Operated Vehicle
- (2) Driver Operated Non-Contact Vehicle
- (3) Driver Operated Government Vehicle
- (4) Driverless Vehicle

DRIVER NAME: First Bobby  M.I. E.  Last McKnnn

ADDRESS: 1441 E. Branch

City & State: Morrilton, AR.  ZIP 72110  Phone Number (501) 354-5300

Driver's License Number: 500387559  State AR  Exp. Year 2005

Date of Birth: 04-25-1937  Age 65  Sex F  Race ☑ White (2) Black (3) Other  Hispanic

License Class A

Endorsements HT  Complied With? Y

Restrictions B  Complied With? N

Injury Code 3  Safety Equipment 03

**AIRBAG**
- (00) Non-Motorist
- (01) Avail. Deployed
- Avail. Not Dplyd.
- (2B) Avail. Swtch. Off

- Not Available
- (30) Not Replaced
- Disabled/Rmvd.
- (99) Unknown

**EJECTED**
- (0) Not Applicable
- Not Ejected
- (2) Totally Ejected
- (3) Partially Ejected
- (9) Unknown

Ejection Path: O

TRAPPED/EXTRICATED: (0) Not Applicable (2) Trapped/Extricated (9) Unknown  ☑ Not Trapped (3) Trapped/Not Extricated

Medical Transport Y

Driver Residence: (1) Less 25 mi. ☑ Out of State (3) Over 25 mi.  Ambulance/Hospital

Year of Vehicle: 2000  Make FRT  Model T/T  Color Blu  Body Type T/T

Vehicle ID Number: VFU45XYB44L481202  Body Code

License Plate Number: P352866  State IL  Exp. Year 2002  47

Vehicle Owner: First Virco Mfg. Co.  M.I.  Last  Same Y

Street Address: 1162 Merchandise Mart

City & State: Chicago, IL  ZIP 60654  Phone Number 800-650-4785

Violations (may select 3):
- (1) None
- (1) Alcohol/Drugs
- (2) Reckless/Careless
- (3) Other Moving
- (4) Other Non-Moving
- (5) Pending

Charges:

Badge/ID Number 809  District/Zone  Car No. 4428  Report Date 03-15-2003

PLEASE DO NOT WRITE IN THIS AREA.

RDA 1348

Page 2 of 6

Document Type
(2) Supplement Document A1
(3) Amended Document
Local Agency Number A7
4A4190-03

REFERENCE NUMBER
8335559
Reference Number Override A6

Please Do Not Write In This Microfilm Space

# Motorists (Passengers) and/or Non-Motorists

## A

Vehicle Number P1 ● 1 (2) 3 4 5 6 7 8 9 10 20 30 — Motorists ● — Non-Motorists P2 7 Other Cyclist, 5 Pedestrian, 8 Other Pedestrian, 6 Bicyclist, 9 Other Non-Motorist

NAME First: Richard M.I. Last: Vincent P3
Date of Birth P4: 10-21-1953
Age P5: 49
Sex: ● Male (1), (2) Female P6
Injury Code: ● (0) (3) (1) (4) (2) P7
SEAT Position P8: 13
SAFETY Equipment P9: 0
AIRBAG P10: 3 — (00) (30) (01) (31) ● 32 (20) (28) (99)
ADDRESS Same as ☒ Driver ☐ Owner — Street & Number — City & State — ZIP

EJECTED P11: 0 Not Applicable, ● 1 Not Ejected, 2 Totally Ejected, 3 Partially Ejected, 9 Unknown
Ejection Path P12: 0
TRAPPED/EXTRICATED P13: 0 Not Applicable, ● 1 Not Trapped, 2 Trapped/Extricated, 3 Trapped/Not Extricated, 9 Unknown
Medical Transport P14: (Y) ● N
Ambulance/Hospital P15
Alcohol P16: 96
Drugs P17: 96

## B

Vehicle Number P1 1 2 3 4 5 6 7 8 9 10 20 30 — Motorists 2 — Non-Motorists P2 7 Other Cyclist, 5 Pedestrian, 8 Other Pedestrian, 6 Bicyclist, 9 Other Non-Motorist
NAME First M.I. Last P3 — Date of Birth P4 — Age P5 — Sex (1) Male (2) Female P6 — Injury Code (0) (3) (1) (4) (2) P7 — SEAT Position P8 — SAFETY Equipment P9 — AIRBAG P10 00 30 01 31 20 32 28 99
ADDRESS Same as ☐ Driver ☐ Owner — Street & Number — City & State — ZIP
EJECTED P11: 0 Not Applicable, 1 Not Ejected, 2 Totally Ejected, 3 Partially Ejected, 9 Unknown — Ejection Path P12 — TRAPPED/EXTRICATED P13: 0 Not Applicable, 1 Not Trapped, 2 Trapped/Extricated, 3 Trapped/Not Extricated, 9 Unknown — Medical Transport P14 (Y) (N) — Ambulance/Hospital P15 — Alcohol P16 — Drugs P17

## C

Vehicle Number P1 1 2 3 4 5 6 7 8 9 10 20 30 — Motorists 2 — Non-Motorists P2 7 Other Cyclist, 5 Pedestrian, 8 Other Pedestrian, 6 Bicyclist, 9 Other Non-Motorist
NAME First M.I. Last P3 — Date of Birth P4 — Age P5 — Sex (1) Male (2) Female P6 — Injury Code (0) (3) (1) (4) (2) P7 — SEAT Position P8 — SAFETY Equipment P9 — AIRBAG P10 00 30 01 31 20 32 28 99
ADDRESS Same as ☐ Driver ☐ Owner — Street & Number — City & State — ZIP
EJECTED P11: 0 Not Applicable, 1 Not Ejected, 2 Totally Ejected, 3 Partially Ejected, 9 Unknown — Ejection Path P12 — TRAPPED/EXTRICATED P13: 0 Not Applicable, 1 Not Trapped, 2 Trapped/Extricated, 3 Trapped/Not Extricated, 9 Unknown — Medical Transport P14 (Y) (N) — Ambulance/Hospital P15 — Alcohol P16 — Drugs P17

## D

Vehicle Number P1 1 2 3 4 5 6 7 8 9 10 20 30 — Motorists 2 — Non-Motorists P2 7 Other Cyclist, 5 Pedestrian, 8 Other Pedestrian, 6 Bicyclist, 9 Other Non-Motorist
NAME First M.I. Last P3 — Date of Birth P4 — Age P5 — Sex (1) Male (2) Female P6 — Injury Code (0) (3) (1) (4) (2) P7 — SEAT Position P8 — SAFETY Equipment P9 — AIRBAG P10 00 30 01 31 20 32 28 99
ADDRESS Same as ☐ Driver ☐ Owner — Street & Number — City & State — ZIP
EJECTED P11: 0 Not Applicable, 1 Not Ejected, 2 Totally Ejected, 3 Partially Ejected, 9 Unknown — Ejection Path P12 — TRAPPED/EXTRICATED P13: 0 Not Applicable, 1 Not Trapped, 2 Trapped/Extricated, 3 Trapped/Not Extricated, 9 Unknown — Medical Transport P14 (Y) (N) — Ambulance/Hospital P15 — Alcohol P16 — Drugs P17

## E

Vehicle Number P1 1 2 3 4 5 6 7 8 9 10 20 30 — Motorists 2 — Non-Motorists P2 7 Other Cyclist, 5 Pedestrian, 8 Other Pedestrian, 6 Bicyclist, 9 Other Non-Motorist
NAME First M.I. Last P3 — Date of Birth P4 — Age P5 — Sex (1) Male (2) Female P6 — Injury Code (0) (3) (1) (4) (2) P7 — SEAT Position P8 — SAFETY Equipment P9 — AIRBAG P10 00 30 01 31 20 32 28 99
ADDRESS Same as ☐ Driver ☐ Owner — Street & Number — City & State — ZIP
EJECTED P11: 0 Not Applicable, 1 Not Ejected, 2 Totally Ejected, 3 Partially Ejected, 9 Unknown — Ejection Path P12 — TRAPPED/EXTRICATED P13: 0 Not Applicable, 1 Not Trapped, 2 Trapped/Extricated, 3 Trapped/Not Extricated, 9 Unknown — Medical Transport P14 (Y) (N) — Ambulance/Hospital P15 — Alcohol P16 — Drugs P17

## F

Vehicle Number P1 1 2 3 4 5 6 7 8 9 10 20 30 — Motorists 2 — Non-Motorists P2 7 Other Cyclist, 5 Pedestrian, 8 Other Pedestrian, 6 Bicyclist, 9 Other Non-Motorist
NAME First M.I. Last P3 — Date of Birth P4 — Age P5 — Sex (1) Male (2) Female P6 — Injury Code (0) (3) (1) (4) (2) P7 — SEAT Position P8 — SAFETY Equipment P9 — AIRBAG P10 00 30 01 31 20 32 28 99
ADDRESS Same as ☐ Driver ☐ Owner — Street & Number — City & State — ZIP
EJECTED P11: 0 Not Applicable, 1 Not Ejected, 2 Totally Ejected, 3 Partially Ejected, 9 Unknown — Ejection Path P12 — TRAPPED/EXTRICATED P13: 0 Not Applicable, 1 Not Trapped, 2 Trapped/Extricated, 3 Trapped/Not Extricated, 9 Unknown — Medical Transport P14 (Y) (N) — Ambulance/Hospital P15 — Alcohol P16 — Drugs P17

## Non-Motorist

Non-Motorist Number (A) (B) (C) (D) (E) (F) — Non-Motorist Number (A) (B) (C) (D) (E) (F)

### Location At Intersection

N1 N2
- 01 01 In Crosswalk
- 02 02 On Roadway, Not in Crosswalk
- 03 03 On Roadway, Crosswalk Not Available
- 04 04 On Roadway, Crosswalk Availability Unknown
- 05 05 Not on Roadway
- 09 09 Unknown

### Location Not At Intersection P18

N1 N2
- 10 10 In Crosswalk
- 11 11 On Roadway, Not in Crosswalk
- 12 12 On Roadway, Crosswalk Not Available
- 13 13 On Roadway, Crosswalk Availability Unknown
- 14 14 In Parking Lane
- 15 15 On Road Shoulder
- 16 16 Bike Path
- 17 17 Outside Trafficway
- 18 18 Other, Not on Roadway
- 19 19 Unknown

Vehicle Striking Non-Motorist
N1 Vehicle # 1 2 3 4 5 6 7 8 9 10 20 30

Vehicle Striking Non-Motorist
N2 Vehicle # 1 2 3 4 5 6 7 8 9 10 20 30

### Condition (may select 3)

N1 N2
- 00 00 Appeared Normal
- 01 01 Had Been Drinking
- 02 02 Illegal Drug Use
- 03 03 Ill (Sick)
- 04 04 Reaction to Drugs/Medication
- 05 05 Failure to Take Drugs/Medication
- 06 06 Blind
- 07 07 Restricted to Wheelchair
- 08 08 Other Physical Impairment (Narrative)
- 09 09 Emotional (Depressed, Angry, Disturbed)
- 99 99 Unknown Condition

### Actions (may select 4) P19

N1 N2
- 10 10 No Contributing Actions
- 20 20 Not Visible
- 21 21 Darting, Running or Stumbling into Road
- 22 22 Crossing with Signal
- 23 23 Crossing against Signal
- 24 24 Crossing, No Signal
- 25 25 Coming from Behind Parked Car
- 26 26 Standing in Safety Zone
- 27 27 Getting on or off Other Vehicle
- 28 28 Pushing or Working on Vehicle
- 29 29 Other Working in Roadway
- 30 30 Construction/Maintenance/Utility Worker
- 31 31 Playing in Roadway
- 32 32 Lying in Roadway
- 33 33 Walking in Roadway
- 34 34 Walking beside Roadway
- 41 41 Failure to Keep in Proper Lane or Running off Road
- 42 42 Failure to Yield Right of Way
- 43 43 Failure to Obey Traffic Controls
- 44 44 Failure to Observe Warnings or Instructions
- 45 45 Failure to Signal Intentions
- 46 46 Failure to Use Lights
- 47 47 Improper Loading of Vehicle Cargo or Passengers
- 48 48 Operator Inexperience
- 49 49 Operating without Required Equipment
- 50 50 Riding in Roadway Against Traffic
- 61 61 Vision Obstructed, By What? (Narrative)
- 99 99 Unknown Action

PLEASE DO NOT WRITE IN THIS AREA


A1
A2

Please Do Not Write In This Microfilm Space

# Tennessee Uniform Traffic Crash Report

| Document Type | |
|---|---|
| 1 Original Document (select 1) A4 | REFERENCE NUMBER A5 **8335560** |
| 2 Supplement Document | |
| 3 Amended Document | |

Reference Number Override A6
**8335559**

Type of Crash
1 Fatal (select 1) A12
2 Injury
3 Property Damage (Over)
4 Property Damage (Under)

Reporting Agency Name
A3

Local Agency Number A7
**4A 4190-03**

### Reporting Agency Type

| | | Totals | | | Date of Crash | | | Day of Crash | Time of Crash | County | City | Area | Trafficway/Land Way/Private Way |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Reporting Agency Type:
1 Tennessee Highway Patrol (THP)
2 City/Metropolitan Police Dept. (CPD)
3 Sheriff's Office
4 Capitol Police
5 Commercial Vehicle Enforcement (CVE)
6 College/University Campus
7 National Park Service
8 Other

Totals — Vehicles / Killed / Injured

Date of Crash — MONTH: **05** DAY: **03** YEAR

Day of Crash:
1 SUN  2 MON  3 TUES  4 WED  5 THURS  6 FRI  7 SAT  9 UNK

Time of Crash / County: **79 0 0 0** / City

Area:
1 Urban
2 Rural

Additional Destination (select 1):
0 Not Applicable
1 Business
2 Residential
3 School

Trafficway/Land Way/Private Way:
1 Trafficway – OPEN (select 1) A13
2 Trafficway – CLOSED
3 Parking Lot
4 Private Property or Private Road

Hit and Run? A14
1 Yes–Hit Motor Vehicle in Transport
2 Yes–Hit Pedestrian or Non-Motorist
3 Yes–Hit Parked Vehicle or Object
4 No Hit and Run

Solved?
1 Yes    2 No

Investigation Complete? 1 Yes  2 No
Photos Taken? 1 Yes  2 No
If Yes, by Whom? 1 Police  2 Other

Rail/Crossing ID A28

TDOT Use Only

| ROUTE NUMBER | SPC CASE | CO. SEQ. | LOG MILE | LOC |
|---|---|---|---|---|

GPS Coordinate A29

Time Notified A23
Time Arrived A24
LATITUDE / LONGITUDE

Police Pursuit Involved? 1 Yes  2 No A15

School Bus Related? 1 Yes  2 No A16

ON Hwy No. and / Street Name A30
Estimated ___ FT. ___ MI. N / S / E / W
FROM/AT Hwy No. and / Street Name A31
Mile Post

---

### Vehicle (Left)

Vehicle Number 1
Total Number of Occupants

Driver Presence:
1 Driver Operated Vehicle
2 Driver Operated Non-Contact Vehicle
3 Driver Operated Government Vehicle
4 Driverless Vehicle

DRIVER NAME — First: **Robert** M.I. **L.** Last: **O'Sullivan JR** D1

ADDRESS Street & Number D2: **7 Winona Way**

City & State: **Hingham, Ma** ZIP: **02043** Phone Number: **(781) 740-0701** D2

Driver's License Number D3: **576695150** State: **MA** Exp. Year: **2004**

Date of Birth D4: **04-19-1968** Age D5: **34** Sex D6: **M** Race: 1 White 2 Black 3 Hispanic 4 Other

License Class D8: **DM** Endorsements D9: Complied With? Y/N D10
Restrictions: Complied With? Y/N

Injury Code: 3
Safety Equipment P9: **0 3**
AIRBAG: Not Applicable / Not Available / Avail. Deployed / Not Replaced / Avail. Not Dpfld / Disabled/Rrsrvd / Avail. Swtch. Off / Unknown
EJECTED: Not Ejected / Totally Ejected / Partially Ejected / Unknown
Ejection Path P11
Medical Transport P14: Y/N

TRAPPED/EXTRICATED: 0 Not Applicable 1 Not Trapped 2 Trapped/Extricated 3 Trapped/Not Extricated 5 Unknown P13

Driver Residence P15: 1 Less 25 mi. 2 Over 25 mi. Out of State Ambulance/Hospital

Year of Vehicle V5: **1999** Make V6: **Iwtl** Model V7: **4005ER** Color V8: **White** Body Type V9: **Truck**

Vehicle ID Number V11: **1HTSCAAM8XH220511** Body Code V10

License Plate Number V12: **K10-469** State V13: **MA** Exp. Year V14: **2003**  4 1

Vehicle Owner V4: Same Y — First: **SST** M.I. **Leasing** Last: **Corp**

Street Address V4: **112 Fulton St. Suite 6A**

City & State V4: **Boston, Ma** ZIP: **02109** Phone Number: **(615) 773-5455**

Violations D12 (may select 3): 0 None  1 Alcohol/Drugs  2 Reckless/Careless  3 Other Moving  4 Other Non-Moving  5 Pending
Charges: D13

---

### Vehicle (Right)

Vehicle Number
Total Number of Occupants

Driver Presence:
1 Driver Operated Vehicle
2 Driver Operated Non-Contact Vehicle
3 Driver Operated Government Vehicle
4 Driverless Vehicle

DRIVER NAME — First M.I. Last D2

ADDRESS Street & Number D2

City & State ZIP Phone Number D2

Driver's License Number D3 State Exp. Year

Date of Birth D4 Age D5 Sex D6 Race: 1 White 2 Black 3 Hispanic 4 Other

License Class D8 Endorsements D9 Complied With? Y/N D10 Restrictions Complied With? Y/N

Injury Code P7 Safety Equipment P9 AIRBAG EJECTED Ejection Path P11 Medical Transport P14: Y/N

TRAPPED/EXTRICATED: 0 Not Applicable 1 Not Trapped 2 Trapped/Extricated 3 Trapped/Not Extricated 5 Unknown P13

Driver Residence P15: 1 Less 25 mi. 3 Out of State Ambulance/Hospital 2 Over 25 mi.

Year of Vehicle V5 Make V6 Model V7 Color V8 Body Type V9

Vehicle ID Number V11 Body Code V10

License Plate Number V12 State V13 Exp. Year V14

Vehicle Owner V4: Same Y — First M.I. Last

Street Address V4

City & State V4 ZIP Phone Number

Violations D12 (may select 3): 0 None  1 Alcohol/Drugs  2 Reckless/Careless  3 Other Moving  4 Other Non-Moving  5 Pending
Charges: D13

---

Investigating Officer Rank and Name: (Print Name) A40: **TRP Michael Bolton**
Badge/ID Number A40: **809**
District/Zone A40: **4**
Car No. A40: **4428**
Report Date A41: **03-15-2003**

SP1203 (rev 1-14-2000)

PLEASE DO NOT WRITE IN THIS AREA

RDA 1348

| Document Type | REFERENCE NUMBER |
|---|---|
| Supplement Document  A4 | 8335560 |
| Amended Document | |
| Local Agency Number  A7 | Reference Number Override  A6 |

Please Do Not Write In This Microfilm Space

**Local Agency Number:** 4A4190-03    **Reference Number Override:** 8335559

## Motorists (Passengers) and/or Non-Motorists

### A
| Vehicle Number | NAME First | M.I. | Last | Date of Birth | Age | Injury Code | SEAT Position | SAFETY Equipment | AIRBAG |
|---|---|---|---|---|---|---|---|---|---|
| 1 2 3 4 5 6 7 8 9 10 20 30 | ADDRESS Same as ☐ Driver ☐ Owner | Street & Number | City & State ZIP | | 1 Male Sex / 2 Female | Injury Code | | | |

Motorists

Non-Motorists: Other Cyclist / Pedestrian / Bicyclist — Other Pedestrian / Other Non-Motorist — EJECTED: 0 Not Applicable / 1 Not Ejected / 2 Totally Ejected / 3 Partially Ejected / 9 Unknown — Ejection Path — TRAPPED/EXTRICATED: 0 Not Applicable / 1 Not Trapped / 2 Trapped/Extricated / 3 Trapped/Not Extricated / 9 Unknown — Medical Transport (Y)(N) — Ambulance/Hospital — Alcohol — Drugs

### B
| Vehicle Number | NAME First | M.I. | Last | Date of Birth | Age | Injury Code | SEAT Position | SAFETY Equipment | AIRBAG |
|---|---|---|---|---|---|---|---|---|---|
| 2 3 4 5 6 7 8 9 10 20 30 | ADDRESS Same as ☐ Driver ☐ Owner | Street & Number | City & State ZIP | | 1 Male Sex / 2 Female | | | | |

### C
| Vehicle Number | NAME First | M.I. | Last | Date of Birth | Age | Injury Code | SEAT Position | SAFETY Equipment | AIRBAG |
|---|---|---|---|---|---|---|---|---|---|
| 3 4 5 6 7 8 9 10 20 30 | ADDRESS Same as ☐ Driver ☐ Owner | Street & Number | City & State ZIP | | 1 Male Sex / 2 Female | | | | |

### D
| Vehicle Number | NAME First | M.I. | Last | Date of Birth | Age | Injury Code | SEAT Position | SAFETY Equipment | AIRBAG |
|---|---|---|---|---|---|---|---|---|---|
| 4 5 6 7 8 9 10 20 30 | ADDRESS Same as ☐ Driver ☐ Owner | Street & Number | City & State ZIP | | 1 Male Sex / 2 Female | | | | |

### E
| Vehicle Number | NAME First | M.I. | Last | Date of Birth | Age | Injury Code | SEAT Position | SAFETY Equipment | AIRBAG |
|---|---|---|---|---|---|---|---|---|---|
| 5 6 7 8 9 10 20 30 | ADDRESS Same as ☐ Driver ☐ Owner | Street & Number | City & State ZIP | | 1 Male Sex / 2 Female | | | | |

### F
| Vehicle Number | NAME First | M.I. | Last | Date of Birth | Age | Injury Code | SEAT Position | SAFETY Equipment | AIRBAG |
|---|---|---|---|---|---|---|---|---|---|
| 1 2 3 4 5 6 7 8 9 10 20 30 | ADDRESS Same as ☐ Driver ☐ Owner | Street & Number | City & State ZIP | | 1 Male Sex / 2 Female | | | | |

Non-Motorist Number (A)(B)(C)(D)(E)(F)

## Non-Motorist

Non-Motorist Number (A)(B)(C)(D)(E)(F)

**Location At Intersection**
| N1 N2 | | N1 N2 |
|---|---|---|
| 01 01 In Crosswalk | 04 04 On Roadway, Crosswalk Availability Unknown | |
| 02 02 On Roadway, Not in Crosswalk | 05 05 Not on Roadway | |
| 03 03 On Roadway, Crosswalk Not Available | 99 99 Unknown | |

**Location Not At Intersection**
| N1 N2 | N1 N2 |
|---|---|
| 10 10 In Crosswalk | 14 14 In Parking Lane |
| 11 11 On Roadway, Not in Crosswalk | 15 15 On Road Shoulder |
| 12 12 On Roadway, Crosswalk Not Available | 16 16 Bike Path |
| 13 13 On Roadway, Crosswalk Availability Unknown | 17 17 Outside Trafficway |
| | 18 18 Other, Not on Roadway |
| | 19 19 Unknown |

Vehicle Striking Non-Motorist
N1 Vehicle # (1)(2)(3)(4)(5)(6)(7)(8)(9)(10)(20)(30)

Vehicle Striking Non-Motorist
N2 Vehicle # (1)(2)(3)(4)(5)(6)(7)(8)(9)(10)(20)(30)

**Condition (may select 3)**
| N1 N2 | N1 N2 |
|---|---|
| 00 00 Appeared Normal | 10 10 No Contributing Actions |
| 01 01 Had Been Drinking | 20 20 Not Visible |
| 02 02 Illegal Drug Use | 21 21 Darting, Running or Stumbling into Road |
| 03 03 Ill (Sick) | 22 22 Crossing with Signal |
| 04 04 Reaction to Drugs/Medication | 23 23 Crossing against Signal |
| 05 05 Failure to Take Drugs/Medication | 24 24 Crossing, No Signal |
| 06 06 Blind | 25 25 Coming from Behind Parked Car |
| 07 07 Restricted to Wheelchair | 26 26 Standing in Safety Zone |
| 08 08 Other Physical Impairment (Narrative) | 27 27 Getting on or off Other Vehicle |
| 09 09 Emotional (Depressed, Angry, Disturbed) | 28 28 Pushing or Working on Vehicle |
| 99 99 Unknown Condition | 29 29 Other Working in Roadway |

**Actions (may select 4)**
| N1 N2 | N1 N2 |
|---|---|
| 30 30 Construction/Maintenance/Utility Worker | 46 46 Failure to Use Lights |
| 31 31 Playing in Roadway | 47 47 Improper Loading of Vehicle Cargo or Passengers |
| 32 32 Lying in Roadway | 48 48 Operator Inexperience |
| 33 33 Walking in Roadway | 49 49 Operating without Required Equipment |
| 34 34 Walking beside Roadway | 50 50 Riding in Roadway Against Traffic |
| 41 41 Failure to Keep in Proper Lane or Running off Road | 51 51 Vision Obstructed, By What? (Narrative) |
| 42 42 Failure to Yield Right of Way | 99 99 Unknown Action |
| 43 43 Failure to Obey Traffic Controls | |
| 44 44 Failure to Observe Warnings or Instructions | |
| 45 45 Failure to Signal Intentions | |

PLEASE DO NOT WRITE IN THIS AREA

| Document Type | REFERENCE NUMBER |
|---|---|
| ☑ Supplement Document   A+ | **8335560** |
| ③ Amended Document | |
| Local Agency Number   A7 | Reference Number Override   A6 |
| 4A4I90·03 | P33555 9 |

## Truck & Bus Crash Information
Please Do Not Write In This Microfilm Space
(This Section Must Be Completed for Each Truck or Bus Involved in this Crash.)

**When To Use This Section:**   *Did the crash involve:. . .*

**Part A**
A truck with at least two axles and six tires?   Y · N
A truck with a hazardous materials placard?   Y · N
A bus designed to carry 16 or more persons, including the driver?   Y · N

*STOP! If all the responses to Part A are "NO" do not complete this Truck & Bus Crash Information Section. If there are any "YES" answers, continue to Part B.*

**Part B**
Any person who was fatally injured?   Y · N
Any injured person requiring transport for immediate medical treatment?   Y · N
One or more vehicles that had to be towed from the scene as a result of the crash?   Y · N
One or more vehicles that required repair or were provided assistance before proceeding from scene under own power?   Y · N

*STOP! If all the responses to Part B are "NO" do not continue. If there are any "YES" answers, please complete this Truck & Bus Crash Information Section . . .*

Vehicle #   1   2   3   4   5   6   7   8   9   10   20   30

### Carrier Information
**Carrier Identification Numbers**

Source:
- Vehicle Side
- Shipping Papers
- Trip Manifest
- Driver
- Log Book

• Interstate Carrier?   Y · N

US DOT | TN DOS
ICC MC |

Carrier Name | Carrier Address

### Hazardous Material Information
• Hazardous Material Placard Displayed?   Y · N      • Hazardous Cargo was Released?   Y · N

Class Numbers | List the Hazardous Material(s) by name in this load:
UN Numbers | List the Name(s) of Released Hazardous Material(s):

### Vehicle Information
Combined Gross Vehicle Weight Rating | LBS | Total # of Axles

**Vehicle Configuration**
① Bus
② Single unit truck, 2 axles, 6 tires
③ 
④ Single unity truck 3+ axles
⑤ Truck/Tractor
⑥ Tractor/Semi-Trailer
⑦ Tractor/Doubles
⑧ Tractor/Triples
⑨ Unknown Heavy Truck

**Cargo Body Type**
① Bus
② Van/Enclosed box
③ Cargo Tank
④ Flatbed
⑤ Dump
⑥ Concrete Mixer
⑦ Auto Transporter
⑧ Garbage/Refuse
⑨ Other

**SEQUENCE OF EVENTS FOR THIS VEHICLE**   *(Mark a total of one to four events in the order they occurred.)*

1  2  3  4 · Ran off Road
1  2  3  4 · Jackknife
1  2  3  4 · Overturn (Rollover)
1  2  3  4 · Downhill Runaway
1  2  3  4 · Cargo Loss or Shift
1  2  3  4 · Explosion or Fire
1  2  3  4 · Separation of Units
1  2  3  4 · Collision involving pedestrian

1  2  3  4 · Collision involving motor vehicle in transp.
1  2  3  4 · Collision involving parked motor vehicle
1  2  3  4 · Collision involving train
1  2  3  4 · Collision involving pedalcycle
1  2  3  4 · Collision involving animal
1  2  3  4 · Collision involving fixed object
1  2  3  4 · Collision involving other object
1  2  3  4 · Other

Vehicle #   ①  ②  ③  ④  ⑤  ⑥  ⑦  ⑧  ⑨  ⑩  ⑳  ㉚

### Carrier Information
**Carrier Identification Numbers**

Source:
- Vehicle Side
- Shipping Papers
- Trip Manifest
- Driver
- Log Book

• Interstate Carrier?   Y · N

US DOT | TN DOS
ICC MC |

Carrier Name | Carrier Address

### Hazardous Material Information
• Hazardous Material Placard Displayed?   Y · N      • Hazardous Cargo was Released?   Y · N

Class Numbers | List the Hazardous Material(s) by name in this load:
UN Numbers | List the Name(s) of Released Hazardous Material(s):

### Vehicle Information
Combined Gross Vehicle Weight Rating | LBS | Total # of Axles

**Vehicle Configuration**
① Bus
② Single unit truck, 2 axles, 6 tires
③ 
④ Single unity truck 3+ axles
⑤ Truck/Tractor
⑥ Tractor/Semi-Trailer
⑦ Tractor/Doubles
⑧ Tractor/Triples
⑨ Unknown Heavy Truck

**Cargo Body Type**
① Bus
② Van/Enclosed box
③ Cargo Tank
④ Flatbed
⑤ Dump
⑥ Concrete Mixer
⑦ Auto Transporter
⑧ Garbage/Refuse
⑨ Other

**SEQUENCE OF EVENTS FOR THIS VEHICLE**   *(Mark a total of one to four events in the order they occurred.)*

1  2  3  4 · Ran off Road
1  2  3  4 · Jackknife
1  2  3  4 · Overturn (Rollover)
1  2  3  4 · Downhill Runaway
1  2  3  4 · Cargo Loss or Shift
1  2  3  4 · Explosion or Fire
1  2  3  4 · Separation of Units
1  2  3  4 · Collision involving pedestrian

1  2  3  4 · Collision involving motor vehicle in transp.
1  2  3  4 · Collision involving parked motor vehicle
1  2  3  4 · Collision involving train
1  2  3  4 · Collision involving pedalcycle
1  2  3  4 · Collision involving animal
1  2  3  4 · Collision involving fixed object
1  2  3  4 · Collision involving other object
1  2  3  4 · Other

# EXHIBIT NO. 8



# RYDER TRUCK RENTAL, INC.
## TRUCK LEASE AND SERVICE AGREEMENT



THIS AGREEMENT is made as of the __28th__ day of __February__ __, 19 91__, between

RYDER TRUCK RENTAL, INC , __3200 Interstate 30, Little Rock, AR 72206__ (Ryder) and

__VIRCO MFG. CORPORATION__ , whose address is

__14200 South San Pedro, Los Angeles, CA 90061__ (Customer).

### 1. EQUIPMENT COVERED AND TERM:

A. Ryder agrees to lease to Customer and Customer agrees to lease from Ryder the Vehicles on Schedules A hereafter made a part of this Agreement (Vehicle(s)). Execution of a Schedule A constitutes Customer's authorization to Ryder to acquire the Vehicles selected by Customer. The Agreement will become effective with respect to each Vehicle on the date tendered by Ryder and continue for the term specified on Schedule A unless terminated earlier as provided in this Agreement.

B. Acceptance of Vehicles in service constitutes Customer's acknowledgement of compliance with Customer's specifications. Customer agrees to pay for any structural alterations (not to be made without Ryder's prior written consent), special equipment, or material alteration in painting, lettering or art work thereafter required by Customer. In the event that, subsequent to the date of execution of this Agreement by Ryder, any federal, state or local law, ordinance, or regulation requires the installation of any additional equipment, Customer will be responsible for all costs including installation expenses. Ryder agrees to either install or arrange for such installation and Customer agrees to pay Ryder the full cost.

C. Where a Vehicle is operated by Customer with a trailer or other equipment not included on a Schedule A, or not maintained by Ryder under a separate agreement, Customer agrees that such trailer and/or equipment will be in good operating condition. Notwithstanding any other provision of this Agreement, Customer will indemnify and hold Ryder harmless from any claim or loss or damage caused by such trailer and/or equipment.

### 2. OPERATION OF VEHICLES:

A. The Vehicles will be used and operated by Customer only in the normal and ordinary course of Customer's business, not in violation of any laws or regulations (including legal weight and size limits) and Customer will indemnify and hold Ryder harmless from any claim or loss or damage arising out of any such violation.

B. Each Vehicle will be promptly returned by Customer to Ryder's facility specified on Schedule A at the end of its lease term unless Customer purchases the Vehicle as provided for hereinafter.

### 3. MAINTENANCE AND REPAIRS TO VEHICLES:

A. Ryder agrees to provide at its sole cost: (1) Lubricants, tires, tubes and all other operating supplies necessary for the Vehicles; (2) Maintenance and repairs including all labor and parts required to keep the Vehicles in good operating condition; (3) Painting and lettering at the time the Vehicles are placed into service; (4) Exterior washings; and (5) Road service for mechanical or tire failure.

B. Customer agrees that only Ryder or parties authorized by Ryder will make any repairs or adjustments to Vehicles. When repairs are necessary, Customer will notify Ryder immediately. Ryder will not be responsible for the cost of repairs or services not expressly authorized by Ryder. Customer must submit acceptable vouchers for such repairs or services.

C. Customer agrees to return each Vehicle to Ryder for ordinary maintenance and service at the facility stated on Schedule A for a minimum of 8 hours each week at such scheduled times as agreed to by the parties.

### 4. FUEL:

A. When Ryder is designated on the Schedule A:

(1) Ryder will provide fuel for Vehicles from its own or other designated facilities. The charge for fuel will vary over time and be billed to Customer in addition to the other charges provided for on applicable Schedule A.

(2) If Customer purchases fuel from sources other than Ryder's facilities or other designated facilities, Customer will be responsible for the charges for all such fuel.

(3) Ryder will, where permitted by law, apply for fuel tax permits, prepare and file fuel tax returns, and pay the taxes imposed upon the purchase and consumption of fuel by Customer provided: (a) Customer provides Ryder weekly with all documentation necessary to prepare the fuel tax returns and will reimburse Ryder for all charges incurred or credits disallowed as a result of untimely or improper furnishing of such documents, and (b) Customer will reimburse Ryder all such fuel taxes paid on Customer's behalf in excess of those which would have been payable had the fuel consumed been purchased in the state of consumption.

B. When Customer is designated on the Schedule A:

Customer will hold Ryder harmless from any claims or loss resulting from Customer's failure to pay fuel taxes

### 5. LICENSES:

A. Ryder agrees to pay for the state motor vehicle license for the licensed weight shown on Schedule A, personal property taxes and Vehicle inspection fees for each Vehicle in the state of domicile, and Federal Heavy Vehicle Use Tax, all at the rates and method of assessment in effect on the date of execution of such Schedule A. Customer will be responsible for any increases or changes in assessment of these items thereafter.

B. Where legal, Ryder will apply for vehicle licenses and prorate or state reciprocity plates at Customer's request and cost.

C. Customer agrees to pay for any special license or pay any taxes resulting from the operation and use of the Vehicles including mileage taxes, ton mileage taxes, highway or bridge tolls. Ryder shall have the right to settle any claim or lien involving any Vehicle as a result of Customer's failure to pay any such taxes and Customer will immediately reimburse

**6. SUBSTITUTION:**

Ryder agrees to furnish a substitute vehicle at no extra charge for any Vehicle, other than those excepted below, which may be temporarily inoperable because of mechanical failure, the substitute to be as nearly as practicable the same size as the Vehicle. The substitute will be furnished to Customer where the Vehicle was disabled and will be returned by Customer to the Ryder facility that provided it. Ryder will not furnish a substitute for any Vehicle that is out of service for ordinary maintenance and service time; or is out of service for repair of any form of physical damage resulting from causes including fire, collision, or upset; or is lost or stolen; or is out of service for repair of damage resulting from Customer's violation of any provisions of this Agreement; or is out of service for repair or maintenance of special equipment for which Ryder is not responsible. Ryder's failure to furnish a substitute vehicle within a reasonable time when required will cause the charges for the inoperable Vehicle to abate until the Vehicle is returned to Customer's service or a substitute is available. Ryder's liability in the event of such a failure will be limited to abatement of charges for the inoperable Vehicle. A substitute vehicle, while in Customer's service, will be subject to all the terms and conditions of this Agreement. While a Vehicle is out of service because of damage resulting from any form of physical damage, Ryder will rent Customer a replacement vehicle, if available, at a rate equal to the charge for the inoperable Vehicle. Irrespective of whether or not Customer rents a vehicle from Ryder while a Vehicle is out of service for repair of physical damage, the charges applicable to it will not abate.

**7. DRIVERS:**

A.  Customer agrees that each Vehicle will only be operated by a properly licensed driver, at least 18, who is the employee or agent of Customer, subject to Customer's exclusive direction and control, and that Vehicles will not be operated by a driver in possession of or under the influence of alcohol or any drug which may impair the driver's ability. Customer agrees to reimburse Ryder in full for loss or damage to Vehicles, including related expenses, if Vehicles are operated by drivers under 18. Upon receipt of a written complaint from Ryder specifying any reckless, careless or abusive handling of a Vehicle or any other incompetence by or of any driver, and requesting the driver's removal as an operator of Vehicles, Customer will immediately remove such individual as a driver of Vehicles. In the event that Customer fails to do so, or is prevented from so doing by any agreement with anyone on the driver's behalf: (1) Customer will, notwithstanding any other provisions of this Agreement, reimburse Ryder in full for any loss and expense sustained by Ryder for damage to any Vehicle when being operated by such individual and Customer will indemnify and hold Ryder completely harmless from any claims or causes of action for death or injury to persons or loss or damage to property arising out of the use or operation of any Vehicle by such individual notwithstanding that Ryder may be designated on applicable Schedules A as responsible for furnishing and maintaining Liability Insurance; and (2) Ryder may at its election and at any time thereafter upon 30 days notice to Customer, terminate any Liability Insurance coverage extended by Ryder, and may, at its election, with respect to each Vehicle, increase the amount of Customer's physical damage responsibility to an amount equal to the agreed value calculated in accordance with Paragraph 11D as of the time of damage or loss.

B.  Ryder agrees, at Customer's request, to assist Customer in developing a driver education and safety program.

C.  Customer agrees that the Vehicles will not be operated in a reckless or abusive manner, or off an improved road, or on a flat tire, or improperly loaded, or loaded beyond the manufacturer's recommended maximum gross weight, or to transport any property or material deemed extra hazardous by reason of being poisonous, inflammable, explosive, or fissionable. Notwithstanding any other provision of this Agreement, and irrespective of which party is responsible for physical damage to Vehicles pursuant to Paragraph 10B, Customer agrees to reimburse Ryder in full for damage to any Vehicle, including expenses, resulting from a violation of this provision. Customer will be responsible for all expenses of towing any mired Vehicle when not in Ryder's possession or on Ryder's premises.

**8. CHARGES:**

A.  Customer agrees to pay Ryder for all charges within 10 days of the date of Ryder's invoice without deduction or setoff. Unless Ryder is notified that any charge is incorrect within 180 days of the date of any invoice, that invoice will be conclusively presumed to be correct.

B.  Mileage will be determined from odometer readings. If the odometer fails to function, Customer will immediately report it to Ryder. The mileage for the period in which the failure existed may then be determined at Ryder's option from (1) Customer's trip records; or (2) the amount of fuel consumed and the miles per gallon record of Ryder averaged for the previous 30 days.

C.  Customer agrees to promptly provide Ryder with current financial statements and other financial information as requested.

**9. ADJUSTMENT:**

A.  The charges in this Agreement are based on Ryder's current cost of labor, parts, and supplies. These costs may fluctuate after the date of execution of this Agreement. Customer agrees that for each rise or fall of 1% in the Revised Consumer Price Index for Urban Wage Earners and Clerical Workers (1967 base period, published by U. S. Bureau of Labor Statistics), above or below the base index figure on Schedule A, charges for each Vehicle will be adjusted upward or downward as follows:

> 1% of 60% of the Fixed Charge and 1% of 100% of the Mileage Rate
> 1% of 60% of the Mileage Rate (including Mileage Guaranty) for
>      Mileage only Rated Vehicles
> 1% of 100% of the hourly charge (refrigeration equipment only)

B.  Adjustments will be based on the original charges stated on Schedule A and be effective on the first day of January and July based on the latest index published prior to such effective date. If the Revised Consumer Price Index for Urban Wage Earners and Clerical Workers is discontinued, another mutually acceptable cost adjustment index will be chosen.

C.  Customer agrees to pay for (1) any sales, use, gross receipts or similar tax now or hereafter imposed upon the use of the Vehicle or on the rental or other charges accruing hereunder; (2) any increase in license or registration fees, Federal Heavy Vehicle Use Taxes, vehicle inspection fees, fuel tax permits, and personal property tax; or (3) any new or additional tax or governmental fees, adopted after the date of the execution of the applicable Schedule A.

A. Liability Insurance (continued)

(1) A standard policy of automobile liability insurance (hereafter Liability Insurance) with limits specified on each Schedule A will be furnished and maintained by the party designated on Schedule A at its sole cost, written by a company satisfactory to Ryder, covering both Ryder and Customer as insureds for the ownership, maintenance, use or operation of the Vehicles and any substitute vehicle. Such policy will provide that the coverage is primary and not additional or excess coverage over insurance otherwise available to either party and that it cannot be cancelled or materially altered without 30 days prior written notice to both parties. The party designated will furnish to the other certificates to evidence compliance with the provision.

(2) Upon not less than 30 days prior written notice to Customer, Ryder may terminate Liability Insurance coverage maintained by Ryder and Customer will be obligated to procure and maintain Liability Insurance in the limits set forth on Schedule A as of the effective date of termination and the charges will be adjusted accordingly.

(3) If Customer is obligated to procure and maintain Liability Insurance and fails to do so, or fails to promptly furnish Ryder the required evidence of insurance, Customer agrees to indemnify and hold Ryder harmless from and against any claims or causes of action for death or injury to persons or loss or damage to property arising out of or caused by the ownership, maintenance, use, or operation of any Vehicle or substitute vehicle and Ryder is authorized but not obligated to procure such Liability Insurance without prejudice to any other remedy Ryder may have, and Customer will pay Ryder, as additional rental, the amount of the premium paid by Ryder.

(4) Customer agrees to release, indemnify, and hold Ryder harmless from and against any claims or causes of action for death or injury to persons or loss or damage to property in excess of the limits of Liability Insurance, whether provided by Ryder or Customer, arising out of or caused by the ownership, maintenance, use or operation of any Vehicle or substitute vehicle, and any such claims or causes of action which Ryder may be required to pay as a result of any statutory requirements of insurance or as a result of the insolvency of Customer's insurance company and for which Ryder would not otherwise pursuant to the terms hereof be required to pay.

(5) Ryder will, where required and legal, at Customer's request, file evidence of automobile liability insurance required by federal or state governmental authorities when Ryder is designated as responsible for Liability Insurance. Customer agrees to indemnify, defend and hold Ryder harmless from all claims, causes of action, suits and damages arising out of filing such documents for vehicles other than the Vehicles.

(6) Customer further agrees to release and hold Ryder harmless for death or injury to Customer, Customer's employees, drivers or agents, arising out of the ownership, maintenance, use or operation of any Vehicle or substitute vehicle.

B. **Physical Damage Responsibility**

The party designated on Schedule A will pay for loss or damage to any Vehicle subject to the following:

(1) When Ryder is designated:

a. Ryder will assume and pay for all loss (including theft) or damage to each Vehicle in excess of the deductible amount specified on Schedule A EXCEPT (1) any willful damage to the Vehicle, specifically including but not limited to damage arising out of or in connection with any labor dispute to which Customer is a party; (2) conversion of any Vehicle by an agent or employee of Customer; and (3) the loss of tools, tarpaulins, accessories, spare tires and other such appurtenances. Customer agrees to pay up to the amount specified on Schedule A for loss (including theft) or damage to each Vehicle, including related expenses, from each occurrence and will pay for all loss (including theft) or damage to any Vehicle resulting from any perils specifically excepted in this Paragraph.

b. Upon not less than 30 days prior written notice to Customer, Ryder may designate Customer as responsible for all physical damage to Vehicles. In such event, Customer will be obligated to procure and maintain complete physical damage insurance coverage reasonably acceptable to Ryder. Ryder's charges to Customer will be decreased to reflect the change in designation of the responsibility for physical damage. Whenever Customer is obligated to procure and maintain physical damage insurance coverage and fails to do so, or fails to promptly furnish Ryder with complete certificates evidencing such coverage, Customer agrees to pay Ryder for all loss (including theft) or damage to any Vehicle or substitute vehicle pursuant to Paragraph 10B(2)a.

(2) When Customer is designated:

a. Customer will be responsible and pay for all loss (including theft) or damage to any Vehicle or substitute vehicle, including related expenses arising from any cause and regardless of how, including Ryder's negligence, or where, including Ryder's premises, the loss or damage occurred. Customer's liability for any Vehicle will not exceed the purchase price for the Vehicle computed according to Paragraph 11D at the time of such loss or damage.

b. Customer agrees to furnish Ryder with evidence of physical damage insurance coverage reasonably acceptable to Ryder with Ryder listed as a named insured or endorsed as a loss payee.

C. **Notice of Accident**

Customer agrees to immediately notify Ryder of any accident, collision, loss (including theft), or damage involving a Vehicle or substitute vehicle; to cause the driver to make a detailed report in person at Ryder's office as soon as practicable; and to render all other assistance reasonably requested by Ryder and the insurer in the investigation, defense, or prosecution of any claims or suits.

D. **Cargo Insurance Responsibility**

Ryder will have no liability for loss of or damage to any goods or other property in or carried on any Vehicle or substitute vehicle whether such loss or damage occurs in a Ryder facility or elsewhere, occurs due to any negligence on Ryder's part, or occurs as a result of any other failure on Ryder's part. Customer hereby assumes all such risk of loss or damage, waives any claim it may have against Ryder, and agrees to release, indemnify, defend, and hold Ryder harmless from all liability for such loss or damage to cargo. Customer agrees to reimburse Ryder for loss of any tools, tarpaulins, spare tires, or other similar equipment furnished by Ryder.

E. **Vehicle Theft or Destruction**

If a Vehicle is lost or stolen and remains so for 30 days after Ryder has been notified, the lease as to such Vehicle will then terminate provided all charges for the Vehicle have been paid to that date and provided any amounts due Ryder pursuant to Paragraph 10B have been paid. Ryder will not be obligated to provide a substitute vehicle during this 30 day period. If a Vehicle is, in Ryder's opinion, damaged beyond repair, Ryder will notify Customer within 30 days after Ryder has been advised of the loss. Upon receipt of Ryder's notice that the Vehicle has been damaged beyond repair, provided all charges for the Vehicle have been paid to that date and provided any amounts due Ryder pursuant to Paragraph 10B hereof have been paid, the lease as to such Vehicle will then terminate.

## 11. TERMINATION:

A. Either party may terminate the lease of any Vehicle prior to expiration of its term on any anniversary date of its Date of Delivery indicated on the Schedule A by giving to the other party at least 60 days prior written notice. If termination is effected by Ryder, Customer will have the right, but not the obligation, to purchase in accordance with Paragraph 11D. With respect to Vehicles with respect to which termination notice has been given on the termination date(s). If termination is effected by Customer, Customer will at Ryder's option purchase in accordance with Paragraph 11D all Vehicles with respect to which termination notice has been given on the termination date(s). If termination is effected by Ryder all Vehicles with respect to which termination notice has been given on the termination date(s).

B. If Customer becomes insolvent, files a voluntary petition in bankruptcy, makes an assignment for the benefit of creditors, is adjudicated a bankrupt, permits a receiver to be appointed for its business, or suffers a material disposition of its assets, the lease of Vehicles will terminate at Ryder's option. Upon termination, Ryder may at its option demand that Customer purchase the Vehicles within 10 days in accordance with Paragraph 11D.

C. Breach or Default

(1) If Customer breaches or is in default of any provision of this Agreement and that breach or default is not cured within 7 days after written notice has been mailed to Customer, Ryder may immediately, without further notice or demand, take possession of the Vehicles. Ryder will be entitled to enter upon any premises where the Vehicles may be and remove them and refuse to redeliver them to the Customer until such breach or default is cured without any of such action being deemed an act of termination and without prejudice to the other remedies Ryder may have under this Agreement or at law. Customer will continue to be liable for all charges accruing during the period the Vehicles are retained by Ryder.

(2) In the event Ryder takes possession of any Vehicle and there is any property in or upon the Vehicle which belongs to or is in the custody or control of Customer, Ryder may take possession of such items and either hold them for Customer until Customer claims them or place them in public storage for Customer at Customer's expense.

(3) If Customer's breach or default continues for 7 days after written notice has been mailed to Customer, Ryder may terminate the Agreement. Upon termination, Ryder may demand that Customer purchase within 10 days or termination any or all Vehicles in accordance with Paragraph 11D without prejudice to other remedies Ryder may have under this Agreement and at law.

(4) Customer agrees to pay Ryder all Ryder's costs and expenses, including reasonable attorney's fees, incurred in collecting amounts due from Customer or in enforcing any rights of Ryder hereunder.

D. In the event Customer (pursuant to Paragraph 11A) shall be required to purchase any Vehicle, or should Ryder (pursuant to Paragraph 11B or 11C) demand of Customer that it purchase any Vehicle, Customer agrees to purchase each such Vehicle for cash within the time provided for in this Agreement for its Original Value as shown on Schedule A, less the total depreciation which has accrued for such Vehicle in accordance with Schedule A. Additionally, Customer agrees to pay Ryder for the amount of any unexpired licenses, applicable taxes, including personal property taxes and Federal Heavy Vehicle Use Taxes, and other prepaid expenses previously paid by Ryder for the Vehicles prorated to the date of sale and will be responsible for any sales or use tax arising from the purchase. Customer will have no obligation or right to purchase any Vehicle as to which the term on Schedule A has expired.

## 12. ASSIGNMENT OF LEASE:

This Agreement will be binding on the parties hereto, their successors, legal representatives and assigns. Customer agrees to promptly notify Ryder in writing prior to all substantial changes in ownership or any material disposition of the assets of Customer's business. Customer does not have the right to sublease any of the Vehicles, nor to assign this Agreement or any interest therein without Ryder's prior written consent, which consent will not be unreasonably withheld and any attempt to do so will be void.

## 13. FORCE MAJEURE:

Ryder will incur no liability to Customer for failure to supply any Vehicle, provide a substitute vehicle, repair any disabled Vehicle, or provide fuel for Vehicles, if prevented by a national emergency, wars, riots, fires, labor disputes, federal, state, or local laws, rules, regulations, shortages (local or national), or fuel allocation programs, or any other cause beyond Ryder's control whether existing now or hereafter. Notwithstanding Ryder's inability to perform under these conditions, Customer's obligations hereunder will continue.

## 14. GENERAL:

Notices provided for herein will be in writing and mailed to the parties at their respective addresses set forth above. This Agreement will not be binding on Ryder until executed by a person duly authorized and will then constitute the entire agreement and understanding between the parties concerning the Vehicles, notwithstanding any previous writings or oral undertakings, and its terms will not be altered by any oral agreement or informal writing, nor by failure to insist upon performance, or failure to exercise any rights or privileges, but alterations, additions, or changes in this Agreement will only be accomplished by written endorsements, amendments, or additional Schedules A to this Agreement executed by both parties.

| | |
|---|---|
| RYDER TRUCK RENTAL, INC. (RYDER) | VIRCO MFG. CORPORATION CUSTOMER |
| By: _(signature)_ | By: _(signature)_ |
| Name/Title: R. E. WEST, Regional Vice-President | Name/Title: _(handwritten)_ |
| Date: 4-12-91 | Date: 4-3-91 |
| Witness: _Laura Champagne_ | Witness: _(signature)_ |

9-52(3/87)

13566-50  Lith. in U.S.A.

SCHEDULE NO. ___99-01___

PAGE ___1___ of ___1___

LEASE DATED ___Feb. 28, 1991___

## SCHEDULE A TO TRUCK LEASE AND SERVICE AGREEMENT

between Ryder Truck Rental, Inc. (Ryder) and Wilson Mfg. Corporation

(CUSTOMER)

LOCATION NAME: ___Comany, AL___

| VEHICLE NO. (1) | DATE OF DELIVERY (2) | TERM IN YRS. (3) | YR. & MAKE (4) | MODEL & TYPE (5) | SERIAL NUMBER (6) | MAX. GCW GVW when LICENSED WEIGHT (7) | ORIGINAL VALUE (8) | DEPREC. MONTH AMOUNT (9) | ESTIMATED ANNUAL MILES (10) | FIXED CHARGE PER MONTH (11) | MILEAGE RATE PER MILE (12) | REFRIG. MAINT. RATE PER HOUR (13) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 920859 | 1/15/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1195 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920860 | 1/15/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8XYL8J1196 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920861 | 1/15/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1197 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920862 | 1/15/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1198 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920863 | 1/15/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1199 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920864 | 1/15/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1200 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920865 | 1/15/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1201 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920866 | 1/15/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1202 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920867 | 1/15/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1203 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920868 | 1/22/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1204 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920869 | 1/15/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1205 | 80,000 | $95,690.00 | $822.09 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920870 | 2/3/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1206 | 80,000 | $95,690.00 | $474.89 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920871 | 1/15/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1207 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920872 | 1/22/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1208 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920873 | 1/22/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1209 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920874 | 1/22/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1210 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920875 | 1/22/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1211 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920876 | 1/22/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1212 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920877 | 1/22/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1213 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920878 | 3/31/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1214 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920879 | 2/11/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1215 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920880 | 2/3/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1216 | 80,000 | $95,690.00 | $821.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920881 | 2/7/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1217 | 80,000 | $95,690.00 | $321.69 | 100,000 | $1,695.00 | $0.060 | $0.000 |
| 920882 | 2/3/00 | 6.5 | 2000 FRTL | FLC12064ST 70° RR | 1FUYSXYX8YL8J1218 | 80,000 | $90,690.00 | $582.09 | 100,000 | $1,695.00 | $0.060 | $0.000 |

(SIDE ONE)

1072Z3-001 Litho By RYDER in The U.S.A.

1. It is agreed that the Original Value, Monthly Depreciation and Fixed Charges per month are based upon manufacturer's quoted price as of the date of execution by Customer of this Schedule A. In the event manufacturer's quoted price increase prior to the Date of Delivery of the Vehicle(s), Customer agrees that, for each $50 increase in price (or fraction thereof), the following shall be increased accordingly:

| ORIGINAL VALUE | MONTHLY DEPRECIATION | FIXED CHARGE PER MONTH |
|---|---|---|
| $50.00 | $.85 | $1.35 |

The amounts in Columns 8,9 and 11 of this Schedule A will be adjusted on Date of Delivery.

2. Liability Insurance

Responsibility: [ ] Ryder [x] Customer    Limits: Check only one block and complete the appropriate block(s)

[X] Combined Single Limits    $ 1,000,000 per occurrence
[ ] Bodily Injury    $ _____ per person
    Bodily Injury    $ _____ per occurrence
    Property Damage    $ _____ per occurrence

Liability Deductible: $ N/A per occurrence. If liability deductible option is selected (when Ryder extends Liability Insurance) Customer agrees that Ryder shall have the sole right to conduct accident investigation and administer claim handling and settlements and Customer shall adhere to and accept Ryder's conclusions and decisions.

3. Physical Damage Responsibility by: Ryder [X] $ 6000 deductible    Customer [ ]

4. Fuel provided by: [X] Ryder [ ] Customer

5. Domicile of the Vehicle(s) by city: Conway, Arkansas

6. Service and maintenance location of Vehicles listed on this schedule: Conway, Arkansas

7. The base index of 1967 base period. IN-SERVICE DATE will be used to compute the Revised Consumer Price Index for Urban Wage Earners and Clerical Workers.

PPT $0.00

8. Allowances / year: License Fee customer pm    Federal Heavy Vehicle Use Tax $ 550.0

Fuel/Repair/tire permit charges totaling $ bill at cost for each Vehicle listed on this Schedule shall be included in Customer's

Fixed Rental Charge for the states of: 48 STATES

If Ryder's total cost for fuel permits in these states in any calendar year is more or less than the amount included in Customer's Fixed Rental Charge, Customer shall pay the additional amount or receive a credit from Ryder accordingly. Charges incurred by Ryder for fuel permits in states not listed shall be billed to Customer in addition as incurred.

9. Original Identification cost $ incl. If this amount varies by $50.00 or more in price over the original estimated cost, the original value, monthly depreciation and fixed charge per month will be adjusted as indicated in (1) above.

10. Washing provided by: Ryder    Power Units AS NEEDED    Trailers _____ times per year.
(Ryder/Customer)

11. Estimated Annual Mileage: If the Estimated Annual Mileage (Column 10) of this Schedule A in any year beginning on the Date of Delivery of the Vehicle(s) is (i) under 125,000 miles and is exceeded by 20% or (ii) 125,000 miles or over and is exceeded by 10%, the parties will negotiate in good faith a one time change to the Fixed Charge Per Month (Column 11), Depreciation Month Amount (Column 9) and the Term (Column 3) for each Vehicle affected.

12. Tractor Mileage: The Fixed Charge Per Month is based on the assumption that each Vehicle will be operated for _____ 0 _____ miles per twelve (12) month calendar period ("Obligation Period"). If the number of miles actually operated during the Obligation Period exceed the Rated Mileage, the Customer agrees to promptly pay the Mileage Rate set forth on the Schedule A per mile multiplied by the number of miles in excess of the Rated Mileage. Ryder agrees to invoice Customer for any excess amount due at the end of each Obligation Period and Customer will pay this amount in accordance with Paragraph 5A of the Agreement. Customer will not be entitled to any credit or carry forward if the number of miles actually operated during the Obligation Period is less than the Rated Mileage.

This Schedule A is a part of the Truck Lease and Service Agreement between the parties hereto.

RYDER TRUCK RENTAL, INC.

By _____

Name/Title Bobby Stewart/General Mgr.

Date 3-29-99

Witness _____

Virco Mfg. Corporation
(CUSTOMER)

By _____

Name/Title Robert E. Dew  VP Finance

Date 7/1/99

Witness _____

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ROBERT O'SULLIVAN,                      )
    Plaintiff                       )
                                    )
VS.                                     )          CIVIL ACTION
                                    )          NO. 05-CV-10863-GAO
VIRCO, INC., RYDER TRUCK RENTAL,        )
INC., AS TRUSTEE OF RYDER TRUCK         )
RENTAL LT., and BOBBY E. MCKUNN         )
    Defendants                      )

## DEFENDANT, VIRCO, INC.'S SUPPLEMENTAL RESPONSE TO PLAINTIFF, ROBERT O'SULLIVAN'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

The Defendant, Virco, Inc. (hereinafter referred to as "Defendant") hereby serves

its Supplemental Response to the Plaintiff, Robert O'Sullivan's First Request for

Production of Documents, as follows:

### GENERAL OBJECTIONS

The Defendant generally objects to the Plaintiff's First Request for Production of

Documents to the extent it is vague, overly broad and unduly burdensome and imposes

obligations in excess of those imposed by Rules 26 and 34 of the Federal Rules of Civil

Procedure.

The Defendant will not produce those documents, if any, which are privileged or

which were prepared in anticipation of litigation or for trial by or for the Defendant or by

or for any of its representatives, nor shall the Defendant produce documents which are

otherwise beyond the bounds of permissible discovery, as defined in Rule 26(b) of the

Federal Rules of Civil Procedure. By stating that production is permitted with respect to

any specific request, the Defendant is not representing that any documents exist, but will produce the documents requested. if any, subject to the foregoing general obligations.

## SUBJECT TO THE FOREGOING, THE DEFENDANT RESPONDS AS FOLLOWS:

### REQUEST NO. 3:

All documents that depict or describe, graphically or otherwise any of the subject vehicles involved in the incident. including but not limited to photographs, videotapes. sketches and diagrams.

### RESPONSE NO. 3:

Please see documents attached hereto as Exhibit No. 2.

### SUPPLEMENTAL RESPONSE NO. 3:

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: Please see documents attached hereto as Exhibit No. 1S.

### REQUEST NO. 6:

A copy of the damage estimate, repair bill, invoice and/or appraisal of the vehicle that Virco owned or operated that was involved in the incident.

### RESPONSE NO. 6:

Please see documents attached hereto as Exhibit No. 4.

### SUPPLEMENTAL RESPONSE NO. 6:

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: Please see documents attached hereto as Exhibit No. 2S.

**REQUEST NO. 15:**

Copies of any and all motor vehicle liability insurance policies and riders, including "umbrella" or "excess" policies, purportedly in force and effect at the time of the incident, as required by Fed. R. Civ. P. 26(a)(1)(D).

**RESPONSE NO. 15:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant is searching its records in Response to this Request and reserves the right to supplement this Response.

**SUPPLEMENTAL RESPONSE NO. 15:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: Please see documents attached hereto as Exhibit No. 3S.

**REQUEST NO. 26:**

All accident and operator's or owner's reports completed by Virco, Ryder and/or McKunn in regard to the incident.

**RESPONSE NO. 26:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: Please see documents attached hereto as Exhibit No. 1.

**SUPPLEMENTAL RESPONSE NO. 26:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: Please see documents attached hereto as Exhibit No. 4S.

**REQUEST NO. 28:**

All documents relating to the vehicle operated by McKunn involved in the incident, including but not limited to any trucking logs, work journals, bills of lading, delivery records/schedules that relate to or include the time period March 15, 2003.

**RESPONSE NO. 28:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objection, the Defendant responds as follows: The Defendant is searching its records in response to this Request and reserves the right to supplement this Response. Please see Response to Request No. 25.

**SUPPLEMENTAL RESPONSE NO. 28:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: Please see documents attached hereto as Exhibit No. 5S.

**REQUEST NO. 30:**

The driving history and/or driving record of McKunn.

**RESPONSE NO. 30:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: The Defendant is searching its records in response to this Request and reserves the right to supplement this Response.

**SUPPLEMENTAL RESPONSE NO. 30:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Without waiving said objections, the Defendant responds as follows: Please see documents attached hereto as Exhibit No. 6S.

4

**REQUEST NO. 34:**

A copy of any and all practices, policies and/or procedures that were in effect and applicable to the vehicle operated by McKunn at the time of the incident, including but not limited to employment handbooks or manuals.

**RESPONSE NO. 34:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which are irrelevant and immaterial to the issues in this case. Without waiving said objections, the Defendant responds as follows: The Defendant is searching its records in response to this Request and reserves the right to supplement this Response.

**SUPPLEMENTAL RESPONSE NO. 34:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which are irrelevant and immaterial to the issues in this case. Without waiving said objections, the Defendant responds as follows: Please see documents attached here to as Exhibit No. 7S.

**REQUEST NO. 36:**

A copy of any and all training materials, manuals, policies, booklets and/or instructions given to and/or received by McKunn regarding the operation of the subject vehicle.

**RESPONSE NO. 36:**

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which are irrelevant and immaterial to the issues in this case. Without waiving said

5

objections, the Defendant responds as follows: The Defendant is searching its records in response to this Request and reserves the right to supplement this Response.

## SUPPLEMENTAL RESPONSE NO. 36:

Objection. The Defendant objects to this Request on the grounds of the general objections. Further, the Defendant objects to this Request in that it seeks documents which are irrelevant and immaterial to the issues in this case. Without waiving said objections, the Defendant responds as follows: Please see Supplemental Response to Request No. 34.

Respectfully submitted,
The Defendant,
Virco, Inc.
By its attorneys,

Clark W. Yudysky, BBO # 538210
TOOMEY & YUDYSKY LLP
99 Summer Street
Boston, MA 02110
(617) 946-0930

Date: __6/1/17__

## CERTIFICATE OF SERVICE

I, Clark W. Yudysky, counsel for the defendants, Virco, Inc., Ryder Truck Rental, Inc., As Trustee of Ryder Truck Rental Lt. and Bobby E. McKunn, do hereby certify that I served a copy of the foregoing **DEFENDANT, VIRCO, INC.'S SUPPLEMENTAL RESPONSE TO PLAINTIFF, ROBERT O'SULLIVAN'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS,** on all parties to this action by mailing a copy of same, postage prepaid, to them or their counsel of record:

Scott D. Peterson, Esquire
HEALY & HEALY, P.C.
15 Walnut Street, Suite 400
Wellesley Hills, MA 02481

Date: _6/1/07_                  Attorney: _____

hmd  82529 1  6/1/07

7

# EXHIBIT NO. 1S

Commonwealth of Kentucky proof of insurance

Company _Omni_  Policy #  _RA 40208_

Effective date _01-23-03_ Expiration date _7-23-03_

Named Insured _Biddad_   _- Anita Vickers_

Year ___ Make ___  I' ' ___

Model ___

Agents Signature _____

Amount Pai _205-96_  'ate Paid _1-23-03_

If this is a r w policy : will be su ject to
underwritir ; an MVR. :lue repor also subject
to an insur: nce score. These rep rts may affect
your premi. n.

Insureds Si .ature _____

_5246SW KY_

_D.... Off_ _1-800-30-04_

# EXHIBIT NO. 2S

*VIRCO MFG CORPORATION*
*April 29, 2003*

*Page    3*
*Invoice   177740*
*District   3012*

## 301898    T/A Diesel Conv. Sleeper


Service

### Reference

| | |
|---|---|
| Reference number: | 000000001 |
| Date: | 04/01/03 |
| Odometer reading: | 585654 |
| Issue location: | ALPHARETTA, GA |

*Amount*

Service:
*rarc 819573 houston, tx- unit stuck     driver  martin peters*
*charges billed from ryder roadside service*
*batch 3072/4111*

| | | |
|---|---|---|
| Labor total | | 269.50 |
| Non-taxable total | | 35.20 |
| Tax (excluded from amounts above) | 19.88 | |

Service and Repair charge (does not include tax)                $304.70

Tax                                                              $19.88

Total vehicle charge                                             $324.58

## 259445    48' Dry Van Trailer(Pool)


Service

### Reference

| | |
|---|---|
| Reference number: | 000262086 |
| Date: | 04/02/03 |
| Odometer reading: | 000011 |
| Issue location: | LITTLE ROCK, AR |

*Amount*

Service:
*lost tag per dak 903-757-3396*

Non-taxable total                                                65.00

Service and Repair charge (does not include tax)                $65.00

Total vehicle charge                                            $65.00

## 301066    53' Dry Van Trailer


Service

### Reference

| | |
|---|---|
| Reference number: | 000031503 |
| Date: | 04/01/03 |
| Odometer reading: | 00001: |
| Issue location: | CONWAY, AR |

*Amount*

Service:

*[handwritten: you went in 5/5/03. Didn't credit ... about this cost. Agreed ... for Kelly Chgd to 43... acct and Close acct.]*

VIRCO MFG CORPORATION
April 29, 2003

301066 cont.    Reference cont.

*invoice for damage repairs per mark stanton (tg)*

Non-taxable total

Service and Repair charge (does not include tax)

243.10

Total vehicle charge                                $243.10

                                                    $243.10

---

## 494622    48' Dry Van Trailer

**Service**

**Reference**

Your P.O. number:         0000759939
Reference number:         000759939
Date:                     04/23/03
Odometer reading:         370536
Issue location:           DALLAS, TX

---

Service:                                            Amount

rcr 759939--waynesville mo        driver hope hrahamss  stuck in mud
charge for co-ordination fee only from ryder roadside service
batch 1594/4036

Non-taxable total

Service and Repair charge (does not include tax)      35.20

Total vehicle charge                                $35.20

                                                    $35.20

---

## Thank you for doing business with Ryder!

*[handwritten: Donna 770-569-(8?)31]*

# EXHIBIT NO. 3S

Policy Number
**1336689261**
Renewal of Number
NEW

**Crum Forster**
A FAIRFAX Company

## COMMON POLICY DECLARATIONS

### UNITED STATES FIRE INSURANCE COMPANY

| Item 1. Named Insured and Mailing Address | Agent Name and Address |
|---|---|
| VIRCO MFG. CORPORATION VIRTUE OF (SEE NAMED INSURED ENDORSEMENT) 2027 HARPERS WAY TORRANCE CA 90501 | AON RISK SVS OF CA P O BOX 54670 LOS ANGELES CA 90054-0670    RETURN TO COMPANY IF CANCELLED |

| Item 2. Policy Period | From: 04-01-2002 | To: 04-01-2003 |
|---|---|---|
| | at 12:01 A.M., Standard Time at your mailing address shown above. | |

Item 3. Business Description: FURNITURE MANUFACTURER

Form of Business: CORPORATION

Item 4. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | | Premium |
|---|---|---|
| Commercial Property Coverage Part | $ | NOT COVERED |
| Commercial General Liability Coverage Part | $ | NOT COVERED |
| Commercial Crime Coverage Part | $ | NOT COVERED |
| Commercial Inland Marine Coverage Part | $ | NOT COVERED |
| Commercial Auto (Business or Truckers) Coverage Part | $ | 335,160.00 |
| Commercial Garage Coverage Part | $ | NOT COVERED |
| | $ | |
| | $ | |
| | $ | |

| TAX OR SURCHARGE | $ | 110.04 | **Total Policy Premium** | $ | 335,270.04 |
|---|---|---|---|---|---|

☐ Direct Bill ☐ See Premium Payment Schedule    Client No. 0158001

Audit Period: Annual (unless otherwise stated):
☐ Monthly ☐ Quarterly ☐ Semi-Annual ☐ Other (Describe)

Item 5. Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

Countersigned:
Date:_____ By:_____

Authorized Representative

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

FM 206.0.6 04 94

Policy Number
**1336689261**



SCHEDULE OF NAMED INSUREDS

UNITED STATES FIRE INSURANCE COMPANY

Named Insured  VIRCO MFG. CORPORATION                Effective Date: 04-01-02
Agent Name    AON RISK SVS OF CA                     12:01 A.M., Standard Time
                                                     Agent No. 44890

FM 20606  (cont.)

THE NAMED INSURED ON FORM FM 20606 IS AMENDED TO READ:

                  VIRCO MFG. CORPORATION
                  VIRTUE OF CALIFORNIA, INC.
                  VIRCO MFG. CORP. EMPLOYEES
                  RETIREMENT PLAN
                  PRIDE-TRIMBLE CORPORATION
                  VIRCO MGMT.

**Policy Number**
**1336689261**



### BUSINESS AUTO COVERAGE PART DECLARATIONS
### UNITED STATES FIRE INSURANCE COMPANY

**ITEM ONE**

Named Insured  VIRCO MFG. CORPORATION

Agent Name     AON RISK SVS OF CA

Effective Date  04-01-02
12:01 A.M., Standard Time
Agent No. 44890

---

## ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 1 | $  1,000,000 | $  192,924.00 |
| PERSONAL INJURY (P.I.P.) † † | 5 | SEPARATELY STATED IN EACH P.I.P. END. MINUS $ SEE END.  Deductible | $  INCL |
| ADDED P.I.P. (or equivalent added No-fault cov.) | | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT | $ |
| PROPERTY PROTECTION INS. (P.P.I.) (Michigan only) | r | SEPARATELY STATED IN THE P.P.I. ENDORSEMENT MINUS $  Deductible FOR EACH ACCIDENT | $  INCL |
| AUTO MEDICAL PAYMENTS | 2 | $  5,000 | $  54,500.00 |
| UNINSURED MOTORISTS (UM) | 5 | $  SEE SCHEDULE | $  58,600.00 |
| UNDERINSURED MOTORISTS (when not included in UM Cov.) * | 2 | $  SEE SCHEDULE | $  29,250.00 |
| P H Y S I C A L  D A M A G E  COMPREHENSIVE COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS MINUS | $  Ded. FOR EACH COVERED AUTO, BUT NO DED. APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. † † † | $ |
| SPECIFIED CAUSES OF LOSS COVERAGE | | | $25 Deductible FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM † † † | $ |
| COLLISION COVERAGE | | | $  AUTO † † †  Deductible FOR EACH COVERED | $ |
| TOWING AND LABOR (Not Available in California) | | $50 for each disablement of a private passenger auto | $ |

FORMS AND ENDORSEMENTS APPLYING TO THIS COVERAGE PART AND MADE A PART OF THIS POLICY AT TIME OF ISSUE † :

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

| | |
|---|---|
| PREMIUM FOR ENDORSEMENTS | $ |
| ESTIMATED TOTAL PREMIUM | $  335,270.00 |

---

**ITEM THREE - SCHEDULE OF COVERED AUTOS YOU OWN    SEE SCHEDULE FM 114.0.1116(B) ATTACHED**

† Forms and Endorsements applicable to this Coverage Part omitted if shown elsewhere in the policy.
† † (or equivalent No fault cov.) † † † See ITEM FOUR for hired or borrowed "autos"
* UIM is now SUM in the State of New York. See FM 204.0.6 New York Declarations Supplement.

Countersigned:

Date: _____   By:_____

Authorized Representative

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PARTS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

FM 114.0.1116 04 94

# EXHIBIT NO. 4S

3 vehicle accident

**VIRCO MFG. CORPORATION**
**TRAFFIC DEPARTMENT - CONWAY DIVISION**
**FIRST REPORT OF ACCIDENT**

INCIDENT# 03-09

Called into AON 3/24
@ 2:45.
Orlando Office
407-563-6200
Ref 325 667

REPORTED BY: BOB MCKUIN      DATE    3/17/03    TIME    8:20 AM

BY:    X    PHONE _____ IN PERSON _____ OTHER _____

DRIVERS NAME  BOB MCKUIN      WHERE IS DRIVER NOW  OUT ON THE ROAD

ACCIDENT DATE:    3/15/03      TIME:    5:00 PM

TYPE OF ACCIDENT:    X    ACCIDENT _____ INCIDENT _____ EQUIPMENT DAMAGE _____

LOCATION:    I-40 19 MILE MARKER        LAKELAND (Shelby County) TN
                STREET OR HWY.              CITY              STATE

BRIEF DESCRIPTION OF ACCIDENT: _____

LADY FELL A SLEEP AND HIT TRUCK ON RIGHT HAND SIDE. BOB SAID THE CAR HIT HIM ABOUT

3 TIMES. IT CAUSED BOB TO HIT A BOB TRUCK AND KNOCK IT INTO THE DITCH.

CAR WAS TOWED AWAY AND BOB TRUCK PULLED OUT OF DITCH.

901-543-6059

POLICE INFO. WHICH DEPT:    TN POLICE DEPARTMENT    REPORT#: _____    OFFICER NAME: OFFICER M. BOLTON

LOG#: _____    CITATIONS: NONE GIVEN    TRACTOR # 020366    TRAILER#    301086

DAMAGES:    front of tracker - Down side of trailer (right)

---

**OTHER PARTY INFORMATION**

NAME OF DRIVER OR PROPERTY OWNER  ① RICHARD AND ANITA VINCENT    Insurance Dallas office 1-80-331-5344    PHONE _____    CLAIM # 46AEDI65

ADDRESS:    ⑤ BOSTON TRUCK COMPANY 617-773-5455                adjuster Bill Edwards ext-3347

**INSURANCE INFORMATION**

COMPANY: _____    POLICY# _____

ADDRESS: _____    PHONE _____

INJURIES: _____

VEHICLES TOWED    YES (Lindsey's)    DOT REPORTABLE    YES    REPORT TAKEN BY:    SUSIE

REMARKS:    3-18 Acdt not on-takes 7-10 days first to get in file
3-24
3-25 Left mess for Bill Edward (adjuster for Vincent) to call back
3-26 Left message for Bill Edward to call back. Mr. Edwards called
back. I faxed his est. on truck. 972-980-3350.
4/16 SPOKE WITH BILL. No accident report yet. faxed other
adjustments for vehicle and trailer.

4/7/03  Left message - 12:50 *illegible* pay and
        when check would be *illegible*

4/10/03  Left message - to *illegible* ck has been *illegible*
         out.

4/29/03  Called to see if claim has been made.
         Karen was going to research *illegible* out on sick
         leave past 2 week. Karen called back
         Check will be mailed out today.

4/4/A 3216525

973-980-3350

fax

# EXHIBIT NO. 5S

| Pro # | Tractor # | Trailer # | Driver |
|---|---|---|---|
| 2582 | 0864 | 30101de | McKuin   6'11 |

| Date | Outbound Dest.City | Outbound Dest. State | Total O/B Stops |
|---|---|---|---|
| 3/21/03 | Montgomeryville | PA | 0 |

| Empty Miles | For Hire Miles | O/B Loaded Miles | MRA Miles | Other Miles | Conway Raw Miles | LA Raw Miles | W/H Mile |
|---|---|---|---|---|---|---|---|
| 60 | | 1198 | | | 1211 | | |

| State | Miles | Gallons | Fuel Cost | State | Miles | Gallons | Fuel Cost |
|---|---|---|---|---|---|---|---|
| AR | 324 | 178 | 156.10 222.33 | | | | |
| TN | 1020 | 64 | 67.30 104.68 | | | | |
| VA | 655 | | | | | | |
| WV | 50 | | | | | | |
| MD | 30 | 142 | 149.70 274.22 | | | | |
| PA | 390 | | | | | | |

| Fuel – Total Gallons | Fuel – Total Fuel Cost | Total Expenses | For Hire Savings | Raw Savings | Other Savings |
|---|---|---|---|---|---|
| 384 | 403.20 | | | 1447 1737.12 | |

| Common Carrier Rate | Common Carrier Stop Off | Common Carrier Accessorial |
|---|---|---|
| $ 2306.85 | | |

**Miles Allocated:**

| | | | | | |
|---|---|---|---|---|---|
| 35100 | 20305 | 20311 | 43700-3014200 | 44200-3014210 | 44400-3014240 |
| 59998 | 20306 | 20312 | 44200-3014990 | 45000-3014210 | 44900-3015355 |
| 20301 | 20307 | For Hire | 44300-3014990 | 44200-3014220 | 44900-5017060 |
| 20302 | 20308 | 2000-20312 | 44440-3014990  1258 | 44300-3014220 | 2000-44301 |
| 20303 | 20309 | Misc. | 44500-3014990 | 44200-3014250 | |
| 20304  1241 | 20310 | 43215-3014200 | 2000-Misc. | 44400-3014250 | |

| Drivers Wages: | | Expense Breakdown: |
|---|---|---|
| Total Miles: 2469 | | Truck Main: |
| Local Hours: | Install with Help: | Truck Tires: |
| Tailgate Hours: | Install no Help: | Misc: 46.60 Tolls |
| Inside With Help: | Fueling Hours: | Permits: |
| Inside No Help: | Holidays (By Days): | Trlr Main: |
| Total Salary: 1078.95 | | Trlr Tires: |

Conway, AR, Faulkner to 18936 Montgomeryville, PA, Montgomery: No Stops

V6007
301066
McKuin

**Summary:**
Miles: 1183.2 Time: 18:45 Cost: 50.00

Shortest Route, Borders Open, Ferry off, Heavy

| Stop | | Leg Miles | Total Miles | Leg Cost | Total Cost | Leg Hours | Total Hours |
|------|--|-----------|-------------|----------|------------|-----------|-------------|
| 72032 | Conway, AR, Faulkner | 0.0 | 0.0 | 0.00 | 0.00 | 0:00 | 0:00 |
| 18936 | Montgomeryville, PA, Montg | 1183.2 | 1183.2 | 0.00 | 0.00 | 18:45 | 18:45 |

Levittown PA
Conway Ar

Rem
50304
1737.2

27.1
1183.8
2394
X 1.25
2992.50

1255.38

+ 1051.47

River City
1.95 x 1183

$ 2306.85



TRIP REPORT

19-7126

4251

TRUCK NO. _____   FROM 3-15-03   LEAD DRIVER McKui
TRAILER (S) _____   TO 3-19-03   CO-DRIVER _____
LOG NO. (S) _____

181190

TEMPORARY
CASH ADVANCES $
FROM                                          TO

Conshy ark                    Montgomeryville Pa
_____              Pensitown Pa
_____              Conshy ark

| State | Miles | Date | Fuel Gal. | Fuel Exp. | Maint. | Outside Labor | Metal | Permit | Toll | Misc. | Total |
|-------|-------|------|-----------|-----------|--------|---------------|-------|--------|------|-------|-------|
| Ark | 324 | | 178 | | | | | | | | |
| Tn | 1020 | 3-16 | 64 | | | | | | | | |
| Va | 655 | | | | | | | | | | |
| Wva | 50 | 8000 | 8000 | | | | | | | | |
| Md | 30 | 3-17 | 142 | | 000 | | 0·00 = | | | | |
| Pa | 390 | | | | 000 | | | | ✓ | | 46.60 |
| | | | | | | | 0·05 = | | | | |
| | | | | | 301420 | 50·05 = | | | | | |
| | | | | | 43200 | 2·20 = | | | | | |
| | | | | | TRK | 12·35 = | | | | | |
| TOTALS | 2469 | | | | 005 | 8160 | 06·50 = | | | | 46.60 |
| | | | | | | McKuin | | | | | |

SPEEDOMETER READING                    APP_____   HWAY
BEGIN 247550                                  L USED
END   256019                                  RAGE
                                              MILES/GAL

Fill out report completely. Put all invoices and cash receipts in envelope.
Also include any other information you might consider necessary, such as
deliveries to commercial warehouses and raw materials pickup.

**Ryder**                    Trip Record

Driver - Please do not write in shaded areas.

State laws require the operator to keep a record, by state, of miles driven and fuel purchased. See instructions on back of red copy.

| Truck or Tractor (Vehicle) Number |
|---|
| 9 2 0 8 6 6 |

| Month | Year | Batch | Number | | Admin. Loc. Code | Lease Number |
|---|---|---|---|---|---|---|

| Lessee Name | | | | Estimated Mileage Code |
|---|---|---|---|---|

Lessee Name: *Virco*
Driver Name(s): *McKim*

Start: City, State: *Conway, Ark*
Destination: Main Drop: City, State: *Leuiton Pa*
Number 1 Trailer Number (Do-small): *301466*
Number 2 Trailer Number (Optional):

| Line | Code | Date (Mo./Day/Yr.) Start | State Name | Odometer Reading Beginning | TRK | Routes Traveled | Fuel Gallons | List first and last pickup/ delivery cities for each state. If none, leave blank. | Line |
|---|---|---|---|---|---|---|---|---|---|
| | | 3-15-03 | AHK | 247550 | | 40 | | | |
| | | 3-16-03 | TN | 247710 | | 40 81 | 64 | | |
| | | 3-18-03 | V2 | 248225 | | 81 | | | |
| | | 3-16-03 | W. Va | 248550 | | 81 | | | |
| | | 3-16-03 | M d | 248525 | | 81 | | | |
| | | 3-16-03 | Pd | 248590 | | 81-26-309 | | | |
| | | 3-17-03 | | 248748 | | | | Montgomeryvill | |
| | | 3-17-03 | | 248808 | | | | Leuiton | |
| | | 3-17-03 | M d | 248980 | | 81 | 142 | | |
| | | 3-17-03 | W.Va | 248995 | | 81 | | | |
| | | 3-17-03 | V2 | 249020 | | 81 | | | |
| | | 3-18-03 | TN | 249350 | | 81-40 | | | 12 |
| | | 3-18-03 | AHK | 249855 | | 40 | | | 13 |
| 14 | | | | | | | | | 14 |
| 15 | | | | | | | | | 15 |
| 16 | | | | | | | | | 16 |
| 17 | | | | | | | | | 17 |
| 18 | | | | | | | | 2769 | 18 |
| 19 | | | | | | | | | 19 |
| 20 | L | Ending Date 3-19-03 | Ending State AHK | Ending Odometer 250019 | | 40 | 178 | Conway | 20 |

37-09 (4/2000)          ORIGINAL - FUEL TAX DEPARTMENT          Retention Period: 5 Years

DRIVER Bob McRrien     YEAR 2003

| WEEK ENDING DATE | MILES | GALLONS | UNIT NUMBER | Y.T.D. MILES | Y.T.D. GALLONS | WEEK ENDING DATE | MILES | GALLONS | UNIT NUMBER | Y.T.D. MILES | Y.T.D. GALLONS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/7/03 | 1813 | 3.10 | 0864 | | | | | | | | |
| 2/14/03 | 2464 | 434 | 0864 | | | | | | | | |
| 2/21/03 | 2474 | 487 | 0864 | | | | | | | | |
| 2/25/03 | 2444 | 442 | 0864 | | | | | | | | |
| Tot Year | 9200 | 1613 | 5.44 | | | | | | | | |
| 3/7/03 | 1071 | 159 | 0864 | | | | | | | | |
| 3/7/03 | 7703 | 183 | 0864 | | | | | | | | |
| 3/14/03 | 2446 | 436 | 0864 | | | | | | | | |
| 3/21/03 | 2442 | 384 | 0864 | | | | | | | | |
| 3/28/03 | 2458 | 414 | 0864 | 18552 | 3189 | | | | | | |
| Apr 03 | 9152 | 1516 | 6.03 | | | | | | | | |
| 4/4/03 | 1931 | 321 | 0864 | | | | | | | | |
| 4/11/03 | 3903 | 663 | 0864 | | | | | | | | |
| 4/13/03 | 1879 | 321 | 0864 | | | | | | | | |
| Feb 3 | 7773 | 1285 | 6.04 | 24685 | 4474 | | | | | | |
| 5/2/03 | 3179 | 303 | 0864 | | | | | | | | |
| 5/5/03 | 713 | 109 | 0864 | | | | | | | | |
| 5/9/03 | 2570 | 384 | 0864 | | | | | | | | |
| 5/16/03 | 2639 | 373 | 0864 | | | | | | | | |
| 5/23/03 | 2407 | 401 | 0864 | | | | | | | | |
| 5/30/03 | 1799 | 2444 | 0864 | | | | | | | | |
| Tot | 18347 | 1823 | 6.78 | 38493 | 6397 | | | | | | |

# EXHIBIT NO. 6S

iiX DRIVER RECORD SERVICE REPORT FOR ARKANSAS

Report Date: 06/13/02                  00-812881-181386592-000        Page  1
======================================================================

| Licensee Name/Address | Report Prepared For: |
| --- | --- |
| MCKUIN, BOBBY  EARL<br>>>PERSONAL INFORMATION<br>>>SUPPLIED FROM REQUEST | VIRCO INC<br>PO BOX 5000<br>CONWAY          AR72033 |
| Comment: | Account #: 812881/000<br>Report Id: 181386592    00000000<br>User Batch: 00      Requestor: IIX<br>Request Id: 181386592 |

======================================================================

| License Number | DOB | Driver Description | SSN |
| --- | --- | --- | --- |
| 500367559 | 04/25/37  M | | |

| Issued | Expired | License Class | Restrictions | Status |
| --- | --- | --- | --- | --- |
| 04/18/01 | 04/25/05 | CDL-A | B | VALID |

======================================================================

*** MISCELLANEOUS AND STATE SPECIFIC INFORMATION ***

Type Description
----------------------------------------------------------------------
FCRA This report has been generated for employment purposes only and it may not
FCRA be used for any other purpose.  The use and dissemination of the report and
FCRA the information contained therein must be in accordance with your agreement
FCRA with iiX and in compliance with the Fair Credit Reporting Act, the Driver's
FCRA Privacy Protection Act, and any applicable state statute(s).
**** PRE-EMPLOYMENT REPORT
MISC REQUESTED AS: BOBBY        EARL      MCKUIN
MISC REQUESTED AS: DOB: 04251937  LICENSE : 500387559
ENDR CDL: H - HAZARDOUS MATERIALS
ENDR CDL: T - DOUBLE/TRIPLE TRAILERS
MISC PROCESS-DATE: 06/13/02
REST B - CORRECTIVE LENSES
LICN CDL CLASS: A - CDL COMBO VEHICLE > 26K, TOW > 10K
MISC PLEASE NOTE: ADL SUBMITTED WAS                    500387559
LICN STATUS: VALID
LICN CDL STATUS: VALID
NOTE Request match analysis: dl=Y, ln=Y, fn=Y, dob=Y

*** DRIVING RECORD HISTORY ***

| Type | Viol/Sus | Conv/Rei | Description | Code | Pts |
| --- | --- | --- | --- | --- | --- |
| VIOL | 11/06/00 | 11/20/00 | VT XS WEIGHT<br>LOC: MARYLAND      COURT:<br>INDEX#: AD83157MD<br>COM VEH: Y | | |

*** End Of Report ***

## VIRCO MFG. CORPORATION - CONWAY DIVISION
## DRIVER ANNUAL REVIEW

DRIVER NAME  Bobby McKwin    SOCIAL SECURITY # 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

DATE OF REVIEW  6/14/02    TERMINAL  Conway AR

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

DURING THE PRECEDING 12 MONTHS, THIS DRIVER HAS HAD THE FOLLOWING ACCIDENTS:

| DATE | LOCATION | ACCIDENT DESCRIPTION | $ LOSS | CHARGEABLE |
|------|----------|----------------------|--------|------------|
|      |          | None                 |        |            |

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

DURING THE PRECEDING 12 MONTHS, RECORD INDICATE THIS DRIVER HAS BEEN CONVICTED OF
OR FORFEITED BOND FOR THE FOLLOWING MOVING VIOLATIONS:

| DATE | LOCATION | VIOLATION | TYPE VEHICLE |
|------|----------|-----------|--------------|
|      |          | None      |              |

PHYSICAL DATE  6/14/02    RESULTS  good for 2year

DRUG SCREEN DATE  n/A    RESULTS  n/A

MVR DATE  6/13/02    RESULTS  11/20/00  Weight

27-06 Excel/Forms
5/21/98



VIRCO INC.
HIGHWAY 65, SOUTH, P.C. BOX 5000
CONWAY, ARKANSAS 72033
(501) 329-2901 FAX: (501) 450-1140

According to the Federal Motor Carrier Safety Regulations 395.2 (8)(9), as your employer, Virco Inc. is required to ensure that all time spent in the capacity of employment from an outside source other than Virco, Inc. is logged on your daily log. This will include any service that you perform for any type of compensation. This regulation requires that any such time be logged on line 4, on duty, not driving. Please refer to this section if you have any questions regarding the following statements.

I, _Bob McKi_ state, at this time, that I am not in the employment of anyone other than Virco, Inc. I agree to advise Virco, Inc. of any changes to this statement.

I, _Bob McKi_ state, at this time, I do perform compensated work for an outside source and agree to log this time on line 4 of my driver's daily log in order to stay in compliance with this regulation.

_Bob McKim_
Driver's Signature

_8-3-02_
Date

DISTRIBUTION AND SERVICE CENTERS
CONWAY • LOS ANGELES • PHILADELPHIA

EQUAL OPPORTUNITY EMPLOYER
♻ PRINTED ON RECYCLED PAPER

# EXHIBIT NO. 7S

# Virco Employee Handbook

# *Table of Contents*

Welcome to Virco . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Acknowledgment Card and Important Information (Virco Copy) . . . . . . . . . . 2
Acknowledgment Card and Important Information (Employee Copy) . . . . . . . 3

# *Employment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Categories of Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
At-will Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Temporary Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Regular Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Full-time Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Part-time Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Non-exempt ("Hourly") Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Exempt ("Salaried") Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Hiring Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Immigration Law Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Attendance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Reporting an Absence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Attendance Bonus: Non-exempt Production Employees . . . . . . . . . . . . . . 7
Hours of Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Paid Rest Breaks: Non-exempt Employees . . . . . . . . . . . . . . . . . . . . . 8
Meal Break: Non-exempt Employees . . . . . . . . . . . . . . . . . . . . . . . . . 8
Reporting Hours Worked: Non-exempt Employees . . . . . . . . . . . . . . . . . 9
Reporting Pay And Callback Pay: Non-exempt Employees . . . . . . . . . . . . 9
Compensation and Pay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Attendance Bonus: Non-exempt Production Employees . . . . . . . . . . . . . . 10
Individual Incentive Bonus Plan: Non-exempt Production Employees . . . . . 10
Group Incentive Bonus Plan: Non-exempt Production Employees . . . . . . . . 11
Shift Differential: Non-exempt Employees . . . . . . . . . . . . . . . . . . . . . . 11
Profit-sharing Bonus Plan: Exempt Employees . . . . . . . . . . . . . . . . . . . 11
Other Incentive/Discretionary Bonuses . . . . . . . . . . . . . . . . . . . . . . . 12
Pay Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Payday . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Paycheck Distribution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Payroll Deductions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Overtime: Non-exempt Employees . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Premium Overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Approval to Work Overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Employment of Relatives ........................................ 13
Anniversary Dates ............................................. 14
Performance Reviews ........................................... 14
Transfers and Promotions ....................................... 14
Resignations and Terminations .................................. 15
Payment of Final Wages - California Employees .................. 15
Exit Interviews ................................................ 15
Layoff ........................................................ 15

# Communication & Workplace Standards ................ 16

Labor Unions .................................................. 17
Communication and Problem Solving ............................. 17
Review Procedure .............................................. 17
Suggestions by Employees ...................................... 18
Equal Employment Opportunity ................................. 18
Harassment and Discrimination ................................. 18
Individuals Covered by this Policy .............................. 19
Definition of Sexual Harassment ................................ 19
Discriminatory Harassment ..................................... 20
Retaliation .................................................... 20
Reporting Possible Harassment, Discrimination and Retaliation ... 20
Investigating the Complaint .................................... 21
Resolving the Complaint ....................................... 21
False Complaints .............................................. 22
Consequences ................................................. 22
Legal Proceedings ............................................. 22
Conclusion ................................................... 22
Drugs and Alcohol ............................................ 23
Prescriptions ................................................. 23
Assistance and Consequences of Violation ...................... 23
Testing ...................................................... 24
Prohibited Materials .......................................... 24
Searches For Prohibited Materials and Company Property ......... 25
Telephones ................................................... 25
Voice Mail Usage ............................................. 25
Computer and E-mail Usage .................................... 26
Internet Usage ................................................ 27
Eavesdropping/intercepting Communications .................... 28

Solicitation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Personal Mail . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Media Communications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Company Bulletin Boards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Ethical Standards in Business Relationships . . . . . . . . . . . . . . . . . . . . 29
Off-duty Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
Moonlighting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
Dress Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
Discipline and General Conduct of Employees . . . . . . . . . . . . . . . . . . 31

# *Benefits*

*Benefits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Holidays . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
Holiday Pay: Non-exempt Employees . . . . . . . . . . . . . . . . . . . . . . . . . 36
Vacation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
Vacation Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
Vacation Pay Advances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Vacation Payoff on Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Holiday During Vacation Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Sick Leave During Vacation: Non-exempt Office Employees . . . . . . . . . 37
Vacation in Relation to Leave of Absence . . . . . . . . . . . . . . . . . . . . . 37
Vacation in Relation to Overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Group Insurance Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
Workers' Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
Insurance Continuation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Life Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
California State Disability Insurance – California Employees . . . . . . . . . 39
Long Term Disability Insurance - Exempt Employees . . . . . . . . . . . . . 40
Unemployment Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
Pension Plan and 401(k) Retirement Plan . . . . . . . . . . . . . . . . . . . . . 40
Social Security (FICA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
Medicare (MEDI) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
Section 125 Deductions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
Employee Assistance Plan ("EAP") . . . . . . . . . . . . . . . . . . . . . . . . . . 41
Tuition Reimbursement Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

# *Leaves*

*Leaves* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
Sick Leave: Non-exempt Office Employees . . . . . . . . . . . . . . . . . . . . . 44
Sick Leave Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
Sick Leave Upon Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Coordinating Sick Leave and Disability . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
Sick Leave in Relation to Leave of Absence . . . . . . . . . . . . . . . . . . . . . . . . 44
Temporary or Part-time Employees Becoming Regular Employees . . . . . . . . 45
Long-term Disability/sick Leave: Exempt Employees . . . . . . . . . . . . . . . . . 45
Bereavement Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
Jury or Witness Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
Family and Medical Leave of Absence (FMLA) . . . . . . . . . . . . . . . . . . . . . 46
Pregnancy and Childbirth-related Disability Leave of Absence . . . . . . . . . . 47
Returning to Work After an Illness or Injury . . . . . . . . . . . . . . . . . . . . . . . . 49
Military Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
Leave of Absence Without Pay - Personal, Non-medical . . . . . . . . . . . . . . . 49

# *Workplace Safety And Security* . . . . . . . . . . . . 51

Safety Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
Safety Equipment and Protective Clothing . . . . . . . . . . . . . . . . . . . . . . . . . 53
Injuries and First Aid Treatment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
Emergency Evacuation Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
Smoking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
Workplace Security Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
Employee and Visitor Identification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

# *Other Important Information* . . . . . . . . . . . . . 56

Driver's License . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
Expense Reimbursement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
Garnishments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
Physical Examinations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
Office Etiquette . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
Personnel Files . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
References . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
Policy Changes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

**Welcome to Virco**

On behalf of all of us here at Virco, I want to welcome you to our corporate family. Virco was incorporated in 1950 in Los Angeles, California. Our first customer was the Los Angeles Unified School District, which bought classroom chairs and student desks from us. Today we have grown into the nation's largest manufacturer of classroom and convention furniture. We also make church, hospitality and office furniture. We have over 2000 employees, most of whom work at one of our main facilities in either Torrance, California or Conway, Arkansas. In the year 2000 we will celebrate our 50th Anniversary.

We want Virco to be a good place to work. We believe we have an obligation to our customers, our shareholders, our employees and the communities where we do business. We believe that everybody has a voice and deserves to be heard, that everybody should be treated fairly and with dignity, and that all of us must exhibit leadership in practicing these values.

This handbook has recently been updated and describes many new programs and benefits. These programs were developed to help support our values of voice, dignity, fairness and leadership. Of special interest are the new Tuition Reimbursement Program (page 41); a more liberal policy on holiday pay, which permits the combination of regular vacation time and holidays without jeopardizing holiday pay (page 37); and the establishment of an Employee Assistance Program (page 41).

In conjunction with these new benefits, we have also expanded our company training programs. Some courses are mandatory, such as safety skills for factory and distribution employees and management skills for supervisors. Other courses are voluntary, such as English as a Second Language, Spanish as a Second Language, Basic Math Skills, and Basic Computer Skills. We encourage everybody to take advantage of these free courses, and we welcome suggestions for new ones.

Sincerely,

Robert A. Virtue
President, CEO and
Chairman of the Board

1

Virco Employee Handbook

## PLEASE SIGN THIS PAGE AND RETURN IT TO HUMAN RESOURCES.

## ACKNOWLEDGMENT CARD AND IMPORTANT INFORMATION

This is to acknowledge that I have received my copy of the Virco Employee Handbook. I understand that it contains important information on Virco's general personnel policies and that it is not intended to create a contract of employment.

I acknowledge that I am expected to read, understand and follow company policies. I will familiarize myself with the information in this Handbook. If I have questions about the information in this Handbook, I will bring my questions to my supervisor or the Human Resources Department. I understand that violations of the policies in this Handbook may result in discipline.

I understand that Virco may change, rescind, or add to any policies, benefits or practices described in this Handbook other than the employment at-will policy, from time to time in its sole managerial discretion, with or without prior notice. I understand that Virco will attempt to notify employees of material changes.

I understand and agree that my employment is at-will. Employment at-will means that I may terminate my employment at any time, with or without notice and with or without cause. Likewise, Virco may terminate my employment at any time, with or without notice and with or without cause. It also means that the terms and conditions of my employment may be changed with or without advance notice and with or without cause, including, but not limited to, promotion, demotion, transfer, compensation, benefits, duties and location of work, etc. I understand that no conduct, oral representation, policy or practice can change my at-will employment relationship. I understand that only the President of Virco is authorized to amend or change my status as an at-will employee. Any such change must be in writing and signed by both me and Virco's President.

| Printed Name | |
|---|---|
| Bob McKwin | |
| Signature | Today's Date |
| Bob McKwin | 8·10·99 |

*Thank You.*

## DRIVER'S LICENSE

If your job requires you to drive on Virco business and your driver's license is revoked, suspended or restricted for any reason, you must report the change in driving privileges to your supervisor immediately. If you voluntarily report the suspension or revocation of your driver's license, we will attempt to place you in a job that does not involve driving. The work may be in a classification and at a pay rate that is different from your current job. If we are unable to place you in a job that does not require driving, you may either be placed on a personal leave of absence without pay or terminated.

If you have a company car, but your position does not require you to drive on company business, you still must report any change in your driving privileges. You are not allowed to drive a company car if your license has been suspended or revoked.

If you drive a company car or drive any vehicle on Virco business without a valid driver's license, you may be subject to discipline up to and including termination.

## EXPENSE REIMBURSEMENT

Occasionally, it may be necessary for you to spend some of your own money for a Virco expense. Unless you are an employee that has regular customer contact, we expect you to have such an expense approved in advance. When you incur an approved expense, you must submit a written request for reimbursement on a Virco expense report to your supervisor.

If necessary, you may arrange for a cash advance for Virco-related expenses. Your supervisor can help you make arrangements for a necessary cash advance. All expenses of more than $5.00 should be accompanied by an original receipt.

## GARNISHMENTS

Virco is required by law to recognize garnishment orders. It is our hope, that you will manage your personal affairs so that we don't have to become involved by being forced to garnish your wages.

## PHYSICAL EXAMINATIONS

You may be required to take a physical examination to determine your fitness for work. The examination may include a urinalysis for the detection of controlled substances and/or alcohol. Virco may also require employees to submit to a physical examination as called for by law (for example, under Department of Transportation regulations, or when an employee returns from a medical leave of absence). Any examination required by Virco will be paid for by Virco.

AS A DRIVER OF <u>VIRCO MANUFACTURING, INC.</u>, I WILL READ THE DRIVER'S HANDBOOK.

_____
SIGNATURE

_____
DATE

IF YOU HAVE ANY QUESTIONS CONCERNING THESE PROCEDURES, PLEASE CONTACT ME.

_____
KELLEY LASLEY
TRANSPORTATION MANAGER

## Introduction

The purpose of this handbook is to give you a brief overview of our Transportation department and to answer some commonly asked questions. Special attention has been given to try to cover any situation, however, from time to time situations arise that are not covered in this manual and therefore will be handled in the most efficient way possible.

You are a vital part of the success of this company by the professional way in which you do your job. As a driver for Virco Mfg. Corporation, you are a representative of the company to the public at all times and, in some cases, seen more often by the customer than any other Virco employee. It is therefore, very important to the company that you are a professional at all times – in appearance, in your dealings with the customer, and in your paperwork and reporting procedures.

You have the dual responsibility of pleasing the customer while, at the same time, looking after the interests of the company. In order to do this, it is necessary that you know the dispatching, reporting, and general policies and procedures of the company. That is the purpose of this manual. Keep it with you for future reference.

Ray Michael
Distribution Manager

NOTE: The $150.00 permanent advance is for use only for Virco over the road expenses. Maintaining this advance is your responsibility at all times. Once a month, or after you have submitted $50.00 in cash tickets, whichever comes first, you will be reimbursed. This money is not for personal use. You are expected to have the difference in your outstanding cash receipts and the $150.00 on your person at all times.

The fuel cards and calling cards are strictly for Virco business use only. Personal use is grounds for disciplinary action by the company.

Please note that the items issued by the Virco Transportation Office, such as credit cards and cellular phone are to stay with the driver at all times. Other items issued to you for the tractor, such as, chains, binders and hand truck, are to stay with the tractor you are assigned to. In the event of a new tractor assignment, it is your responsibility to move all of the items that were issued to you for your tractor.

I have received the attached list of items and accept responsibility for their proper use. In the event my employment is terminated, I agree to return all items to Virco. In the event of their loss, I will pay replacement cost to Virco.


_____

Driver's Signature


_____

Date

# Virco Manufacturing, Inc. - Conway Division

## Items Issued To New Drivers

| Item | Number If Applicable | Driver's Signature | Date Issued | Issued By |
|---|---|---|---|---|
| 1.  $150.00 Permanent Advance | Check # | | | |
| 2.  AT&T Calling Card | Card # | | | |
| 3.  EFS Fuel Card | Card # | | | |
| 4.  Truck Keys | Unit # | | | |
| 5.  Four Chains | N/A | | | |
| 6.  Four Binders | N/A | | | |
| 7.  Hand Truck | I.D. # | | | |
| 8.  Tractor Permit Book | Unit # | | | |
| 9.  Driver's Off-Duty Auth. Form | N/A | | | |
| 10. | | | | |
| 11. | | | | |

Driver Certification:

By my signature below, I acknowledge receipt of these items. I understand that it is my responsibility to maintain possession of these items and further agree to return all items to Virco at the time of my termination. In the case of lost items, I agree to reimburse Virco for their cost.

Driver Signature:_____

# Table of Contents

## Operations

Fleet Types.................................................................................1
Outbound Dispatch Procedures.............................................................2
Drivers on Vacation During Dispatch........................................................3
Drivers With For-Hire Loads to Deliver on Monday of the Next Week...............3
Loads Falling Through After Thursday Dispatch............................................3
Drivers Unable to Fulfill Their Commitment to Dispatched Loads....................3
Customer Accommodations...................................................................3
Special Dispatch Request......................................................................3
Inbound Dispatch Procedures................................................................4
Raw Materials...................................................................................4
Return Furniture................................................................................4
For-Hire Loads..................................................................................4
Dispatch Phone Numbers......................................................................4
Paperwork Procedures.........................................................................6
Outbound Paperwork..........................................................................6
Inbound Paperwork............................................................................7
Sample Pages of Paper Work............................................................8-16
Trip Report Envelopes........................................................................17
Assignment of Equipment.....................................................................17
Daily Call In Procedures......................................................................17
Ryder Requirements..........................................................................17
Fueling..........................................................................................17
Maintenance/Breakdown......................................................................18
Accident Reporting............................................................................18
Current Insurance Information................................................................19
Temporary Labor..............................................................................20

## Driver's Pay Rates & Policies

Current Mileage Rate..........................................................................21
Hourly Rates...................................................................................21
Performance Premiums.........................................................................22
Layover Pay....................................................................................22
Waiting to Load/Unload.......................................................................22
Waiting for Dispatch...........................................................................23
Inclement Weather Policy......................................................................23

# Driver's Log

Driver's Daily Log.................................................................24
On-Duty Time.....................................................................24
Driving Time......................................................................25
Sleeper Berth.....................................................................25
Off Duty...........................................................................25
Log Violations....................................................................25
Sample of Log.....................................................................27
Drivers Speed.....................................................................28
Use of Radar Equipment..........................................................28
Hours of Service..................................................................28

# D.O.T. Driver Qualifications

Commercial Driver's License......................................................29
Annual Driving Review............................................................29
Notice of Moving Traffic Violation................................................29
Driver Periodic Physical Examination..............................................29
Drug/Alcohol Policy...............................................................29

# Miscellaneous

Equipment Inspection Reports......................................................30
Sample of Equipment Inspection Report.............................................31
D.O.T. Inspections................................................................32
Ryder Trip Reports................................................................32
Lodging Reimbursement...........................................................32
Miscellaneous Reimbursements....................................................32
Sample of Ryder Trip Report.......................................................33
Use of Company Vehicle............................................................34
Passengers........................................................................34
Vacations/Time Off................................................................34
Telephone Log.....................................................................34
Complaints........................................................................35
Sample of Authorization Letter....................................................36

# Discipline Policies

Warning Notice Policy..............................................................37
Termination Policy.................................................................38

# Driver/Company Memos

# OPERATIONS

## FLEET TYPES

Permanently assigned – These are drivers with tractor assignments, who are not routinely required to switch tractors, and who are expected to average a minimum of 2400 miles per week. A permanently assigned driver routinely failing to meet expected mileage averages will be asked to improve or consider moving to the Pool. Those drivers who continue to log less than the minimum 2400 miles per week may be transferred to the Pool, disciplined, or discharged at Virco's discretion.

Pool assigned – These are drivers who do not have a regularly assigned tractor. These drivers are assigned a tractor on a per trip basis. These drivers are utilized to fill in for drivers on leave and as otherwise needed by the company. These drivers are expected to average a minimum of 1800 miles per week. Those drivers who continue to log less than 1800 miles per week may be disciplined or discharged at Virco's discretion.

1

## OUTBOUND DISPATCH PROCEDURES

Virco dispatches weekly by seniority on Thursday and on Monday at pre-assigned times and without consideration of fleet types. Each driver will be assigned a time based on his/her seniority within this department. A copy of the dispatch times is available in the Transportation office and available for review at reasonable times upon your request. These dispatch times may be revised from time to time based on drivers leaving the employment of Virco or for other business reasons.

Each Wednesday, a preliminary Dispatch Board list is posted on the Driver Mailboxes located in the driver's room next to the Transportation offices. Drivers may call in by 4:45p.m. Wednesday to request a copy be faxed to them (at the driver's expense) if they are out on the road. This preliminary Dispatch Board will be updated Thursday morning prior to the first call in time to allow for any new loads being posted. From the time the first driver calls in until all drivers are dispatched, the Dispatch Board will remain unchanged. In order of seniority, drivers will be allowed to choose a load. Drivers will be given the choice of what day they would like to start delivering their load unless the customer has requested a specific delivery date or the Dispatcher has pre-assigned a date based on a back haul requirement.

Dispatch will not be held up due to late calls. Drivers who miss their assigned call in time on Thursday will be dispatched at the time they call in with the loads that are available at that time.

A driver may elect to "slide" to Monday dispatch. Upon notifying Virco of the election to slide, the driver will be assigned the next available Monday call in time. This privilege should not be abused. Monday dispatch will be handled in the same manner in which Thursday's is done. Drivers failing to call in on Thursday to receive a dispatch time will be placed at the bottom of the list for Monday dispatch. Drivers failing to call in at assigned time on Monday will be assigned a load from all available loads left after seniority dispatch is over.

All permanently assigned drivers are required to take weekly dispatch on Thursday or Monday, unless on pre-approved leave.

Your Dispatcher will arrange for subsequent trips. You are expected to communicate with your Dispatcher throughout the week relative to your available hours.

2

### Drivers on Vacation on Dispatch Day

Drivers who are on vacation may call in at their regularly scheduled Thursday dispatch time. Except for vacation, drivers are not eligible for dispatch while on any type of leave.

Vacations and non-emergency medical appointments must be pre-approved by Dispatch.

### Drivers with For-Hire Loads Scheduled to Deliver on Monday of Following Week

Drivers who have for-hire loads delivering on Monday will be given the option of either delivering the loads themselves or picking from the Dispatch Board. If they choose to deliver the load, a Monday call in time will be assigned.

### Loads Falling Through After Thursday Dispatch – No Fault of Driver

Unfortunately, we occasionally make mistakes or a customer changes its mind and we are required to reschedule delivery of a load already dispatched. As soon as we are aware of the situation, we will contact the driver and he will be offered the choice of:

Selecting from all loads available for dispatch at that time OR Taking the top slot of dispatch for Monday morning.

### Drivers Who Cannot Fulfill Their Commitment to Dispatched Loads as Scheduled

Care should be taken by the driver prior to dispatch to insure that the driver has the available hours to meet the delivery schedule of the load selected. We realize, however, that mistakes can be made or that your subsequent dispatch could change your situation in an unforeseen manner. As soon as the driver is aware of a change in ability to fulfill the trip commitment, the driver should promptly call and turn the load back in to the Dispatcher. At that time the load will be immediately placed on the Dispatch Board and offered to the next driver eligible for dispatch.

### Customer Accommodations

We will do our utmost to adhere to all dispatch procedures listed above; however, the company always retains the necessary right to deviate from normal dispatch procedures to accommodate customer. or the company's. needs as the situation arises.

### Special Dispatch Request

Virco has and will continue wherever possible to do our utmost to honor driver requests for special dispatch destinations for vacation or other personal reasons. We ask that you try to notify us of your special request at least 4 weeks in advance.

3

## INBOUND DISPATCH PROCEDURES

The furniture marketplace is a highly competitive business. Keeping our operating cost at a low minimum level allows us to offer better product pricing to our customers, giving us an edge over our competitors, which helps us provide stable employment for our workforce. In our efforts to keep these costs down, we strive continually to reduce our empty fleet miles. Toward that end, we attempt to set up some type of backhaul for all outbound loads dispatched. Our truck fleet makes three types of backhauls.

**Raw materials** are goods such as steel, fabric and wood that Virco picks up from one of our many vendors that are used in the manufacturing of our finished materials.

**Furniture return/MRA** is a product that has previously been received by a Virco customer that was either damaged, over shipped or did not meet the customer's expectations for some reason.

**For-Hire loads are taken from brokers or companies with which we have contracts to haul their product.**

High priority is given to the first two types of backhaul. The third type is used to get you from your outbound destination to a Virco vendor or if no raw product is available, then we will use a for hire load to get you home. This type of backhaul program gives us a flexibility which allows us to keep the plant timely supplied with manufacturing materials, the customer satisfied and you rolling. When you are rolling down the road loaded, you are not only making money for your pocketbook, you are accomplishing our goals of keeping fleet costs down and securing our fleet's place in the company's profit structure.

Seniority applies to inbound dispatch as well as outbound. For example, if two drivers deliver to the same location, the senior driver is given his preference of backhauls even if he empties out last unless time restraints prohibit this. If only one load is available, then the senior driver has the option of either taking the first inbound dispatch or waiting for another load.

### Dispatch Phone Numbers

| | |
|---|---|
| OFFICE PHONE: | 501-329-2901 |
| DISPATCH: | 800-654-2857 |
| OFFICE WATTS: | 800-448-4726 |

Extension Numbers:

| | | | |
|---|---|---|---|
| KELLEY LASLEY | #2233 | RAY MICHAEL | #2411 |
| MAGGIE McCLELLAN | #2280 | MANDY TALLEY | #2342 |
| ROBBIN McDERMOTT | #2284 | BETH LEE | #2287 |
| SCOTT PRESLEY | #2122 | MARY GIBSON | #2399 |

4

After Hours Numbers:

        KELLEY LASLEY – Home - 501-849-2257      Cell – 501-472-5439
        MAGGIE McCLELLAN – Home - 501-730-0038  Cell – 501-472-3371
                      Pager – 501-505-5575
        RAY MICHAEL – Home-501-329-3039     Cell – 501-472-9669
        SCOTT PRESLEY  – Home - 501-336-0438    Cell – 501-472-1799

Ryder Numbers:

        CONWAY SHOP – 501-327-4426
        EMERGENCY/AFTER HOURS – 1-888-715-7272

5

## PAPERWORK PROCEDURES

Perhaps the most time consuming task other than actual driving time for the driver is the seemingly endless one of preparing paperwork properly. We have attempted to answer many of the questions that you might have regarding your paperwork in the following paragraphs, however, never hesitate to ask questions if you need help.

### Outbound Paperwork

Each of your trips will consist of an outbound leg and one or all of the following backhauls: Raw product, return furniture (MRA) or a For-Hire load. Each leg of your journey will have different paperwork. It is the drivers responsibility upon each delivery to have the paperwork signed (full name, no initials) and dated by the consignee.

You will have a shipping order for each drop on your outbound trip. It is your responsibility to get a customer signature on each shipping order and to note on it any discrepancies (overages, shortages, damages, etc.).

Always report these discrepancies to the Dispatch office as they occur, prior to leaving the customer. In the event of an over shipment, you will be issued a merchandise return authorization number and you will need to complete the paperwork described in the return furniture section.

Your outbound paperwork will consist of the following:

1.  A Carrier Load Assignment Sheet -- this document shows the order in which your trailer is loaded, along with the carton count.
2.  NTS (Notice to Ship) -- this document should be signed and dated by the customer after delivery. Notations of any discrepancies or damages along with disposition of product, should be made.
3.  Trailer Inspection Report -- this sheet should be used for notation of any damages to the trailer while trailer is in your possession. Place in the permit holder of your trailer upon your return to Conway. Do not turn in with your Trip Envelope.
4.  Time Card -- use this to record any hourly or layover pay which you are due. Also noted on the bottom of the time card will be your expected empty time. Any changes in the time your dispatcher has written should be reported to the dispatch office immediately.
5.  Trip Report Envelope -- use this to record mileage and fuel for reimbursement and submit all signed bills, load sheet, logs, time card, toll receipts, fuel tickets, etc. to payroll upon your return to Conway.

You will find sample copies on page 8 – 16.

6

**Inbound Paperwork**

Raw Product – The vendor will give you all the necessary paperwork that Virco requires. Be sure to verify that the quantity noted on the paperwork matches the quantity loaded on your trailer prior to signing for the product. These papers should be turned in to the guard upon your return to Conway.

Note: If you are sent to a vendor that requires a pick up number, it is your responsibility to insure that the assigned load is loaded onto your trailer. If the vendor attempts to load another number, you are to call the office immediately, prior to being loaded.

Furniture Return/MRA – This is the only backhaul that you may not have paperwork supplied to you. In that case, you will need to make out a straight bill of lading. Be sure to include your name, truck and trailer number as well as pick up location, description of product, quantity, and the MRA # which will be given to you by your dispatcher.

For-Hire shipment or Brokered Load – The first requirement of these type of loads is a properly prepared bill of lading issued by you on Virco's behalf. This is required in addition to any and all paperwork given to you by the shipper. Always get the consignee's signature on each bill of lading showing proof of delivery. Again, be sure that you verify the quantity loaded on your trailer is consistent with the quantity noted on your paperwork prior to signing.

As with all shipments, you will need to practice complete caution when signing for product. Know what you are signing for. If your bill said 200 cases, you need to be absolutely sure prior to signing for the product that you actually have 200 cases loaded on your trailer. It is your total responsibility to know what is on your trailer. The only exception to this requirement for driver count would be "shippers load and count" loads, in which case this notation should be marked on your paperwork by the shipper prior to your signing.

Make it standard operating procedure to sign all backhaul shipping documents in this manner: "your name/Virco Inc./date.

As with any type shipment you haul for Virco, call dispatch immediately with any discrepancies at the unloading point. Never allow a notation by the consignee of damage or shortage without approval from dispatch.

You will find sample copies on page 8 - 16.

7

FROM: Conway Warehouse Shipping Point, Highway 65, South, Conway, AR 72033
The property describe below, in apparent good order, except as noted (contents and condition of contents of packages unkno
marked, consigned, and destined as shown below, which said carrier agrees to carry to destination, if on its route.
otherwise to deliver to another carrier on the route to destination. It is mutually agreed, as to each carrier of all
of said property over all or any portion of said route to destination, and as to each party at any time interested in all
any of said property that every service to be performed here under shall be subject to all the terms and conditions in all
Uniform Bill of Lading set forth in the National Motor Freight Classification 100-X and successive issues. The ship
hereby certifies that he is familiar with the terms and conditions of the said bill of lading including those on the o

## CARRIER LOAD ASSIGNMENT

DATE: 12/27/1999
PHONE #:1-800-448-4726

CONTACT NAME: Amanda Robinson
FAX #:1-501-450-1145

PAGE 2 OF 2

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

SHIPMENT #: 8426
CARRIER NAME:VIRCO CONWAY TRUCK
CARRIER PRO #:V5603

CARRIER PHONE:
CARRIER FAX:
TRAILER #:259443

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### 1ST STOP (SHIPMENT ORDER)

DESTINATION CONSIGNEE:             FL COMM COLL @ JACKSONVLLE
DESTINATION STREET:                3939 ROOSEVELT/BLDG. E 102B         *Kent Campus Recvg*
DESTINATION CITY/STATE/ZIP:        JACKSONVILLE,FL, 32205
SALES ORDER:                       130827
DELIVERY NOTE #                    80170288                            *Del Hrs 8am –5pm*
MESSAGE:                           DELIVER BY 1/28/00
                                   WARNING: 48 HOURS BEFORE DELIVERY, CALL
                                   904-632-3301
                                   MARK CTNS, B/L & PACKING SLIP WITH P.O.
                                   2000 06008170

PLANNED WEIGHT:        3,180 LB          PLANNED CUBE:          930 FT3
CUSTOMER SIGNATURE: _____          NUMBER OF CARTONS:    □ 50

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| Freight Charges are PREPAID unless marked collect CHECK THIS BOX IF COLLECT | Note(2):          Liability Limitation for loss or damage on this shipment maybe applicable. See 49 U.S.C. 14706 (C)(1)(A) and (B) | | | REMARKS TO CARRIER: LD BY WED |
|---|---|---|---|---|
| If this shipment is to be delivered to the consignee, without recourse on the consignor, the consignee shall sign the following statement: The carrier may decline to make delivery of this shipment without payment of freight and all other lawful charges. Virco (Signature of Carrier) | Note(3):          Commodities requiring special or attention in handling or stowing must be so marked and packaged as to ensure safe transportation with ordinary care. See Sec 21 SHIPPER CERTIFICATION | TOTAL CARTONS | | |
| Note(1):   Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding | This is to certify that the above named materials are properly classified, packaged, marked, and labeled, and are in proper condition for transportation according to the applicable regulations of the D.O.T.per: Virco Date: | TOTAL STOPS          3 | | |
| | | TOTAL WEIGHT          5,441 | CARRIER AGENT _____ | |
| SHIPPER: Virco Permanent Post Office Address of Shipper: P.O.Box Conway, Ar 72033 | | TOTAL CUBE          2,517 | DATE CARRIER RECEIVED: | |

**VIRCO**
INC.

NOTICE TO SHIP

FL COMM COLL @ JACKSONVLLE
S KENT CAMPUS RECEIVING
H 3939 ROOSEVELT/BLDG. E 102
I JACKSONVILLE FL  32205
P USA
T
O

130827
S.O. NO.

3000    80170288
108886
FL COMM COLL @ JACKSONVLLE
501 WEST STATE STREET
JACKSONVILLE FL  32202-403
USA

Conway Main Warehouse Ship Pt

Prepaid   2000 06008170    12/21/1999   VIRCO CONWAY TRUCK 08 12/29/19

FREIGHT TERMS

| CTN SHIPPED | OPEN QTY. | PLANNED SHIP | QTY. SHIP | ITEM NO. | DESCRIPTION | UNIT WEIGHT | UNIT CL |
|---|---|---|---|---|---|---|---|
| 50 | 100 | 100 | 100 | 010 | 9400-18BR CHAIR/CHROME C/NV/MEDOAK 948379C5184 | 31.8 | 9 |

DELIVER BY 1/28/00
FL STATE PROMO
DELIVERY HOURS:   8 A.M.-5 P.M.
DELIVER BY 1/28/00
WARNING: 48 HOURS BEFORE DELIVERY, CALL
904-632-3301

MARK CTNS, B/L & PACKING SLIP WITH P.O.
2000 06008170

Your Customer Service Representative is THERESA K MILLER

*OB/C* Page 1 / 1  ZP02            3        4,115 3,180.0 930 0  L

**Physical Inspection Report**
**Virco, Inc. - Conway Division**

Unit #_____ { } Okey to Load    Date _____ Inspector _____

**Outbound Checklist:**
Check all interior and exterior damages that apply



O - Hole
X - Dent
R - Rub
T - Torn
B - Bent
S - Scratches
P - Patch

{ } DO NOT LOAD  UNTIL REPAIRS HAVE BEEN COMPLETED -

_____
_____
_____

**Driver's Inspection -** Condition when empty (Interior and Expterior)

_____
_____

**Inbound Checklist:**
Check all interior and exterior damages that apply



List all defects to be corrected - _____
_____
_____

{ } Condition of the above vehicle is satisfactory
I certify the physical condition of this vehicle is noted and correct.
Driver Signature _____    Date _____

{ } Above defects corrected
{ } Above defects need not be corrected for safe operation of vehicle.
        { } Virco            { } Ryder

Mechanic's signature _____    Date _____

Driver's signature _____    Date _____

10

| NAME | EMP. NO. | DATE |
|---|---|---|
| HOME COST CENTER | HOME GROUP | SHIFT |

| | | |
|---|---|---|
| | IN | |
| | OUT | |
| | IN | |
| | OUT | |
| | IN | |
| | OUT | |
| | IN | |
| | OUT | |
| | IN | |
| | OUT | |
| | IN | |
| TOTAL HOURS | OUT | |
| | IN | |
| | OUT | |
| | IN | |
| ALLOWED HOURS | OUT | |
| | IN | |
| | OUT | |
| | IN | |
| | OUT | |
| | IN | |
| | OUT | |
| | IN | |
| | OUT | |
| | IN | |
| | OUT | |
| | IN | |
| | OUT | |

VIRCO          C100

11

# TRIP REPORT

Date

TRUCK NO. _____       FROM _____       LEAD DRIVER _____
TRAILER (S) _____
LOG NO. 'S _____       TO _____       CO-DRIVER _____

_____
_____

                                                    TEMPORARY
                                            CASH ADVANCES $ _____
            FROM                                    TO

_____        _____

_____        _____

_____        _____

_____        _____

| State | Miles | Date | Fuel Gal. | Fuel Exp. | Maint. | Outside Labor | Motel | Permit | Toll | Misc. | Total |
|-------|-------|------|-----------|-----------|--------|---------------|-------|--------|------|-------|-------|
|       |       |      |           |           |        |               |       |        |      |       |       |
|       |       |      |           |           |        |               |       |        |      |       |       |
|       |       |      |           |           |        |               |       |        |      |       |       |
|       |       |      |           |           |        |               |       |        |      |       |       |
|       |       |      |           |           |        |               |       |        |      |       |       |
|       |       |      |           |           |        |               |       |        |      |       |       |
|       |       |      |           |           |        |               |       |        |      |       |       |
|       |       |      |           |           |        |               |       |        |      |       |       |
| TOTALS |      |      |           |           |        |               |       |        |      |       |       |

SPEEDOMETER READING          APPROVED BY          CONWAY

BEGIN _____                              FUEL USED _____

END _____                               AVERAGE
                                                 MILES/GAL _____

Fill out report completely. Put all invoices and cash receipts in envelope.
Also include any other information you might consider necessary, such as
deliveries to commercial warehouses and raw materials pickup.

12

**WILSONART INTERNATIONAL**

CUTSIZE

CUTSIZE WAREHOUSE ORDER

WAREHOUSE LOCATION

| CUT TO SIZE | TYPE | PATTERN | FIN-ISH | ORDER | PULL | SHIP | PACKER NO. | REMARKS |
|---|---|---|---|---|---|---|---|---|
| 30 1/2X 60 1/2 | 335 | 7928T | 60 | 352 | 352 | 552 | | |
| 35 1/2X 72 1/2 | 335 | 7928T | 60 | 20 | 20 | 20 | | |

#PACK SEPARATE UNDER #

DIRECT SHIPMENT
FOR VIRCO MFG CORP.
PO BOX 5070
HIGHWAY 63 SOUTH
CONWAY

CUSTOMER PO 12529

PO# 17232

A# 2032

2

PART# 038X120
PART# 038A02   684
10-60X144
PART# 038A05   684

SHIP DATE

SHIP DATE

13

CUTSIZE

© Copyright 1995 J. J. KELLER & ASSOCIATES, INC., Neenah, WI • USA • (800) 327-6868

# STRAIGHT BILL OF LADING – SHORT FORM – Original – Not Negotiable

Shipper's No. ____________

(Carrier) ____________ SCAC. ____________ Carrier's No. ____________

Received, subject to the classifications and tariffs in effect on the date of this Bill of Lading:

at ____________, date ____________ from ____________

the property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated below, which said company (the word company being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its own road or its own water line, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions not prohibited by law, whether printed or written, herein contained (as specified in Appendix B to Part 1035) which are hereby agreed to by the shipper and accepted for himself and his assigns.

TO: (Mail or street address of consignee for purposes of notification only.)
Consignee
Street
Destination Zip

FROM:
Shipper
Street
Origin Zip

Route:

Delivering Carrier | Trailer Initial Number | U.S. DOT Hazmat Reg. Number

| Number of packages | HM | Description of articles, special marks, and exceptions | Weight (subject to correction) | Class or rate | Check column | Charges (for carrier use only) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Remit C.O.D. to:
Address:
City: State: Zip:

COD AMT: $

C. O. D. FEE:
Prepaid ☐
Collect ☐ $

TOTAL CHARGES:
$

FREIGHT CHARGES
FREIGHT PREPAID Except when box at right is checked ☐ CHECK BOX if charges are to be collect

*If the shipment moves between two ports by a carrier by water, the law requires that the bill of lading shall state whether it is "carrier's or shipper's weight".
Note – where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property.
The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding–
$ ____________ per ____________

Subject to Section 7 of the conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement:
The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.
(Signature of consignor)

This is to certify that the above-named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the Department of Transportation. Per

SHIPPER: ____________ CARRIER: ____________

PER: ____________ DATE: ____________ PER: ____________ DATE: ____________

EMERGENCY RESPONSE
TELEPHONE NUMBER: (    )

Permanent post office address of shipper

Monitored at all times the Hazardous Material is in transportation including storage incidental to transportation (§172.604)

10-BLS-A4 (Rev. 6/95)

○ Mark with an "X" to designate Hazardous Material as defined in the Department of Transportation Regulations governing the transportation of hazardous materials. The use of this column is an optional method for identifying hazardous materials on bills of lading per Section 172.201(a)(1)(iii) of Title 49, Code of Federal Regulations. Also, when shipping hazardous materials, the shipper's certification statement prescribed in Section 172.204(a) of the Federal Regulations must be indicated on the bill of lading, unless a specific exception from this requirement is provided in the Regulations for a particular material.

© Copyright 1995 J. J. KELLER & ASSOCIATES, INC., Neenah, WI • USA • (800) 327-6868

## STRAIGHT BILL OF LADING – SHORT FORM – Original – Not Negotiable

Shipper's No. *BO-170849*

(Carrier) *Wilco*    SCAC. _____    Carrier's No. _____

Received, subject to the classifications and tariffs in effect on the date of this Bill of Lading:

at _____ date *10-26-00* from _____

the property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated below, which said company (the word company being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its own road or its own water line, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions not prohibited by law, whether printed or written, herein contained (including the conditions on back hereof) which are hereby agreed to by the shipper and accepted for himself and his assigns.

(Mail or street address of consignee for purposes of notification only.)

TO:
Consignee *Arkansas Kraft*
Street *Hwy 113 south*
Destination *Morrilton    AR*    Zip _____

FROM:
Shipper *RR Donnelley Ing a*
Street *391 Stockway*
Origin *Lancaster    Pa*    Zip _____

Route: _____

*#301038*

Trailer Initial Number _____    U.S. DOT Hazmat Reg. Number _____

Delivering Carrier _____

| Number of packages | ⊕ HM | Description of articles, special marks and exceptions | *Weight (subject to correction)* | Class or rate | Check column | Charges (for carrier use only) |
|---|---|---|---|---|---|---|
| *4424* | | *White Ledger* | *20,635* | | | |
| *22* | | *Bakr-Hardwhite* | *21,905* | | | |
| *46* | | *ATM* | *42,540* | | | |
| | | *C 257061* | | | | |
| | | *Jerome Bird* | | | | |

Remit C.O.D. to:
Address:
City: _____ State: _____ Zip: _____

If the shipment moves between two ports by a carrier by water, the law requires that the bill of lading shall state whether it is "carrier's or shipper's weight."
Note – where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property.
The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding
$ _____ per _____

**COD**
AMT: $ _____

Subject to Section 7 of the conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement:
The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.
_____ (Signature of consignor)

| C. O. D. FEE: | TOTAL CHARGES |
|---|---|
| Prepaid ☐ | $ _____ |
| Collect ☐ $ | FREIGHT CHARGE |

FREIGHT PREPAID
Except when box at right is checked.
CHECK BOX
if charges are to be collect

This is to certify that the above-named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the Department of Transportation. Per _____

SHIPPER: _____    CARRIER: *Wilco*
PER: _____ DATE: _____    PER: *Jerry Ducharme* DATE: *10-26-00*

EMERGENCY RESPONSE
TELEPHONE NUMBER: ( )

Permanent post office address of shipper

Mark with "X" to designate hazardous material as defined in the Department of Transportation Regulations governing the transportation of hazardous materials. The use of this column is an optional method for identifying hazardous materials on bills of lading per Section 172.201(a)(1)(iii) of Title 49, code of Federal Regulations. Also, when shipping hazardous materials, the shipper's certification statement prescribed in Section 172.204(a) of the Federal Regulations must be indicated on the bill of lading, unless a specific exception from this requirement is provided in the Regulations for a particular material.

Monitored at all times the Hazardous Material is in transportation including storage incidental to transportation (§172.604).

10-BLS-A4 (Rev. 6/9

15

**INVOICE**

## RR DONNELLEY RECEIVABLES, INC.

An R.R. Donnelley & Sons Company

Please make checks payable to R.R. Donnelley Receivables, Inc. and identify payment with your invoice number.

Permit to post office box as indicated:
- ☐ P.O. Box 905151  Charlotte, North Carolina 28290-5151
- ☐ P.O. Box 730216  Dallas, Texas 75373-0216
- ☐ P.O. Box 13654  Newark, New Jersey 07188-0001
- ☐ P.O. Box 100112  Pasadena, California 91189-0001

SOLD TO: *Federal International Inc*
*7935 Clayton Rd*
*St Louis Mo. 63117*

RRD MASTER NUMBER: *Vires for Ark. Kraft*

BILL OF LADING NUMBER:

CAR NUMBER: *301038*

DIVISION: *Steel Way Lancaster pa*
PLEASE PRINT DIVISION LOCATION ABOVE

INVOICE NUMBER: **BP- 170849**

SHIPPING INVOICE DATE: *10-26-2000*

CONTRACT NUMBER:

CUST. P.O. NUMBER: *20/01181*

PAYABLE DATE:

TERMS: NET CASH 30 DAYS

| CLASSIFICATION | UNIT WEIGHTS | | | | TOTAL WEIGHT | PRICE PER TON | VALUE |
|---|---|---|---|---|---|---|---|
| white ledger | 862 | 854 | 889 | 863 | | | |
| | 883 | 893 | 883 | 530 | | | |
| | 821 | 906 | 881 | 908 | | | |
| | 803 | 812 | 855 | 872 | | | |
| | 840 | 861 | 877 | 905 | | | |
| | 861 | 882 | 934 | 910 | 20635 | | |
| (24 bales) | | | | | | | |
| Hard white | 892 | 1031 | 1071 | 911 | | Seven $.00 | |
| | 1022 | 983 | 972 | 942 | | | |
| | 998 | 852 | 975 | 814 | | | |
| | 1500 | 993 | 1041 | 886 | | | |
| | 919 | 987 | 956 | 964 | | | |
| (22 bales) | 1021 | 1074 | | | 21905 | | |
| Releas # A7771 | | | | | | | |
| total bales 46 | | | | | | | |
| | | | | | TOTAL WEIGHT | 42540 | AMOUNT DUE |

SIGNED: _____

16

Trip Report Envelopes

You must submit your trip report envelope to the traffic office upon the completion of each trip not later than noon of the business day following your return to Conway.

Your envelope should contain the following documents:
1. Signed proof of delivery on all outbound drops
2. Driver's Daily Logs
3. Time card
4. All cash receipts
5. All fuel receipts
6. All credit card receipts.
7. Telephone log.

## ASSIGNMENT OF EQUIPMENT

New tractors are assigned first to drivers whose present tractors are being retired from the fleet. All other new tractors are assigned based on seniority. Bid notices will be sent out notifying you of any available tractors that are up for bid.

## DAILY CALL IN PROCEDURES

While out on the road, drivers are asked to call the dispatch office before 10:00 a.m. central standard time each day (Monday through Friday) to check in and again as soon as they are empty.

All required appointments will be made prior to you leaving Conway; however, it will be the driver's responsibility to contact the customer with any changes to your schedule. It is also a driver's responsibility to notify the dispatch office of any deviations to your scheduled trip (ETA changes, etc.) as soon as you see there is a change. Your estimated empty time is noted at the bottom of your timecard.

## RYDER REQUIREMENTS

Fueling Procedures - As a service to Virco, Ryder provides us with full service fueling at all Ryder locations equipped with fuel islands. Virco drivers are to plan their trips so as to utilize Ryder fuel stops as much as possible. Ryder personnel will fuel and service the truck at that location. Virco allows drivers to show time at a Ryder facility as off duty time.

Virco also provides drivers with an EFS fuel card. The fuel card is to be used only in situations where Ryder fuel is not available, and if during office hours, with, notice to the dispatch office. Drivers are not discouraged to use EFS card, but instead try to encourage drivers to plan their trips to utilize Ryder fuel stops.

17

When you return to Conway from each trip, you are to fuel your tractor at the Conway Ryder yard.

Maintenance/Breakdown – If you have a problem while you are on a trip you are to first call Ryder Emergency Response System. If you are unable to get help in a timely manner then call the Conway Ryder Shop or the after hours Conway Ryder number. If you are still unable to get any help you are to call Kelley Lasley or Maggie McClellan.

Ryder Numbers:

CONWAY SHOP – 501-327-4426
EMERGENCY/AFTER HOURS – 1-888-715-7272

## ACCIDENT REPORTING PROCEDURES

The person who is involved in an accident, however minor, with a company truck, should take the following action:

*Stop at once. Help anyone who is injured.*
*Call the police. A police investigation is required on every accident.*
*Immediately after calling the police, report the accident to Kelley Lasley, Maggie McClellan, or* Ray Michael *at 1-800-654-2857.*

*After business hours call:*

| | |
|---|---|
| Kelley Lasley | 501-849-2257 |
| Maggie McClellan | 501-730-0038 |
| Ray Michael | 501-472-9669 |

*When the police arrive:*
Give them all the information they request.
Get the name and address of the station where our office can obtain a copy of the police report. Get the report number if possible.
Get the name of the investigating officer.

*Identify yourself and obtain the following information from the other driver.*
Name, address and phone number.
Driver's license number.
Car license number.
Insurance carrier.
Agent's name, address and phone number.

*Obtain names, addresses and phone numbers of witnesses.*
Do not discuss the accident with anyone other than the police, our insurance adjuster or a company official. Immediately upon your return to Conway, see the traffic clerk. She will help you prepare a written report of the accident, using our standard report forms.

18

## INSURANCE IDENTIFICATION

(STATE) AR

COMPANY NUMBER
113

COMPANY
U.S. Fire Insurance Co.

POLICY NUMBER
138-033039 8

EFFECTIVE DATE
4/1/2001

EXPIRATION DATE
4/1/2002

YEAR

MAKE/MODEL

VEHICLE IDENTIFICATION NUMBER

Fleet - Company Owned & Leased Auto

AGENCY/COMPANY ISSUING CARD

Aon Risk Services, Inc.
of Southern California Insurance Services
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017

INSURED

VIRCO MFG. CORPORATION
PO BOX 44846
LOS ANGELES, CA 90044

---

THIS CARD MUST BE KEPT IN THE INSURED

VEHICLE AND PRESENTED UPON DEMAND

IN CASE OF ACCIDENT: Report all accidents to your Agent/company as soon as possible. Obtain the following information:

5.    Name and address of each driver, passenger and witness

6.    Name of Insurance Company and policy number for each vehicle involved.

It is absolutely imperative that all accidents be reported to the transportation office and more specifically to Kelley Lasley or Maggie McClellan prior to leaving the scene of the accident / incident. All accidents / incidents must be reported to the transportation office, no matter how small.

It is essential that reports contain all pertinent information relating to the accident to permit proper claims action on behalf of the company. You need not, and should not, be drawn into arguments with potential claimants. Tell them directly that you will refer the matter to your home office. Direct their questions and/or correspondence to the company office.

## TEMPORAY LABOR

In cases where the customer requests an inside delivery or you have a large tailgate delivery, our office will arrange for temporary labor to meet you. If labor has been arranged the number of people requested will be noted in the labor section on your appointment sheet. It is very important that you notify dispatch of any changes to your schedule in order for us to notify the temporary labor agency.

If management has ordered temporary labor for your inside delivery it will be noted on your shipping bills. If you know you will need temporary labor to assist you on a job and it has not been ordered, you need to call traffic management as soon as possible to advise someone of your situation.

If you are at the job site and your temporary labor has not arrived at the specified time, call management so a call can be placed to the service where the labor was ordered.

You are to sign all labor slips and turn in with your trip envelope. Only sign for the actual hours that your labor worked for you. The slips you sign must correspond with your log. If there is a minimum time worked for the labor agency, sign the labor slip for the time that was worked and management will work out the rest with the labor agency.

Notify management after the job is completed. Advise management of the actual time labor was used and if there were any problems.

# DRIVER'S PAY

# RATES & POLICIES

## CURRENT MILEAGE RATE

Driver pay rates effective October 23, 2000 are as follows:

Mileage

| | |
|---|---|
| Tractor and trailer/s – one driver | .3900 per mile |
| Tractor and trailer/s – two drivers | |
| Lead driver | .3100 per mile |
| Second driver | .2900 per mile |

Drivers will be paid the listed mileage rates on odometer miles.

Note Exception:  Driver trainers volunteering to train new hires will be paid one driver pay.  Trainees will continue to be paid at the second driver rate.

## HOURLY RATES

| | |
|---|---|
| Local delivery (see 50 mile radius note below) | $10.55 per hour |
| Inside delivery with temporary labor | $12.90 per hour |
| Installation with temporary labor | $14.40 per hour |
| Tailgating (unloading) | $16.00 per hour |
| Inside delivery when no temporary labor is used | $17.50 per hour |
| Installation when no temporary labor is used | $19.00 per hour |

Tailgate Delivery – The driver moves the product to the rear of the trailer and sets it onto the customer's property.

Inside Delivery – The driver takes the product inside the nearest door, on the ground floor, at the customer's location.  The customer must give the driver reasonable access to the door and the driver is only required to take the product within 100 feet of that door.

On all hourly pay, all hours worked for loading, unloading, inside delivery, installations are to be recorded on your standard time card and submitted with your trip report each week.  Be sure to designate on the time card which labor service you provided.  Hours recorded on your time card will be verified by separate bills and/or pick up orders and must be logged properly on your driver's daily log.

On any trip where the destination is 50 miles or less from Conway, the company will pay, in addition to the current mileage rate, the $16.00 tailgating rate (or $10.55 for local drivers) from the time the driver leaves Conway until return.

In addition to all other rates, drivers will be paid a seniority premium in cents per mile as follows:

| | |
|---|---|
| 1-4 years | .01 per mile |
| 5-9 years | .02 per mile |
| 10-14 years | .025 per mile |
| 15-19 years | .035 per mile |
| 20 years and over | .045 per mile |

Seniority is determined by your anniversary date as a driver in the Transportation Department.

## PERFORMANCE PREMIUMS

In addition to the standard rates listed on the previous page, the following performance premiums apply to over the road and local drivers. This incentive program replaces and negates all other accident bonus and mpg bonus programs.

The performance bonus is earned over each of Virco's twelve month accounting periods and is paid weekly for all mileage driven in the following period.

.0030   Attaining zero FMCSR Violations on DOT Inspections for the period.
.0030   Having zero preventable accidents for the period.
.0030   Receiving zero moving violations for the period.
.0030   Receiving zero serious log violations for the period.
.0030   Achieving fleet base mpg* for the period.

**Preventable Accident** – An accident in which it has been determined that the driver had the last clear chance to avoid a collision. For determining performance premiums, any accident under $250.00 will not be charged to you.

Note: An additional .0030 will be paid for each .1 (1/10th mpg) over fleet base.

*Fleet base mpg is established by transportation management and reported to all drivers prior to the beginning of the bonus period. Average fleet performance and weather considerations will be used in determining fleet base.

## LAYOVER PAY

The current hourly unloading rate will be paid for layover time in the following manner:

**Waiting to load/unload** - Load/unload layover time will commence 4 (four) Hours after arrival at the loading/unloading point during the hours of 7:00 a.m. until 4:00 p.m. local time at the delivery site and will cease when you are loaded/unloaded, up to a maximum of 8 (eight) hours per 24 (twenty four) hour period.

Pool Shipments: 1st 4 hours from appt. Time on line 4/after on stops will pay up to 8 hours per day

22

**Waiting for dispatch -** Dispatch layover time will commence 2 (two) hours after you call the dispatch office during the hours of 7:00 a.m. and 4:00 p.m. central time empty and available for dispatch and will cease after 8 (eight) hours or when you are dispatched, whichever is less.

Any layover that is caused by driver error or negligence will not be compensated. Examples would be not following dispatch instructions, not making advance delivery appointments when specified on bill of lading, lack of available hours of service, chargeable accidents, failure to communicate proper ETA (earliest time of arrival) information to your dispatcher in timely manner, etc. *Exception: Does not have to be on line 4 if prior approval is stated on dispatch & logs match times on dispatch*

All layover hours must be properly logged in accordance with part 395 of the Federal Motor Carrier Safety Regulations.

## INCLIMATE WEATHER LAYOVER

From time to time, snow or ice may make the roads impassable. We trust the driver's judgement to make the right decision whether the roads are safe enough for operation. In those cases when a driver must shut down, the following layover procedures must be followed in order to obtain layover pay.

1. Layover will begin after a continuous eight-hour period of being unable to move.
2. Drivers will be eligible for up to a maximum of eight hours per day of layover.
3. It will be the driver's responsibility to notify dispatch at the time that he is unable to safely travel further and to notify dispatch when he again is able to move. The time must be verifiable both by the dispatch office and your logs.

23

# DRIVER'S LOG

## DRIVER'S DAILY LOG

Drivers must keep a log for each day. Each log will cover 24 (twenty-four) hours, running from midnight to midnight. Section 395.8 of the Federal Motor Carriers Safety Regulations handbook deals with proper preparation of your daily log. The following is a list of items that should be on your log everyday:

1. Date
2. Total miles traveled today
3. Total miles driven today
4. Carrier name (pre-printed on Virco Logs)
5. Home office address (pre-printed)
6. Tractor and trailer numbers of all units operated that day
7. Your full name
8. Your co-drivers full name (if applicable)
9. Home terminal
10. Bill of lading number(s) showing transportation performed that day.
11. Twenty four hour period starting time (e.g., midnight, 9:00 a.m., noon, etc.)
12. Remarks
13. Total hours (far right edge of grid)
14. From and To at the bottom of your log.
    ** *You are strongly encouraged, but not required, to keep up with your daily recap in the back of your log book. This information is vital, at times, to be readily available when planning your next dispatch.*

See page 27 for a sample log.

## ON-DUTY TIME

On-duty time is logged on line 4 (four) of your daily logs. On-duty time includes:
- Pre-trip inspection -- minimum of 15 (fifteen) minutes.
- All time at a plant, terminal, facility or other property of a motor carrier or shipper, or any public property, waiting to be dispatched, unless you have been relieved from duty by Virco, which at that time, you must show at least 15 (fifteen) minutes on duty.
- All time inspecting, servicing, or conditioning your tractor at anytime.
- All time loading or unloading, supervising or assisting in the loading or unloading, attending while loading or unloading, remaining in readiness to operate your tractor and giving or receiving receipts for shipments loaded or unloaded.
- All weight stops.
- All time spent in a D.O.T. inspection.
- All time spent on duty at an accident scene in which you were involved.
- All time spent providing samples for random drug & alcohol testing.
- All time spent performing <u>compensated</u> work for a person who is not a motor carrier.

Any hours on your time card, except for layover pay, must be logged on Line 4 . Time card hours not logged on line 4, will not be paid by Virco.

24

## DRIVING TIME

Driving time is logged on line 3 (three) of your daily logs. Driving time includes all time spent at the driving controls of your tractor in operation. You must adhere to the locally posted speed. The maximum average speed you can log to is 60 miles per hour.

## SLEEPER BERTH

Sleeper berth is logged on line 2 (two) of your daily logs. This is the time off duty resting in the sleeper berth.

## OFF DUTY

Off-duty is logged on line 1 (one) of your daily logs. This is the time when you are not on duty, are not required to be in readiness to work or are not under any responsibility for performing work.

You should not continuously operate your vehicle for a period in excess of 6 (six) hours without taking a break of at least 30 (thirty) minutes. Meal stops should be a minimum of 30 (thirty) minutes and not more than one hour. As you are relieved of responsibility during this time, you are authorized to log these rest periods as off duty on your daily log.

Inter-city miles with multiple stops may be computed as one stop. All stops must be made in one village, town or city.

An example log has been completed for you on page 27. The log indicates that this driver:

Line 1 – Off duty – reported to work at 6:00 a.m.
Line 4 – On duty – made a pre-trip inspection.
Line 3 – Driving – departed at 6:30 a.m.
Line 4 – On duty – stopped to unload cargo at 8:00 a.m.
Line 3 – Driving – drove from 9:00 a.m. to 12:00 noon.
Line 1 – On duty – Stopped to unload cargo at 12:00 noon.
Line 3 – Driving – drove from 1:00 p.m. to 4:00 p.m.
Line 4 – On duty – stopped to pick up a backhaul at 4:00 p.m.
Line 2 – Sleeper Berth – finished loading and went to sleeper at 7:00 p.m.

## LOG VIOLATIONS

Daily logs are to be turned in to the office each week with your trip report envelope. A driver shall have on file in the traffic office all logs prior to the day of departure on the first trip made in the week. If a driver has turned in a log with violations, the following steps are taken:

1. A notification of error will be prepared listing the violations made
2. A notification of error will be issued to the driver for his examination; you are then to sign and return to the log audit clerk no later than one week

from the notification date. If you made an honest "pencil error" (i.e., omitted your miles, failed to flag a performed vehicle inspection, etc.) see the log audit clerk for your logs requiring corrections.
3. Previously submitted logs will not leave the office.
4. Hours of service violations and obvious falsified logs will not be available for correction after submission.
5. A review of the notifications will be made at the end of each month. From this review, a report will be compiled by the office personnel making the review and referred to traffic management for whatever reprovals deemed necessary.

Drivers who have 1 (one) to 3 (three) major violations in any one audited month will be issued a Logging Violation Notification for that month.

Drivers who have 4 (four) or more major violations in any one audited month will be issued a second Logging Violation Notification for that month. Two Logging Violation Notifications is the most a driver will be issued in any one audited month.

Each day or each violation is a separate violation. For instance, on October 1, you were over 10 hours and over 70 hours and you were charged with speeding, that is 3 (three) violations. If on October 2 and October 3, you were also over 70 hours, that is another 2 (two) violations, for a total of 5 (five) violations of the month. Each Logging Violation Notification will be retained in your files for a 12 (twelve) month period at which time they will be destroyed.

*Drivers who accumulate 6 (six) Logging Violation Notifications in any 12 (twelve) month period, will receive a written warning notice.*

*Drivers who accumulate 7 (seven) Logging Violation Notifications in any 12 (twelve) month period will receive a second written warning notice.*

*Driver who accumulate 8 (eight) or more Logging Violation Notifications in any 12 (twelve) month period will be subject to disciplinary action.*

Periodic training sessions on proper logging will be held in Virco's training room. These sessions will be announced on your bulletin board 2 (two) weeks prior to the sessions. Attendance will be strictly voluntary and on your own time. Drivers attending these logging seminars may destroy one Logging Violation Notification. If you want to attend a session, work with your dispatchers and they will attempt to schedule you in for it.

*Log credits are recorded in a 12 (twelve) month time frame as well.*

26

**DRIVER'S DAILY LOG**
(ONE CALENDAR DAY - 24 HOURS)

ORIGINAL - File each day at home terminal
DUPLICATE - Driver retains in his possession for eight days

| 1 | (MONTH) | (DAY) | (YEAR) | 2 (TOTAL MILEAGE TODAY) |

I certify these entries are true and correct.

VEHICLE NUMBERS - (SHOW EACH UNIT)

3
4 (TOTAL MILES DRIVING TODAY)

**VIRCO MFG. CORP.**
(NAME OF CARRIER OR CARRIERS)

(DRIVER'S SIGNATURE IN FULL)

5 Hwy. 65 South - Conway, Arkansas 72032
(MAIN OFFICE ADDRESS)

(NAME OF CO-DRIVER)

(HOME TERMINAL ADDRESS)

| | MID-NIGHT | 1 2 3 4 5 6 7 8 9 10 11 | NOON | 1 2 3 4 5 6 7 8 9 10 11 | TOTAL HOURS |
|---|---|---|---|---|---|
| 1: OFF DUTY | | | | | |
| 2: SLEEPER BERTH | | | | | 6 |
| 3: DRIVING | | | | | 5 |
| 4: ON DUTY (NOT DRIVING) | | | | | 7½ |
| | | | | | 5½ |

12 REMARKS

10

Shipping document, manifest number, or name of a shipper and commodity.
Check the time and enter name of place you reported and where released from work and when and where each change of duty occurred. Explain excess hours.

FROM: Baltimore, MD
(STARTING POINT OR PLACE)

TO: Boston, MA
(DESTINATION OR TURN AROUND POINT OR PLACE)

USE TIME STANDARD AT HOME TERMINAL
© Copyright 1994 & Published by J. J. KELLER & ASSOCIATES, INC.

27

## ADHERENCE TO SPEED LIMIT

Certainly, adherence to the locally posted speed limit is an important economy factor, not only because it is the law of the land, but also because it is a proven fuel conservation method. All drivers are required to adhere to the local speed limit by law and as an important part of our overall energy conservation plan.

## USE OF RADAR EQUIPMENT

Radar equipment in a Virco truck is strictly prohibited. Any driver found with radar equipment, will be subject to disciplinary action.

## HOURS OF SERVICE REQUIREMENTS – FEDERAL MOTOR CARRIER SAFETY REGULATIONS:

Section 395.3(a) No motor carrier shall permit or require any driver used by it to drive nor shall any such driver drive more than 10 hours following 8 consecutive hours off duty; or for any period after having been on duty 15 hours following 8 consecutive hours off duty....

Section 395.3(b) No motor carrier shall permit or require a driver of a commercial motor vehicle to drive, nor shall any driver drive, regardless of the number of motor carriers using the driver's services for any period after having been on duty 70 hours in any period of 8 consecutive days....

As you well know, both Virco as the motor carrier and you as the driver are required by law to adhere to all federal motor carrier safety regulations. The above category at anytime as violations can yield serious repercussions to both the company and the drivers through fines by police or DOT officials. Repeated violations can even lead to termination of a driver's employment with the company. For this reason, dispatch times, all dated receipts, as well as fuel invoices are documented and matched to the driver's log.

Each of you is responsible for keeping a daily recap of your on-duty hours for the last eight days. If at any time you run close enough on your 70 hours to prevent your delivery as scheduled, it is your responsibility to notify dispatch when you make your daily call in.

If you are out of hours when a dispatch is made, you must so advise your dispatcher in order that adjustments for loading or dispatch schedules can be made. We don't want you taking a load out at any time that is going to push you on your 70 hours. Our shipping program is flexible enough that there is never a reason for you to run over 70 hours or to violate the 10 and 15 hour rule.

You must keep us informed of any problems along this line.

28

# D.O.T. DRIVER

# QUALIFICATIONS

## DRIVER REQUIREMENTS/COMMERCIAL DRIVER'S LICENSE

Virco strictly adheres to the FMCSR's, part 391, "Driver Qualifications". A Virco driver must be at least 21 (twenty one) years of age; read and speak the English language; can, by reason of experience, training, or both, safely operate the tractor in which he/she will be operating; is physically qualified to drive; has a current valid commercial driving license; has prepared and furnished Virco with the list of violations or the certificate as required; is not disqualified to drive a commercial motor vehicle; has successfully completed a driver's road test and has been issued a certificate of driver's road test; and has passed drug testing procedures.

## ANNUAL DRIVING REVIEW

Once every 12 (twelve) months, a driving record inquiry will made on each driver to determine whether that driver meets minimum requirements for safe driving or is disqualified to drive a commercial motor vehicle.

## NOTICE OF MOVING TRAFFIC VIOLATION

Each driver must fill out a list of all traffic violations and accidents once in each 12 (twelve) months and submit it to your Regulatory Compliance Clerk.

## DRIVER PERIODIC PHYSICAL EXAMINATION

Each driver will be required to have a physical examination at least once every 2 (two) years or sooner, based on the recommendations of the designated company physician. Virco must have a copy of the certificate from the designated company physician.

Each driver must familiarize himself with and adhere to, all federal motor carrier regulations of the U.S. Department of Transportation, sections 390 through 397.

## DRUG/ALCOHOL POLICY

Virco strictly adheres to the alcohol and controlled substance prohibitions set forth in the FMCSR part 382 and the alcohol and controlled substance policy in which you signed at the time of placing your application with this company. All Virco drivers are subject to random mandatory alcohol and drug testing.

29

# MISCELLANEOUS

## EQUIPMENT INSPECTION REPORTS

Driver Vehicle Inspection Reports (DVIRs) must be completed according to FMCSR Part 396.11. Copies of these reports must be included in each pay envelope. DVIR forms can be obtained from Ryder and should be completed in writing.

The following items should be checked prior to departure on each trip and daily while on the road with any and all defects being reported on the driver's vehicle condition report on the back of the daily log.

1. Brakes
2. Brake Connections
3. Steering
4. Lights
5. Tires
6. Horn
7. Windshield Wipers
8. Mirrors
9. Coupling Devises
10. Oil Fuel
11. Safety Equipment
12. Gauges

After filling out the form and including all pertinent information, detach the white top copy and include it in your envelope. The remaining copies are for Ryder to inspect and take corrective action by. The back red copy will be placed back in the unit and should be kept and turned in with your next pay envelope.

Notification of any major problems that are written up should also be given to the transportation office to insure that proper and immediate action is taken to make the necessary repairs.

See sample of report on page 31.

# *Ryder* ® Driver's Vehicle Condition Report

To _____
Lessee Name

| Truck/Tractor Number | Trailer Number | Date In | Time In |
|---|---|---|---|
| Mileage In | **Driver Signature In** | | |

Note: M = Mechanic, D = Driver.    Preventive maintenance inspection due?  ☐ Yes  ☐ No

**M  D  Engine**
☐ ☐ Check for Oil, Water, and Fuel Leaks
☐ ☐ Service Engine Light Is On
☐ ☐ Knocks
☐ ☐ Misses
☐ ☐ Hard Starting
☐ ☐ Overheating
☐ ☐ Other_____

**Clutch**
☐ ☐ Check for Slipping or Grabbing
☐ ☐ Other_____

**Transmission**
☐ ☐ Noisy
☐ ☐ Hard Shifting
☐ ☐ Leaks
☐ ☐ Other_____

**Steering**
☐ ☐ Looseness
☐ ☐ Shimmy
☐ ☐ Steers Hard
☐ ☐ Other_____

**Springs/Suspension**
☐ ☐ Broken
☐ ☐ Other_____

**M  D  Brakes**
☐ ☐ Check Trailer Connections
☐ ☐ Parking Brakes
☐ ☐ Service Brakes
☐ ☐ Check for Air or Hydraulic Leaks
☐ ☐ Other_____

**Rear Axle**
☐ ☐ Noisy
☐ ☐ Grease Leaks
☐ ☐ Other_____

**Instrument Panel**
☐ ☐ Oil Pressure Gauge
☐ ☐ Ammeter
☐ ☐ Horn
☐ ☐ Windshield Wipers
☐ ☐ Speedometer
☐ ☐ Other_____

**Electrical**
☐ ☐ Check Trailer Light Cord
☐ ☐ Lights: Head, Tail, Stop, Turn, Clearance Reflectors
☐ ☐ Other_____

**M  D  Tires**
☐ ☐ Repair Tire
☐ ☐ Check Spare
☐ ☐ Check Wheels and Lug Bolts
☐ ☐ Other_____

**Miscellaneous**
☐ ☐ Drive Line
☐ ☐ 5th Wheel, Safety Chains, and Pintle Hook
☐ ☐ Door Glass Windshields, and Mirrors
☐ ☐ Other_____

**Refrigeration**
☐ ☐ Will Not Cool
☐ ☐ Will Not Heat/Defrost
☐ ☐ Fault Codes
☐ ☐ Other_____

**Emergency Equipment**
☐ ☐ Fire Extinguishers
☐ ☐ Spare Fuses
☐ ☐ Tire Chains
☐ ☐ Three Reflective Triangles
☐ ☐ Other_____

Complete 100% of the work, 100% of the time, on time.

Driver Special Instructions:
_____
_____
_____
_____
_____
_____
_____
_____
_____

Maintenance Action:  ☐ Corrective action taken on all items.
☐ Corrective action taken except items listed below.

_____        _____
Signature                                    Date

Action Taken:_____
_____
_____
_____
_____
_____

| Date Out | Time Out | Mileage Out |
|---|---|---|

**Driver Acknowledgment Out**

31

## DEPARTMENT OF TRANSPORTATION INSPECTION

If you are inspected by any authority, return any forms you are given to Kelley Lasley or Maggie McClellan. We must complete these forms and return them to the proper authorities, usually within 15 (fifteen) days of their issue. Do not hold these forms back!

## TRIP REPORTS

Ryder provides the trip reports that are used to track a driver's progress throughout his/her trip. Instructions for filling out the trip report are listed on the back of the form. You must complete one trip report for each trip that you make, listing miles traveled from Conway to your destination and from destination to Conway via pick-up and drop point. The log must be complete and submitted with your trip report envelope each week. The following items are to be completed:

1. Unit no. – tractor and trailer unit numbers used on the trip.
2. Beginning date of your trip.
3. From – Conway to destination (on return trip, from – final outbound drop to next pick-up point, etc.
4. Description of merchandise shipped and materials on board.
5. Miles traveled by individual state.
6. Fuel purchased for tractor.
7. Driver's signature.

See sample of trip report on page 33.

## LODGING REIMBURSEMENT

Lodging will be reimbursed only with prior approval from either Kelley Lasley or Maggie McClellan and be completely at their discretion. Reimbursement will normally be approved for, but not necessarily limited to the following situations:

1. Five consecutive days and nights out.
2. Over 24 hours in the same location.
3. No truckstops for showering in the area.
4. Two drivers in a tractor.

## MISCELLANEOUS REIMBURSEMENTS

All cash tickets turned in for reimbursement must be printed with the name and address of the vendor, the date, full description and the amount. Hand written tickets or toll tickets which have been defaced will not be reimbursed.

Expenses for these items will be reimbursed: scale tickets, toll/turnpike tickets, city maps, and one shower per week. Times, locations and proper logging will be matched against your daily logs. Reimbursement for any other expense must have prior approval from Transportation Management.

(Rev. 5/25/01)

DRIVER - PLEASE DO NOT WRITE IN SHADED AREAS

S9-09 (6/92)

| **RYDER**  TRIP RECORD | MONTH | YEAR | BATCH | NUMBER | ADMIN. LOC. CODE |
|---|---|---|---|---|---|

STATE LAWS REQUIRE THE OPERATOR TO KEEP A RECORD, BY STATE, OF MILES DRIVEN AND FUEL PURCHASED.

OFFICE USE ONLY

LESSEE NUMBER

SEE INSTRUCTIONS ON BACK OF RED COPY

LESSEE NAME

ESTIMATED MILEAGE CODE          RECORD CODE

DRIVER NAME(S)

TRUCK NUMBER

START: CITY, STATE          DESTINATION: MOST DISTANT CITY, STATE          NO. 1 TRAILER NUMBER (OPT.)

Except where required by law, Ryder will not report or pay fuel/mile taxes on without-fuel rentals. The Renter, by signing below, agrees to assume all liability and report all taxes.

NO. 2 TRAILER NUMBER (OPT.)

Signature _____          Date _____

NON-RYDER FUEL TICKETS MUST BE ATTACHED FOR CREDIT.

| LINE | CODE | DATE (MO./DAY/YR.) ↓ START ↓ | STATE NAME | NAME(S) OF HIGHWAY(S) TRAVELED | TPK | ODOMETER READING ↓ BEGINNING ↓ | FUEL GALLONS | LIST NAME OF CITY FOR ALL STOPS (DROP OFF/PICK UP, ETC.) | LINE |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | 1 |
| 2 | | | | | | | | | 2 |
| 3 | | | | | | | | | 3 |
| 4 | | | | | | | | | 4 |
| 5 | | | | | | | | | 5 |
| 6 | | | | | | | | | 6 |
| 7 | | | | | | | | | 7 |
| 8 | | | | | | | | | 8 |
| 9 | | | | | | | | | 9 |
| 10 | | | | | | | | | 10 |
| 11 | | | | | | | | | 11 |
| 12 | | | | | | | | | 12 |
| 13 | | | | | | | | | 13 |
| 14 | | | | | | | | | 14 |
| 15 | | | | | | | | | 15 |
| 16 | | | | | | | | | 16 |
| 17 | | | | | | | | | 17 |
| 18 | | | | | | | | | 18 |
| 19 | | | | | | | | | 19 |
| 20 | | ↓ ENDING ↓ DATE | | 33 | | ↓ ENDING ↓ ODOMETER | | | 20 |

## USE OF COMPANY VEHICLES

All drivers must have a valid Arkansas Commercial Drivers License. Drivers are prohibited from the use of company trucks for transportation to and from home. On your return from a trip, all tractors are to be parked at the Ryder yard.

All drivers and occupants of Virco owned or leased equipment are required to wear seat belts at all times while in the vehicle.

## PASSENGERS

With the exception of a driver's spouse, passengers are not permitted to travel with a driver. The only requirement by the company for taking your spouse with you is that you notify dispatch and obtain a written letter of authorization prior to departure.

The presence of unauthorized passengers in Virco equipment will result in the driver's immediate termination.

See sample letter of authorization on page 36.

## VACATION/TIME OFF

Any driver requesting time off, other than normal off duty time, must get it approved by Kelley Lasley, Maggie McClellan or Scott Presley. "Time off" will be allowed upon request unless it interferes with the efficient operations of the Transportation Department. It is the driver's responsibility to report to Kelley Lasley or Maggie McClellan as soon as he/she is able to return to work.

## TELEPHONE LOG

Each of you will be issued a personal cellular phone. You are responsible for the cellular phones and if lost, stolen or damaged, you will be responsible for replacement. They are issued to you for your business use, such as daily call into dispatch office or calling a customer for delivery appointment. You may use the system for personal calls; however, you are responsible to reimburse Virco for the personal charges assessed on your system. These calls are more expensive than a regular long distance call. Please do not abuse the use of these phones either for business or personal use. We do offer additional minute plans that you may purchase. You can contact Robbin McDermott for details on this service. It is strongly suggested that drivers make alternate arrangements for normal calls home rather than using the Virco cell phones.

For each trip you make, a telephone log should be included in your trip envelope. If there were no calls on your system, just note your name, the date, and write "no calls". If you did have phone calls (inbound and outbound), note your name, the date of each call and where that call was made. Note on your log if it was a personal or business call. You may call other Virco drivers if it is a business call, this should be kept brief. Any calls you make to other Virco drivers that are not labeled "business" or "personal" and calls that are unaccounted for may be subject to reimbursement to Virco.

34

The office personnel will go over the telephone bill when it comes in at the end of each month and compare it to your telephone log. Virco purchases 350 minutes per month for your use. Any amount over the 350 minutes, you are responsible for reimbursement to Virco. Your personal calls will then be totaled and a memo will be placed in your box advising you of your total. You can pay this to the office personnel or have it taken out of your payroll check. You are asked to let the office personal know exactly what you would prefer to do with your bill within 2 (two) weeks of receiving your notice of charges.

## COMPLAINTS

Any time that you feel that you are not being treated fairly, or have a complaint or problem, we want to know about it right away. We will then take steps to resolve the problem as fairly as possible. Report all problems to your dispatcher.

Each driver should know that transportation management has an "open door policy" concerning comments or suggestions that drivers have to make. Please feel free to come in and discuss any issue or concern that your might have.

35



VIRCO MFG. CORPORATION
HIGHWAY 65, SOUTH, P.O. BOX 5000
CONWAY, ARKANSAS 72032
(501) 329-2901 FAX: (501) 450-1140

To Whom It May Concern:

_____ is an authorized passenger on this vehicle

from Conway, Arkansas to destination and return to Conway, Arkansas. This

authorization expires _____.

Ray Michael
Distribution Manager
Virco Mfg. Corporation

Date of Issue _____

# DISCIPLINE POLICIES

## CORRECTIVE ACTION

In addition to those listed in your "Working with Virco" handbook, additional corrective action notices (issued through the traffic department) may be given to employees for violation of company rules and policy. The purposes of these notices are to warn the employee that failure to correct the condition may result in his/her termination. Termination may result immediately due to a major offense (following page), but for other offenses, termination may follow the second corrective action notice if another violation is committed.

These offenses are kept on your active file for a twelve month period. The offenses which may lead to a driver being issued a corrective action notice, except as expressly stated otherwise, are listed below:

1. Reports or indications of excessive speed.
2. Failure to properly maintain and keep log book and other required paperwork up to date.
3. Operators license expiration or suspensions.
4. Failure to follow dispatching instructions.
5. Failure to leave with load at predetermined time or to make pick-up without notifying the dispatcher of the reason.
6. Improper customer relations.
7. Abuse of company equipment.
8. Failure to make notation of shortage, overage, or damage along with disposition on the bill of lading.
9. Failure to report item in #8 (eight) above to dispatch as they occur.
10. Failure to call in when empty (or daily if applicable).
11. Improper use of company credit cards or cash advance.
12. Having as many as two chargeable accidents in a twelve month period.
13. Failure to report any traffic violation to the traffic office within 30 (thirty) days of conviction.
14. Conviction of any serious traffic violation (as defined by the D.O.T. in 49 CFR 383.5) while operating a commercial motor vehicle. Any such incident will be reflected in your active file for a 3 (three) year period. However, any reckless driving incident may result in termination, even for a first offense.

## TERMINATION POLICIES

It is the policy of this company, the Federal Department of Transportation, and our insurance company to have a strict standing on the following offenses. If you commit any of these major offenses, you may be terminated immediately, even if for a first offense. Multiple infractions which lead to Corrective Actions could also lead to termination.

1. Possession of, or under the influence of, intoxicants -- driving or on duty in a company vehicle.
2. Under the influence of drugs when driving or on duty in a company vehicle.
3. Failure to report an accident to the traffic office – no matter how minor.
4. Falsely recording hours worked while loading, unloading or installing.
5. Falsely recording mileage traveled.
6. Reckless driving while in company vehicle.
7. Unauthorized use of company equipment.
8. Transporting passengers without dispatcher's letter of authorization.
9. Violating an out of service order issued by a Federal or State Official.
10. Conviction of any two serious traffic violations (as defined by the D.O.T. in 49 CFR 383.5) in any 3 (three) year period while operating a commercial motor vehicle.
11. Driving a company vehicle without a valid driver's license.

# DRIVER/COMPANY

# MEMOS

## DRIVER/COMPANY MEMOS

This section is reserved for memos that are issued that drivers are asked to insert in their driver's handbooks.

VIRCO MFG. CORPORATION
Intra-Company Correspondence
Conway Transportation

Date:        April 6, 2001

To:          All Drivers

From:        Susie Ashe

Subject:     Driver Handbook

Attached you will find a copy of our current insurance card. Please put this copy of our insurance card in your driver handbook. It will replace page 19. Put the memo in the last session of your book under <u>DRIVER/COMPANY MEMOS</u>. This memo will be the first page in that session.

As I told you when you received your new card, we are still with AON insurance just the company has changed. Our company now is U.S. Fire Insurance Company. The procedures are still the same if you are involved in an accident. Please see page 18, in your driver handbook, for procedures of what to do if you are involved in an accident.

Should you have any questions, please see Kelley, Maggie, or myself.

Thank you,
Susie Ashe

# EXHIBIT D

## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT O'SULLIVAN,<br>    Plaintiff | )<br>)<br>) |
| VS. | )    CIVIL ACTION<br>)    NO. 05-CV-10863-GAO |
| VIRCO, INC., RYDER TRUCK RENTAL,<br>INC., AS TRUSTEE OF RYDER TRUCK<br>RENTAL LT., and BOBBY E. MCKUNN<br>    Defendants | )<br>)<br>)<br>) |

## DEFENDANTS, VIRCO, INC. AND BOBBY E. MCKUIN'S PRIVILEGE LOG

The Defendants, Virco, Inc. and Bobby E. McKuin, hereby submit this Privilege

Log (without waiving and specifically reserving its objections contained in their

respective Defendant's Responses and Supplemental Responses to Plaintiff's Request for

Production of Documents) in support of Defendants' Opposition to Plaintiff, Robert

O'Sullivan's Motion to Compel Further Discovery From the Defendants, Virco, Inc. and

Bobby E. McKuin:

1.   Requests to Defendants for statements of Defendants/Witness statements

  A.   Recorded statement of Bobby McKuin taken by Defendants' commercial

      motor vehicle liability insurer (United States Fire Insurance Company) on

      March 28, 2003;

2.   Request to Virco, Inc. for complete copy of Bobby McKuin's Personnel File

  Virco, Inc.'s personnel file for Bobby McKuin

  A.   Inter-company correspondence regarding inspection conducted on

      November 10, 1996; regarding department transfers – November 12,

      1998;

B.    Stephen E. Carter, M.D. notes – August 25, 1992;

C.    Employee Warning Notice – August 29, 1994, April 12, 1992;

D.    Physical Examination of Driver – October 28, 1988, September 1, 1992,
      August 17, 1994, July 24, 1996, August 25, 1992, November 17, 1998;

E.    Employee Change Notice – November 14, 1988, May 30, 1997;

F.    Substance Abuse Driver Training – December 1989;

G.    Virco New Hire – November 3, 1988;

H.    Vehicle Physical Damage Report – July 20, 1989, April 5, 1989;

I.     Internal Accident Handling – February 3, 1989;

J.     90 Day Review – January 28, 1989;

K.    60 Day Review – January 5, 1989;

L.    Four Week Review – December 5, 1988;

M.    Physical Examination and Medical Examiner's Certificate – October 28,
      1988, October 1, 1990, September 1, 1992, October 12, 1996, July 24,
      1996, July 24, 1998, July 27, 1998, July 14, 2000, July 27, 2000, July 14,
      2002;

N.    Virco Check ($37) – November 14, 2000;

O.    Maryland Citation ($37) – November 10, 2000;

P.    Maryland State Weight Card – November 10, 2000;

Q.    Driver's Physical Checklists – September 2, 1992, August 19, 1994,
      October 5, 1990, August 1, 1996, July 27, 1998, July 14, 2000, June 14,
      2002;

R.    Driver's Qualification Record – October 27, 1988;

S.    Application for Employment – October 18, 1988;

T.   Request for Information from Previous Employer – October 1988;

U.   Certificate of Written Examination, Road Test and of Driver Qualification – October 28, 1988;

V.   Record of Road Test – October 28, 1988;

W.   Telephone Reference Check Guide – October 26, 1988;

X.   Driver Record Service Report (Arkansas) – September 25 1991, September 3, 1992, September 8, 1993, August 17, 1994, August 4, 1995, July 23, 1996, July 2, 1997, June 23, 1998, June 22, 1999, June 20, 2000, June 18, 2001;

Y.   Department of Finance and Administration – December 16, 1988, December 29, 1989, September 25, 1990;

Z.   Accucheck Driver Record Retrieval – October 31, 1988;

AA.  Indiana State Police Warning – July 8, 1993;

BB.  Written Exam for Driver – October 28, 1988;

CC.  Certificate of Written Exam – October 28, 1988;

DD.  Driver Annual Review – July 13, 2001, July 14, 2000, July 20, 1999;

EE.  Motor Vehicle Driver's Certification of Violations – July 20, 1999, July 14, 2000, July 13, 2001, June 14, 2002;

FF.  Wayne Smith Trucking Information Request – November 17, 2003;

GG.  Virco Termination Notice (Retirement) – May 29, 2003;

HH.  Request for Employment Information from Social Security Administration – May 30, 2003;

II.  Hourly Performance Evaluation – November 13, 2002;

JJ.  Change of Status Form – March 22, 2002;

3

KK.    Pay Correction – January 20, 2000;

LL.    Erma Williams (sister) Death Notice;

MM.    Employee Change Notice – November 14, 1988, October 20, 1997, May

30, 1997;

NN.    Employee Transfer/Change of Status – November 12, 1988, October 17,

1994;

OO.    Vacation Request Form – November 7, 1995;

PP.    Employee Change Notice – October 20, 1989, October 19, 1990, October

20, 1991, October 19, 1992, October 26, 1997;

QQ.    Statement of Employer Regarding Employee Manual – October 27, 1988;

RR.    Certification Regarding Drug/Alcohol Abuse Policy – November 26,

1991, January 28, 1995;

SS.    Payroll Database Change – November 3, 1988.

Respectfully Submitted,
The Defendants,
Virco, Inc. and
Bobby E. McKuin,
By their attorney,

Clark W. Yudysky, BBO # 538210
TOOMEY & YUDYSKY LLP
99 Summer Street
Boston, MA 02110
(617) 946-0930

Date: _____6/27/07_____

bmd  83054.1  6/22/07

4

# EXHIBIT E

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT O'SULLIVAN

Plaintiff

VS.          Case No. 05-CV-10863-GAO

VIRCO, INC., RYDER TRUCK RENTAL, INC.
AS TRUSTEE OF RYDER TRUCK RENTAL, LT,
and BOBBY E. MCKUNN

Defendants

* * * * * *

ORAL DEPOSITION OF BOBBY E. MCKUNN
[Taken August 1, 2006]

* * * * * *

APPEARANCES:

      MR. SCOTT D. PETERSON, Esq., Healy & Healy, P.C.,
        350 Lincoln Street, Suite 2400, Hingham, MA
        02043

          *** For the Plaintiff ***

      MR. CLARK W. YUDYSKY, Esq., Toomey & Yudysky, LLP,
        99 Summer Street, Boston, MA  02110

          *** For the Defendants ***

* * * * * *

COPY

I N D E X

TOPIC

PAGE

STIPULATIONS

3

WITNESS SWORN:  BOBBY E. MCKUNN

3

  Examination by Mr. Peterson

4

E X H I B I T S*

Exhibit 1
Exhibit 2                                          162
Exhibit 3                                          163
Exhibit 4                                          176
                                                   176

[*Attached to transcript.]

REPORTER'S CERTIFICATE

196

WITNESS' SIGNATURE

197

3

THE ORAL DEPOSITION OF BOBBY E. MCKUNN, a

witness produced pursuant to the Federal Rules of Civil

Procedure in the above-styled and numbered cause on the

1st day of August, 2006, before Jeff Bennett, CCR, LS

#19, a Notary Public in and for White County, Arkansas, at

Jack, Lyon & Jones, 904 Front Street, Conway, Arkansas

beginning at 11:00 a.m..

\* \* \* \* \* \* \* \* \* \*

BOBBY E. MCKUNN

the witness, being first duly cautioned and sworn or

affirmed to tell the truth, testified as follows:
\* \* \* \* \* \* \*

1 question before you begin your answer.  It's also very
2 important for you to make sure you let me know if you need
3 time to speak to your attorney, or to take a break, or
4 anything along those lines.

5     If you would like to take a break for whatever
6 reason, I would ask, however, that you answer any pending
7 question before you.

8     One other rule.  You need verbally respond to the
9 questions that I pose to you.  You cannot respond by
10 nodding with your head, or signaling with your hands, or
11 any other type of non-verbal communication.  The reason
12 for that is very simple.  The court reporter has to take
13 down your testimony; okay?

14 A.    Okay.

15 Q.    Do you understand those ground rules?

16 A.    I do.

17 Q.    Okay.  And can you state your full name for the
18 record?

19 A.    Bobby Earl McKunn.

20 Q.    And you pronounce it McKunn?

21 A.    Yes, sir.

22 Q.    What's your date of birth, sir?

23 A.    4-25-37.

24 Q.    Where is it your presently live?

25 A.    Morrilton, Arkansas.

1  accident?

2  A.    No.

3  Q.    You never gave any statement?

4  A.    Virco is the only statement I gave.

5  Q.    You gave a statement to Virco?

6  A.    Called them the next morning.

7              MR. YUDYSKY:  Objection.  He's referring

8  to the oral statement, correct?

9  A.    Yes.

10 Q.    Would that be the first phone call you made?

11 A.    Second.

12 Q.    The one that's talked about here?

13 A.    Yes.

14 Q.    That was the only statement you ever gave?

15 A.    Yes.

16 Q.    The first phone call was a very brief one?

17 A.    Brief.

18 Q.    And you just said you had an accident.  The truck is

19 okay.  I'm forging ahead?

20 A.    Not my fault and everybody's okay.

21 Q.    Did you think that the interrogatory answers are a

22 statement?

23             MR. YUDYSKY:  By things you reviewed, did

24 you think those answers to interrogatories were a

25 statement?

Exhibits

1   A.    Yeah.

2   Q.    Let me ask you some more specific questions just to

3   make sure the record is clear.  Do you ever recall giving

4   -- sitting down and giving an interview or recorded

5   statement to anybody at Virco?

6                    MR. YUDYSKY:    Objection.

7   A.    I don't know if I did.  Yeah, I think I went in there

8   and I did that.

9   Q.    When was that?

10  A.    When I got back on Wednesday or Thursday or whatever.

11  Q.    And how did they take your statement?

12  A.    Just like we're talking here.

13  Q.    Did somebody write something down?

14  A.    Yes.

15  Q.    Who was that person?

16  A.    I think it was Susie Ash.

17  Q.    Was she filling out this form or was it something

18  else?

19  A.    I don't remember.

20  Q.    But she was writing stuff down?

21  A.    Yes.

22  Q.    And that was actually at the Virco offices when you

23  returned?

24  A.    Yes.

25  Q.    Is it fair to say the information about the accident

1  as log reports, driver's log, trip reports, I'm going to

2  research my right to resume this deposition, if I think

3  those documents may have some bearing on this deponent's

4  testimony.

5          MR. YUDYSKY:  I have no questions.  The

6  deposition is concluded.  I object to any reservation on

7  testimony, if and when any further documents are produced

8  by a party different than Mr. McKunn.  He's responded

9  fully to the discovery that was asked of him.  And that's

10  the position of the defendants.

11          (WHEREUPON, the above-entitled deposition

12  was concluded at 4:00 p.m..)

13                  *  *  *  *  *

14

15

16

17

18

19

20

21

22

23

24

25